# MISSISSIPPI BUREAU OF INVESTIGATION



**Incident Date:** November 29, 2018
**Incident Description:** Death Investigation
**County:** Grenada
**MBI Case Number:** M19-00000391
**ME Number:** ME18-1164
**Agent:** Mark Steed

    **Details:** On November 29, 2018, Agent Mark Steed (Steed), Mississippi Bureau of Investigation (MBI), interviewed Marcus Cortez Prayer, black male, date of birth [REDACTED], Social Security Account Number [REDACTED], who resides at 60 W Govan Street, Grenada, Mississippi 38901. Said interview was regarding the above captioned matter. Said interview was recorded and transcribed. The transcribed interview is attached hereto and made part of the casefile.

_Mark Steed_
Mark Steed

**RECORDED STATEMENT OF MARCUS PRAYER**

**ROBERT DEVON LOGGINS DEATH INVESTIGATION**

**MBI CASE NO.: M19-00000391**

**ME NO.: ME18-1164**

**DATE: 11/29/18**

MS:    Today's date is November 29, 2018. Present today is Mark Steed, MBI; Kenny Sanders, Grenada Police Department interviewing Mr. Marcus Prayer. The interview is regarding the death investigation of Robert Loggins that occurred on 11/29/2018.

       Mr. Prayer, will you give us your date of birth and social security number, please?

MP:    Date of birth is ☐☐☐☐☐; social security number is ☐☐☐☐☐☐.

MS:    What was those last four again, please?

MP:    8034.

MS:    Where do you reside at?

MP:    I stay at 60 West Govan Street.

MS:    Have you been living there for a long time?

MP:    Yeah.

MS:    Were you living at, or staying at, that address last night?

MP:    Yes, sir.

MS:    Okay. So you were there all during the hours of this morning?

MP:    Yes, sir.

MS:    Okay. Can you tell me if you witnessed any actions by the Grenada Police Department or any law enforcement officials at your residence last night?

MP:    No. I didn't witness anything.

MS:    Okay. Did you hear anything?

MP:    I heard the guy screaming. He was screaming real loud. The whole neighborhood heard it. Our neighbor across the street called the police, and I heard the lady's dog barking next door. And by the time I really got up, put on clothes and stuff, the police was coming in our backyard and my grandmother got like a garden. They went in the garden, and the guy was hollering. I didn't know he was back there. I thought he was – because we've got a big old fenced in, like a fenced in yard, and I thought he was actually behind our gate, like on the next street, but I didn't know he was in our yard. All I really heard was like the police was just telling him to put his hands behind his back and he wouldn't really put his hands behind his back for some reason.

MS:   Did you see this or you just heard it?

MP:   No.  I heard it.  I didn't see it.

MS:   Now, I was at the property earlier this morning, and were you actually in your grandmother's residence or were you in the white residence that's right adjacent to your grandmother's house?

MP:   I was in the white residence.

MS:   Okay.  And so the gate that you were telling me about, is there a little shed at the end that goes – that's by a gate?

MP:   Yes, sir.

MS:   Goes into a fenced, heavily grassy and kind of woody area; is that right?

MP:   Yes, sir.

MS:   Okay.  So is that where all this took place?

MP:   Yes, sir.

MS:   This individual that was hollering and shouting out during the night, did you know this man?

MP:   I didn't know him.

MS:   Do you know what he was saying when he was hollering out?

MP:   To me it sounded like he was saying, "Mama, why," but I'm not for sure because it was like early in the morning, and I had woke, but he was hollering out something.

MS:   Okay.  So you hear him hollering, so was he actually in your yard?

MP:   Well, when the police – the police said he was.  I'm not sure if he was at first.  The first thing I heard was I heard a person hollering and it sounded like they was trying to beat on somebody's door or something like that.  He was trying to – I don't know if he was trying – if he was calling out for help or he was trying to get in or something, but I heard a lot of beating and a lot of hollering, and that's what really woke me up.

MS:   Okay.  Did at any point in time did you see this man?

MP:   No.  I never seen him.

MS:   Okay.  And do you know who called the police?

MP:   They told me the lady across the street, our neighbor, Ms. Booker.  They said she called them.  She was the one who called them.

MS:   Did your grandmother ever come out of the residence that you know of?

MP:   No.  She stay in the brick house.

MS:   Okay.  So at some point in time, the police had to come into your yard, right?

MP: Yes, sir.

MS: At any point in time, did you ever see the police?

MP: When they was like leaving back through the gate. But I seen them like when they first came back there – well, I didn't like open the door where I was, but I seen the light, and I heard them going in the gate.

MS: Okay. Could you tell what they were saying?

MP: When they went back there, because it's like bushy back there, when they went back there, I guess the guy was on the ground, and they was telling him to put his hands behind his back.

MS: Okay. Did you hear any gunshots?

MP: No.

MS: Did you hear any popping noises?

MP: Not that I'm aware of, I didn't.

MS: Did you hear anything that sounded like a scuffle?

MP: No.

MS: Okay. Did you hear anybody verbally threaten anybody?

MP: No.

MS: Okay. Did you hear the police order the man to get down or did you hear them giving him commands?

MP: I heard him kept telling him to put his hands behind his back. They did say that. They said that several times.

MS: Okay. All right. Did you hear anything else from anybody else other than the police or this individual that they were trying to arrest?

MP: No.

MS: You mentioned that you heard this man beating on something. Did it sound like he was beating on the fence or your house or what?

MP: I'm not sure what exactly he might have been beating on.

MS: Okay. All right. So when the police, they were leaving the residence, did you see them carry the man out to the street?

MP: No.

MS: Okay.

MP: I seen them – well, they was going back through the gate with him, and I don't know, I guess he must have sat down because we've got a couch on the right as you come in our gate, it's a couch right there. I guess the man – I guess he sat down, and they was telling

him to get up. You know, I guess he sat down on the couch, and they just told him to get up.

MS: Okay. So let's clarify this. There's two gates in your backyard. There's one going into the grassy area?

MP: Uh-huh (affirmative response). And one as you come in the backyard.

MS: Okay. And so the one that you're talking about where the man sat down would have been under the carport like you're going to go into the back of your grandmother's house, right?

MP: Yes, sir.

MS: Okay. So that's where the man tried to sit down?

MP: Yes, sir.

MS: Okay. And did you see that?

MP: No. I didn't see it, but I heard them telling him to get up so I just figured that's what he did, he sat down.

MS: Okay. All right. Did you hear them tell the man anything other than to get up?

MP: No.

MS: Okay. Were they cussing the man or threatening the man or anything of that nature?

MP: No, sir.

MS: Was the man threatening or cussing the police?

MP: No.

MS: Okay. Where was your grandmother at that point in time?

MP: She was in the brick house.

MS: Did she witness any of this?

MP: No, sir.

MS: The people that are right next door, did they – do you know if they saw anything?

MP: I don't. I'm not sure.

MS: Okay. Was at any point in time, do you know if an ambulance ever responded to your residence?

MP: I heard one.

MS: Okay. Do you know what they said or did you hear them or anything?

MP: No.

MS: Okay. Did you see them load the man into the ambulance?

MP:     No.

MS:     Did you see the man loaded into the patrol car?

MP:     No.

MS:     Is there anything that you would like to add to your statement?

MP:     No.

MS:     And, Mr. Prayer, do you have a cell phone number that I could contact you at?

MP:     Yes.  662-230-2568.

MS:     2568?

MP:     Yes, sir.

MS:     Okay.  And one last question, are you currently employed anywhere?

MP:     At Grenada Stamping.

MS:     This concludes the interview with Mark Steed and Mr. Marcus Prayer.  The interview ends at 12:39 p.m.

# MISSISSIPPI BUREAU OF INVESTIGATION



**Incident Date:** November 29, 2018
**Incident Description:** Death Investigation
**County:** Grenada
**MBI Case Number:** M19-00000391
**ME Number:** ME18-1164
**Agent:** Mark Steed

    **Details:** On November 29, 2018, Agent Mark Steed (Steed), Mississippi Bureau of Investigation (MBI), interviewed Rapheal Harvey, black male, date of birth [REDACTED], Social Security Account number [REDACTED], who resides at 113 King Street, Grenada, Mississippi 38901.  Said interview was regarding the above captioned matter.  Said interview was recorded and transcribed.  The transcribed interview is attached hereto and made part of the casefile.

_Mark Steed_

Mark Steed

**RECORDED STATEMENT OF RAFFAEL HARVEY**

**ROBERT DEVON LOGGINS DEATH INVESTIGATION**

**MBI CASE NO.:  M19-00000391**

**ME NO.:  ME18-1164**

**DATE:  11/29/18**

MS:     Today's date is November 29, 2018.  Present today is Mark Steed, MBI; William
        Blackmon, Investigator, District Attorney's Office 5th Judicial District, interviewing
        Raffael Harvey.  The interview is taking place at the district attorney's office in Grenada,
        MS, and the interview is regarding the death investigation of Robert Loggins that
        occurred this date in Grenada.

        Mr. Harvey, what is your date of birth?

RH:     _____.

MS:     And your social security number?

RH:     _____.

MS:     And, Mr. Harvey, just prior to this recording I read a Miranda Rights form to you; is that
        right?

RH:     Yes, sir.

MS:     And you understood that form and you signed it and you're willing to talk; is that
        correct?

RH:     Yes, sir.

MS:     Mr. Harvey, as I previously told you that this interview was about the death investigation
        of Robert Loggins.  How are you employed?

RH:     I was employed –

MS:     Where are you employed?

RH:     At the Grenada County Jail.

MS:     Okay.  And how long have you been there?

RH:     Almost a month and a half.

MS:     What capacity do you occupy?

RH:     I occupy the male housing.

MS:     The what now?

RH:     The male housing at the back.

MS:     Okay.  Have you had any prior correctional experience prior to Grenada County?

RH:     No, sir.

MS:     Do you recall an incident that happened this morning where Robert Loggins passed away?

RH:     Yes, sir.

MS:     Can you explain that to me?

RH:     Yes, sir.  I was at the back with the male housing, just got finished with our head count. Sergeant Jones had just called me up to the booking area.  He said like, "We've got a violent offender coming in so the Grenada Police Department will need our help."  So we went out there, we went out there, and we helped them get him in.  We sat him on the floor, and then they talking about they had – the Grenada Police Department had to leave so we helped them exchange the handcuffs out with our own.  As doing that, Mr. Loggins was unable to – like he was – what's the word?  He was not cooperating.  So we held him down, and after that, it was like I had his hands, somebody else had his feet and two more people had his arms.  Then some little short – one of them on the Grenada Police Department sat right here on his shoulders.  He sat right here on his shoulder and like put his legs right here behind his shoulders and sat right here on the back of his neck.

MS:     Okay.

RH:     At that point in time, he was already detained so it wasn't no sense for him to actually go over there and do that to get handcuffs when he was already – basically, we had him already down.  Then after that, we got his handcuffs off.  We gave the policeman their handcuffs.  Then they left.  Right after Sergeant Clark already told them that he cannot stay here because he was already bleeding.

MS:     Where was he bleeding?

RH:     He had a few cuts on the side of his head, two – one on his left knee, one on his right knee.  And he was bleeding out his mouth.

MS:     Okay.

RH:     I'm still learning things, but they told me that if anybody bleeding, you don't take them. And as Sergeant Clark was telling them this, they did not stop to come back to get this man.  They all jumped in the car and left.  So then when they left, we tried to pick him up and put him in the room, he was unresponsive.  Like his legs were not moving, nothing was going on.  Then we took the handcuffs off him from behind his back and put them in the front.  After then he wasn't – breathing.  We cut the shirt off of him.  We got the jacket off of him and cut the shirt off of him.  Then we were trying to get ready to do CPR, but the paramedics had came and took over the scene.

MS:     Whenever the police brought him in, did you help the police bring him in?

RH:     Yes, sir.

MS:     And you and?

RH: Sergeant Jones had him by his vest at first, and I had him by his feet because at first he was kicking and screaming. He was already screaming a little bit. So we picked him up by his feet, he just stopped moving. We just brought him in and sat him down and then he started back to wiggling, and then they wanted us as quickly as possible to exchange their handcuffs out.

MS: At that point there were several officers that surrounded Mr. Loggins when they went to change the handcuffs; do you remember that?

RH: Yes, sir.

MS: Was there anybody that may have kicked Mr. Loggins?

RH: Not that I have seen.

MS: Did anybody take their foot and try to roll him over?

RH: Not that I have seen, sir.

MS: Okay. Did anybody put their knee on his neck or head?

RH: The – I don't know his name, but as I explained earlier it was a little short one of the officers that sat right here. We already had him down on his stomach. He sat and put his legs right here, like all this right here, he put all this right here and just sat right there. He was already – he couldn't move already because we already had his arms and his legs. There wasn't no sense in him standing right there.

MS: Who was that officer?

RH: I don't know his – I'm still learning names, but I could pick him out of a crowd if you showed me.

MS: Okay. Was he a white or black guy?

RH: Short white guy.

MS: Okay. And have you saw him before?

RH: As of today, this was my second time seeing him. I don't know his name. I forget names, but I don't forget faces.

MS: Was he a police officer or a jailer?

RH: Police officer.

MS: Do you have anything, William?

WB: Yes. Do you know much about the policies and procedures of dealing with inmates yet?

RH: I'm still learning.

WB: Well, let me ask you this. Since the Grenada Police Department brought this individual in for, you know, to lock him up, is it normal that you would – is it something that you do all the time if a person comes in that's you get the call that he's potentially violent.

RH: That's the first one I've had.

WB: That's the first one of those you had? Okay. I guess what I'm asking is, I'm wondering why did you change the handcuffs? I know you had to give the officer his handcuffs back, but why wasn't he put in a cell if you – I mean, if you were going to keep him and then get the handcuffs taken off him that way? That way you don't have to recuff him.

RH: We was told – Ms. Clark done already told them that we was not – she kept saying multiple times that that was the system of getting the handcuffs. Then right after they said, "We've got to go. We've got to go. We've got to get the handcuffs." They got a call for all police to come back to the station. Then after then they left. They left in a hurry. She was telling them to take this man to the hospital. Like you already checked out, why are you bringing him here instead of going to the hospital?

WB: She said take him to the hospital?

RH: Yes, sir.

WB: All right. Is Officer Clark a female?

RH: Yes, sir.

WB: Do you know her first name?

RH: I do not know her first name.

MS: Who actually called for medical staff to come to the sheriff's office or to the county jail?

RH: I think she did. I cannot recollect because Officer Johnson was down here with me.

WB: Was it immediate that the person in charge said that – Sergeant Clark said that we're not going to keep Loggins here?

RH: As soon as she seen him bleeding, she told him, "No, we're not taking him. Take him to the hospital. You've got to get him out of here."

WB: Was that before or after they took the cuffs off of him?

RH: That was before we even got a chance to even put him down all the way, she told him we was not going to take him because he was bleeding, and they kept coming in – I was following Mr. Johnson and them. They were bringing him in so I was bringing him in to put him down.

MS: Based on what you saw, did you see that Mr. Loggins was mistreated or abused in any way?

RH: Look, when I looked at him – when I glanced at him, he had three missing teeth, like they were broken at the gum. I asked Mr. Johnson and Mr. Johnson said they was already like that, so I didn't – they seen him already before.

WB: So were the teeth missing or were they broken?

RH: They looked like they were broken at an angle, like broken just like this, at an angle.

MS:    Okay. Did you see anybody hit him in the face?

RH:    No, sir. Nobody touched him in the face. That I'm aware of, nobody touched him in the face.

MS:    And you didn't see anybody kick him?

RH:    No, sir. Nobody kicked him because I kept my eye on him the entire time. Nobody kicked him.

MS:    Interview ends at 5:17 p.m.

# MISSISSIPPI BUREAU OF INVESTIGATION



**Incident Date:** November 29, 2018
**Incident Description:** Death Investigation
**County:** Grenada
**MBI Case Number:** M19-00000391
**ME Number:** ME18-1164
**Agent:** Mark Steed

    **Details:** On November 29, 2018, Agent Mark Steed (Steed), Mississippi Bureau of Investigation (MBI), interviewed Edna Marie Clark, white female, date of birth ⬚⬚⬚⬚⬚⬚, Social Security Account number ⬚⬚⬚⬚⬚⬚, who resides at 171 Montgomery Lane, Carrollton, Mississippi 38917. Said interview was regarding the above captioned matter. Said interview was recorded and transcribed. The transcribed interview is attached hereto and made part of the casefile.

_Mark Steed_

Mark Steed

**RECORDED STATEMENT OF EDNA CLARK**

**ROBERT DEVON LOGGINS DEATH INVESTIGATION**

**MBI CASE NO.: M19-00000391**

**ME NO.: ME18-1164**

**DATE: 11/29/18**

MS:    Today's date is November 29, 2018. Present today is Mark Steed, MBI; William Blackmon, Investigator, District Attorney's Office interviewing Ms. Edna Marie Clark. Ms. Clark, would you state your date of birth and social security number, please?

EC:    _____.

MS:    Ms. Clark, how are you employed?

EC:    I'm a sergeant at the Grenada County Jail.

MS:    Do you work inside the jail?

EC:    I do. Yes, sir.

MS:    And how long have you been there?

EC:    Seven years.

MS:    And you understand what the interview is about today; is that right?

EC:    I do. Yes, sir.

MS:    The death investigation of Robert Loggins.

EC:    Yes, sir.

MS:    Can you tell me what happened this morning when all this transpired?

EC:    I came to work this morning. I was in the process of doing my briefing with my shift, the oncoming shift, and the off going shift supervisor, Sgt. Johnson, come through the doors and said that there was a problem in admissions and needed my assistance with offender Robert Loggins.

I go through 38 and I didn't see Mr. Loggins. I saw several officers standing around him. I go around the counter. I look over and I see his condition, blood coming from his mouth. He had his pants down to his knees. His hands was restrained behind his back. He was sort of rolling from side to side. Looking at the young man, I told the officers, "Y'all are going to have to take him out of here. I'm not keeping him." They informed

me that the EMTs had checked him out and they determined that he was okay to go to jail.

I stated again, "Y'all take him out of here. I'm not taking him." At that time, they started taking the restraints off of him. Mr. Dean Tillie – they were evidently his restraints, his handcuffs. So he come around. He was going to take the restraints off of him. And my officers got on each side of him and was holding his shoulders because Mr. Loggins was, you know, rolling from side to side, flopping and trying to – to me he was trying to gasp for breath because he couldn't breathe. At that point, Mr. Dean Tillie, the officer, put his knee right here on the back of Mr. Loggins' head. He was on his stomach and he put his knee right here, but the position that Mr. Tillie was in, he couldn't get the restraints off. So he actually stood up, turned around and sat down on his head to take the restraints off. I'm telling them again, "I'm not going to keep him. Y'all need to take him out of here. I'm not going to book him in." One of the other young officers waived me off like he was dismissing me. That young man's name was Michael Jones. Michael Jones, Hal Merriman and Dean Tillie, those were the three officers in there. The officers picked him up. Mr. Hankins and Mr. Hollis, they picked him up and was going to take him down and I looked at him because he was limp. He couldn't stand up.

WB:    What were the two officers' names again?

EC:    Hollis and Hankins. They were on my shift. They picked him up and I turned around and I said, "Uh-uh, y'all bring him back." The laid him down. And for several minutes, you know, the officers and all stood around him for several minutes. They went on out. I went around – I called 911. I called EOC and was getting an ambulance dispatched to the jail. The young lady I spoke with from EOC stated that he was cleared by the EMTs. I said, "No. I need an ambulance here." I stated that – and I did a few things around the front desk. I went back around and his eyes – I'm going to take my glasses off and I'll show you – his eyes were like this. They were open but they wasn't open all the way.

So I looked down at him, and at that time I could tell there was something wrong. I checked his pulse right here. I checked it again. I put my hand right here and then when I couldn't feel no breath, I raised his shirt up and put my hand on his stomach to see if there was any movement. There wasn't anything. I informed the off going shift sergeant that he wasn't breathing. At that time, we started our process of what we was taught in CPR. It wasn't maybe two minutes, we got his vest off of him, we cut his shirt off, we cut both his shirts off and we started all of our process. And it was maybe two minutes and the EMTs come in and they started working on him.

MS:    At any time did Mr. Loggins say anything?

EC:    He was just rolling back and forth, back and forth, back and forth and according to what the officers said to me, when they found him he was saying, "Somebody help me, please. Somebody, help me, please." But he was not verbally saying anything that I heard.

MS: At the point that whenever the decision was made to take the handcuffs off of Mr. Loggins and there was several officers that kind of surrounded him in order to take these handcuffs off of him, did you see anybody that may have kicked Mr. Loggins?

EC: Not that I seen.

MS: Okay.

EC: Not that I seen.

MS: Have you heard that anybody may have kicked Mr. Loggins?

EC: No, sir, not that I seen and not that I heard. Mr. Loggins in the past, he's – we've had him over at the jail quite a few times and he wasn't all that bad of a – combative of an offender, but we've had problems. So in – with our experience with him and the way he was brought in, I actually asked the – they brought him like he was a sack of potatoes. I mean, just – we've had problems with him in the past but he didn't seem like that combative to me because he was just going from side to side, side to side. He wasn't screaming. He wasn't hollering like he used to do. I mean, he wasn't doing anything. He wasn't flouncing around, just going from back to side to side like he was trying to roll over. And when they picked him up, he couldn't get his legs under him and he was just limp.

MS: Okay. And you saw blood coming out of his mouth?

EC: I did.

MS: And did you see any other type of injuries on him?

EC: He had like a cut on his face. As I said, he had some teeth missing. And he had an injury on both his knees and they were bleeding.

WB: Now when you say he had teeth missing, has he come into the jail before and those same teeth were missing?

EC: He's had beautiful teeth. He had beautiful teeth.

WB: So this is the first time you've seen his teeth missing?

EC: Uh-huh (affirmative response).

WB: Okay.

EC: That was something – Rob Rob was very – I mean, Robert Loggins was very proud of was his teeth.

WB: What was his nickname?

EC: Rob Rob. As I said, we've had experiences with Robert -- with Mr. Loggins.

MS:     So did you hear anything from Mr. Loggins at any time at the jail say anything to the officers or the officers to him?

EC:     He didn't say anything to the officers.

MS:     Do you have anything else, William?

WB:     No, sir.

MS:     Ms. Clark, do you have anything else?

EC:     No, sir.  What I just told you is in my report, in the Incident Report of the day.  Y'all are welcome to a copy of that, and I just finished it.

MS:     Okay.  The interview ends at 5:41 p.m.

# MISSISSIPPI BUREAU OF INVESTIGATION



**Incident Date:** November 29, 2018
**Incident Description:** Death Investigation
**County:** Grenada
**MBI Case Number:** M19-00000391
**ME Number:** ME18-1164
**Agent:** Mark Steed

    **Details:** On November 29, 2018, Agent Mark Steed (Steed), Mississippi Bureau of Investigation (MBI), interviewed Jerome Cordarius Johnson, black male, date of birth ☐, ☐ Social Security Account number ☐, who resides at 375 South Levee, Grenada, Mississippi 38901. Said interview was regarding the above captioned matter. Said interview was recorded and transcribed. The transcribed interview is attached hereto and made part of the casefile.

_Mark Steed_

Mark Steed

## RECORDED STATEMENT OF JEROME C. JOHNSON

**ROBERT DEVON LOGGINS DEATH INVESTIGATION**

**MBI CASE NO.: M19-00000391**

**ME NO.: ME18-1164**

**DATE: 11/29/18**

MS: Today's date is November 29, 2018. Present today is Mark Steed, MBI; William Blackmon, Investigator, District Attorney's Office 5th Judicial District, interviewing Jerome C. Johnson.

Mr. Johnson, what's your date of birth?

JJ: _____.

MS: And your social security number?

JJ: _____.

MS: Are you here on your own free will?

JJ: Yes, sir.

MS: Have you been threatened or coerced to make this statement?

JJ: No, sir.

MS: And you understand what you're here for, right?

JJ: Yes, sir.

MS: And it's about an investigation, a death investigation, with Mr. Robert Loggins; is that correct?

JJ: Yes, sir.Yes, sir.

MS: Mr. Johnson, how are you employed?

JJ: Through the Grenada County Jail, I'm a shift supervisor.

MS: How long have you been employed there?

JJ: This will be going on my second year.

MS: And were you working at about 6:00 this morning at the jail?

JJ: Yes, sir.

MS: Were you there when an incident occurred involving Mr. Robert Loggins?

JJ: Yes, sir.

MS: Can you tell me how that happened?

JJ:    Me and my shift was preparing to get ready to leave, and we got a call from EOC My main patrol officer took the call, and she informed me that they had an offender coming in that was violent. So I called for my other male officer from the back, and when they arrived we went out to assist them in bringing him in. And the officer was pulling him out of the car, he was shaking and wiggling, struggling with them. So we helped pick him up, and we carried him into the building and placed him on the floor. I went to the front to get the new oncoming shift supervisor and her employees to help us out. And upon changing, we was changing out the handcuffs at this point. We got to where we was fixing to – so the officers detained him and we was switching out the handcuffs and putting the leg irons on.

Once the officers released him, he was laying on his stomach and the oncoming supervisor, she saw that he was, you know, bleeding out the mouth. So she informed the police officers that we're not going to keep him because he was bleeding out the mouth like that. So upon her going to call our warden and the deputy warden, the officers left. So she called the deputy warden, she called the warden and she called the ambulance because they gave her permission to call the ambulance because of the situation. So upon waiting on the ambulance, she went over and she tried to talk to him because, you know, he comes in often. We know who he is. But he wasn't responding to her. So when she notifies everybody that was standing there that, you know, he wasn't responding, we proceeded to prepare to perform CPR.

By the time we got ready to start performing CPR, the EMTs had came through the back door. And they had took over the situation or the scene until they decided they was going to take him on off to the hospital till they got him stable enough to move. And I followed along as security in the back of the ambulance and they performed CPR and stuff all the way to the hospital. And once we got there, somewhere around 7:03 they said they had just pronounced him dead.

MS:    Whenever the police officer brought Mr. Loggins in to the jail and he was in the sally port and you and another officer went out to assist and bring Mr. Loggins in; is that correct?

JJ:    Yes, sir.

MS:    Was Mr. Loggins being combative at that time?

JJ:    In the car he was, but once we got him out – when he was reaching in to grab him, he was pulling from them and rolling over, but once we got him out he was just – he wiggled a little bit but he wasn't really fighting as much as he was in the car.

MS:    Did he say anything threatening?

JJ:    No, sir. He never said anything threatening even when he was laid in the floor talking, he never threatened nobody. He was just talking, you know, off the wall stuff.

MS:    Do you remember anything that he may have been saying?

JJ:    He was quoting Bible passages. I don't know which ones.

MS:    Bible passages?

JJ: Yes, sir. He got into it the last time he was there, but, you know, he'd quote some of them. He'll talk about a can't stop won't stop nation and what he be trying to do. He just talks off the wall sometime.

MS: Okay. So you have had prior dealings with Mr. Loggins?

JJ: Yes, sir.

MS: Did he act like this before?

JJ: Yes, sir. Usually when he come in off of drugs, he'll be a bit combative, but he mostly sometimes he'll calm down and you'll be able to talk to him or, you know, he'll be alright.

MS: Whenever it was determined that the handcuffs needed to be removed off Mr. Loggins where the jail could put their own handcuffs on him and there were several officers that surrounded Mr. Loggins; do you remember that?

JJ: Yes, sir.

MS: Where were you at during the course of that?

JJ: I was over by his head. The way it was, Officer Sanders got his legs. Officer Harvey had one of his arms around his back. Officer Tillie, the police officer, was up on his shoulders. He had one of his knees in his shoulders holding him down, and the young officer was on the other side. And me and the older police officer was standing right there.

MS: At any time during that procedure, did you kick or hit Mr. Loggins?

JJ: No, sir.

MS: Did you see anybody else kick Mr. Loggins?

JJ: No, sir.

MS: At the point that Mr. Loggins was laying down, he was laying on his hands, right?

JJ: At first he was on his hands. We had to roll him.

MS: Okay. And who was the first person that put their hands on Mr. Loggins?

JJ: I would believe it was Mr. Sanders when he grabbed him by the leg to put the leg irons on him.

MS: Okay. Did Mr. Sanders kick Mr. Loggins?

JJ: No, sir.

MS: Are you sure about that? Did anybody kick Mr. Loggins?

JJ: From the best of my knowledge, no, sir. Nobody kicked him.

MS: Okay. Did anybody roll him over with their foot or anything like that?

JJ: No, sir. When they rolled him over, they used their hands.

MS: Okay. Did anybody have their knee in Mr. Loggins' neck or on the side of his head?

JJ: No, sir. Mr. Tillie had it right up here in his back above – I'd say right along the shoulder blade.

MS: Okay. William, do you have anything?

WB: Yes. How long have you been the sergeant on the night – the 6:00 p.m. to 6:00 a.m.?

JJ: It's been a year.

WB: It's been a year. And you say you've dealt with Loggins?

JJ: Yes, sir. We've dealt with him before.

WB: Can you describe to me again when the officer said he needed his handcuffs back, can you describe to me again who did what and where were they?

JJ: Okay. Officer Sanders was at his legs because he was putting the leg irons on him. Officer Harvey had his arms. He was on the side on his arm. He had his arm holding it behind his back. The police officer, Mr. Tillie, had his knee, like I said, up in his shoulder blade. The other officer was on the side – on the other side of him and had the other arm and me and –

WB: The other two officers, do you know them by name?

JJ: I know one of them is Dale Tillie. That is the one that had his knee in his shoulder. And Mike Jones I think is the other one that was helping detain him.

WB: Are you familiar with what a restraint chair is?

JJ: Yes, sir.

WB: Is the Grenada County Jail equipped with a restraint chair?

JJ: No, sir.

WB: When a person comes in behaving like Mr. Loggins, do you normally leave them on the floor?

JJ: No, sir. But, like I said, he was in the floor, and he was responsive at the first moment. So, like I said, the moment we was trying to figure out what we was going to do with him because at first we was going to put him in 15, but he had went unresponsive.

WB: When everybody was around him, you know, the part I'm talking about where Mr. Sanders was on his feet, Mr. Tillie was on his shoulders, Mr. Harvey was at his mid-way to take the handcuffs off.

JJ: Yes, sir.

WB: And the other officers that were around, you said Mr. Jones was where?

JJ: Mr. Jones was on the other side with his other arm and on his mid-section.

WB: Did anybody have a knee, a foot, a leg on Mr. Loggins' back?

JJ: No, sir. The only person that had a knee on him was Officer Tillie and he had it up on his shoulder.

WB: So when you walked up to him to take the handcuffs off, he was still moving around?

JJ: Yes, sir.

WB: When you got the officer's handcuffs off and your handcuffs on, he was unresponsive?

JJ: When they was unlocking them, he was struggling with them. And then they finally maneuvered him around and got the other ones on him and took the other ones off. When they came off, he was unresponsive.

WB: Did he make any noise or complain of pain or say, "I'm hurt," "I need help."

JJ: No, sir.

WB: And you were right there so you would have heard?

JJ: Yes, sir.

MS: I don't have anything else. This concludes the interview with Jerome Johnson. The interview ends at 4:58 p.m.

# C

https://dlphoto.dps.state.ms.us/ViewDetails.asp?num=12

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**      **Change Password**      **Logout**

Search Result For "ROBERT LOGGINS" Using Name Search

# Image Details

## Duplicate License

| DLID : | | Class : | R |
|---|---|---|---|
| Last Name : | LOGGINS | First Name : | ROBERT |
| Middle Name : | DEVON | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 08-25-2016 | Create Date : | 06-19-2017 |
| Expiration Date : | 08-06-2020 | Organ Donor : | N |
| Height : | 5-11 | Weight : | 150 |
| Eye Color : | Black | Hair Color : | BLACK |
| WORKSTATIONID : | 2009202F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 1411 NORTH LEVEE ST | | | |
| GRENADA Mississippi 38901 | | | |

[SCAN DOCUMENT]

[HISTORY]                    [NEW SEARCH]

1 of 1

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=1

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**  **Change Password**  **Logout**

Search Result For " " Using SSN Search

# Image Details

### Renewal

| DLID : | | Class : | R |
|---|---|---|---|
| Last Name : | TILLEY | First Name : | ALBERT |
| Middle Name : | DEANE | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 03-06-2017 | Create Date : | 03-06-2017 |
| Expiration Date : | 11-30-2025 | Organ Donor : | Y |
| Height : | 5-06 | Weight : | 128 |
| Eye Color : | Blue | Hair Color : | Brown |
| WORKSTATIONID : | 2009202F | CardType : | Non-Commercial DL |
| RACE : | White | | |
| Address : | | | |
| 1970 TUSCOLA DRIVE | | | |
| GRENADA Mississippi 38901 | | | |

[SCAN DOCUMENT]

[HISTORY] [NEW SEARCH]

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=11

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY**
**Mississippi Digitized Driver's License Web-based Retrieval**

**Home**          **Change Password**          **Logout**

Search Result For "EDNA CLARK" Using Name Search

# Image Details



[SCAN DOCUMENT]

## Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | CLARK | First Name : | EDNA |
| Middle Name : | MARIE | Gender : | Female |
| SSN : | | Date of Birth : | |
| Issue Date : | 08-13-2014 | Create Date : | 08-13-2014 |
| Expiration Date : | 08-01-2018 | Organ Donor : | N |
| Height : | 4-11 | Weight : | 145 |
| Eye Color : | Green | Hair Color : | Brown |
| WORKSTATIONID : | 2009201F | CardType : | Non-Commercial DL |
| RACE : | White | | |
| Address : | | | |
| 171 MONTGOMERY LANE | | | |
| CARROLLTON Mississippi 38917 | | | |

[HISTORY]                    [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2          TILLEY 117

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=11

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**     **Change Password**     **Logout**

Search Result For [          ] Using DOB Search

# Image Details

### Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | TAYLOR | First Name : | BRADLEY |
| Middle Name : | LEE | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 10-27-2016 | Create Date : | 10-27-2016 |
| Expiration Date : | 06-26-2020 | Organ Donor : | Y |
| Height : | 5-09 | Weight : | 190 |
| Eye Color : | Blue | Hair Color : | Brown |
| WORKSTATIONID : | 2009506F | CardType : | Non-Commercial DL |
| RACE : | White | | |
| Address : | | | |
| 106 CR 5300 | | | |
| BOONEVILLE Mississippi 38829 | | | |

[SCAN DOCUMENT]

[HISTORY]     [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2          TILLEY 118

3/27/2019, 10:16 AM

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=1

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**          **Change Password**          **Logout**

Search Result For "          " Using SSN Search

## Image Details

### Duplicate License

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | SANDERS | First Name : | FRANK |
| Middle Name : | ANTHONY | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 05-13-2016 | Create Date : | 07-21-2017 |
| Expiration Date : | 05-03-2020 | Organ Donor : | N |
| Height : | 6-00 | Weight : | 200 |
| Eye Color : | Brown | Hair Color : | BLACK |
| WORKSTATIONID : | 2009202F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 9 NORTH COLLEGE STREET | | | |
| GRENADA Mississippi 38901 | | | |

[SCAN DOCUMENT]

[HISTORY]          [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2          TILLEY 119

3/27/2019, 10:18 AM

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=1

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY**
**Mississippi Digitized Driver's License Web-based Retrieval**

Home      Change Password      Logout

Search Result For "       " Using SSN Search

# Image Details

## Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | JOHNSON | First Name : | JEROME |
| Middle Name : | CORDARIUS | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 06-22-2017 | Create Date : | 06-22-2017 |
| Expiration Date : | 07-30-2021 | Organ Donor : | N |
| Height : | 6-02 | Weight : | 305 |
| Eye Color : | Brown | Hair Color : | BLACK |
| WORKSTATIONID : | 2009202F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 375 SOUTH LEVEE | | | |
| GRENADA Mississippi 38901 | | | |

[SCAN DOCUMENT]

[HISTORY]                    [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2          TILLEY 120

1 of 1                                                      3/27/2019, 10:20 AM

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=53

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**     **Change Password**     **Logout**

Search Result For "_____" Using DOB Search

# Image Details



[SCAN DOCUMENT]

## Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | GAMMAGE | First Name : | JUSTIN |
| Middle Name : | AVERY | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 10-09-2014 | Create Date : | 10-09-2014 |
| Expiration Date : | 10-10-2022 | Organ Donor : | Y |
| Height : | 5-09 | Weight : | 220 |
| Eye Color : | Brown | Hair Color : | Brown |
| WORKSTATIONID : | 2009202F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 36 SNIDER STREET | | | |
| GRENADA Mississippi 38901 | | | |

[HISTORY]                                            [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2                    TILLEY 121

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=1

# MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## Mississippi Digitized Driver's License Web-based Retrieval

**Home**　　　**Change Password**　　　**Logout**

Search Result For "＿＿＿＿＿" Using SSN Search

# Image Details

## Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | HARVEY | First Name : | RAPHEAL |
| Middle Name : | | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 08-08-2018 | Create Date : | 08-08-2018 |
| Expiration Date : | 03-24-2022 | Organ Donor : | N |
| Height : | 5-11 | Weight : | 210 |
| Eye Color : | Brown | Hair Color : | BLACK |
| WORKSTATIONID : | 2009303F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 113 KING ST | | | |
| GRENADA Mississippi 38901 | | | |

[SCAN DOCUMENT]

[HISTORY]　　　　　　　　　　　　[NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2　　　　　　　TILLEY 122

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=4

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**     **Change Password**     **Logout**

Search Result For "⬜" Using SSN Search

# Image Details



[SCAN DOCUMENT]

### Renewal

| | | | |
|---|---|---|---|
| DLID : | ⬜ | Class : | R |
| Last Name : | WOODALL | First Name : | REGGIE |
| Middle Name : | DION | Gender : | Male |
| SSN : | ⬜ | Date of Birth : | ⬜ |
| Issue Date : | 08-24-2015 | Create Date : | 08-24-2015 |
| Expiration Date : | 06-04-2023 | Organ Donor : | N |
| Height : | 6-03 | Weight : | 235 |
| Eye Color : | Brown | Hair Color : | BLACK |
| WORKSTATIONID : | 2009201F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 1647 MARTHA DRIVE | | | |
| GRENADA Mississippi 38901 | | | |

[HISTORY]                                    [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2                TILLEY 123

3/27/2019, 10:26 AM

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=2

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## Mississippi Digitized Driver's License Web-based Retrieval

Home        Change Password        Logout

Search Result For "⬚" Using SSN Search

## Image Details

### Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | PRAYER | First Name : | MARCUS |
| Middle Name : | CORTEZ | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 08-07-2018 | Create Date : | 08-07-2018 |
| Expiration Date : | 07-23-2022 | Organ Donor : | N |
| Height : | 6-01 | Weight : | 200 |
| Eye Color : | Brown | Hair Color : | BLACK |
| WORKSTATIONID : | 2009201F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 60 WEST GOVAN ST | | | |
| GRENADA Mississippi 38901 | | | |

[SCAN DOCUMENT]

[HISTORY]                    [NEW SEARCH]

https://dlphotos.dps.state.ms.us/ViewDetails.asp?num=4

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
### Mississippi Digitized Driver's License Web-based Retrieval

**Home**       **Change Password**       **Logout**

Search Result For "＿＿＿＿" Using SSN Search

## Image Details

### Renewal

| | | | |
|---|---|---|---|
| DLID : | | Class : | R |
| Last Name : | JONES | First Name : | MICHAEL |
| Middle Name : | KENTARUS | Gender : | Male |
| SSN : | | Date of Birth : | |
| Issue Date : | 05-31-2017 | Create Date : | 05-31-2017 |
| Expiration Date : | 05-11-2021 | Organ Donor : | N |
| Height : | 5-07 | Weight : | 160 |
| Eye Color : | Brown | Hair Color : | BLACK |
| WORKSTATIONID : | 2009208F | CardType : | Non-Commercial DL |
| RACE : | Black | | |
| Address : | | | |
| 2305 GRENADA BLVD | | | |
| GREENWOOD Mississippi 38930 | | | |

[SCAN DOCUMENT]

[HISTORY]                              [NEW SEARCH]

EXHIBIT B - MBI REPORT PART 2                    TILLEY 125

3/27/2019, 10:42 AM

Mississippi Criminal History Record
Information on file as of MARCH 27, 2019

1. INTRODUCTION

This record contains information contained in the criminal history file
of Mississippi Department of Public Safety on the date it was prepared;
if information is needed later, a new inquiry should be made. This
information is based on fingerprint identification.

If the request for this information did not include fingerprints, this
record may not describe the subject of the inquiry.

There may be further information concerning this subject in local files.

Use of this information is subject to state and federal law and is
limited to the purpose stated in the inquiry. Misuse is subject to
criminal and civil penalty.

Offenses are marked as felonies, misdemeanors or violations in
accordance with Mississippi law.

2. SEX OFFENDER DATA

No Sex Offender data.

3. IDENTIFICATION DATA

NAME
LOGGINS, ROBERT, D,
LOGGINS, ROBERT, DEVON,
LOGINS, ROBERT, DEVON,

| SID | MS DOC | DRIVER LICENSE | |
|-----|--------|----------------|---|
| MS0671773X | 160212 | MS: | |

| SSN | MISC IDS | | DNA ON FILE |
|-----|----------|---|-------------|
| | Unknown/NA | | At MS Crime Lab |

| SEX | RACE | DATE OF BIRTH | HEIGHT |
|-----|------|---------------|--------|
| Male | Black | | 5'11" |

| WEIGHT | HAIR | EYES | FINGER PATTERNS |
|--------|------|------|-----------------|
| 154 | Black | Brown | R: WU WU WU WU WU |
| | | | L: WU WU WU WU WU |

| SCARS, MARKS & TATTOOS | DESCRIPTION |
|------------------------|-------------|
| TAT L ARM | RIP EDDIE M |
| TAT NECK | #1 DE'AUDRE |

| PLACE BORN | CITIZENSHIP | INS NUMBER |
|------------|-------------|------------|
| MS | Unknown | Unknown/NA |

MUGSHOTS
A mugshot of this person may be available from MS DOC online at
www.mdoc.state.ms.us and select 'Inmate Search'.

```
SAMPLE TYPE    AGENCY
Palmprint      MS0220000 - GRENADA COUNTY SO
Photo          MS0220000 - GRENADA COUNTY SO
Photo          MS0360000 - LAFAYETTE COUNTY SO
Photo          MS061015C - MS DOC - CMCF
```

```
OCCUPATION          EMPLOYER                    AS OF
UNEMPLOYED          Unknown/NA                  2011-08-07
```

```
RESIDENCE                                       AS OF
1411 NORTH LEVEE ST.                            2011-08-07
GRENADA,MS 38901

81 RIVERSIDE PL.                                2016-02-11
OXFORD MS 38655

81 RIVERSIDE PL                                 2017-01-30
OXFORD MS
38655
```

CAUTION COMMENTS
None.

4.  CRIMINAL HISTORY SUMMARY

CONVICTIONS: 0 Felony; 0 Misdemeanor; 0 Violation; 0 Unknown
ARRESTS: 1 Felony; 1 Misdemeanor; 1 Violation; 0 Unknown
FAILURE TO APPEAR: 0
MOST RECENT ARREST: 2017-01-30
HABITUAL OFFENDER: Unknown

5.  CORRECTIONS HISTORY

```
DATE                CURRENT STATUS        AGENCY        DOC NUMBER
2011-09-16          Inmate Intake         MS061015C     160212
2017-02-16          Inmate Intake         MS061015C     160212
```

Additional Corrections information may be available online at
www.mdoc.state.ms.us and select 'Inmate Search'.  Or, contact MS DOC -
CMCF by phone at 932-2880.

6.  CRIMINAL HISTORY

ARREST 1 EVENTS: (ATN 9123079207)
```
EVENT DATE  EVENT                          SEVERITY     OFFENSE DATE CNTS
2011-08-07  Arrest Charge                  Violation    2011-08-07   1
```

```
            STATUTE:  47-7-37
STATUTE DESCRIPTION:  Probation Violation
AGENCY DESCRIPTION:  VIOLATION OF PROBATION
      Arrest AGENCY:  MS0220000 - GRENADA COUNTY SO
```

ARREST 2 EVENTS: (ATN 9133623112)

```
EVENT DATE   EVENT                              SEVERITY    OFFENSE DATE CNTS
2016-02-11   Arrest Charge                      Felony      2016-02-11   1

             STATUTE:  47-7-27
STATUTE DESCRIPTION:  Parole Violation
       Arrest AGENCY:  MS0360000 - LAFAYETTE COUNTY SO

ARREST 3 EVENTS: (ATN 9133646074)
EVENT DATE   EVENT                              SEVERITY    OFFENSE DATE CNTS
2017-01-30   Arrest Charge                      Misdemeanor 2017-01-30   1

             STATUTE:  63-1-5
STATUTE DESCRIPTION:  Motor Vehicle Violation - No License
       Arrest AGENCY:  MS0360000 - LAFAYETTE COUNTY SO
```

7. AGENCIES

```
CODE         NAME & ADDRESS                     PHONE
MS0220000    GRENADA COUNTY SO                  V: 226-2721/226-2722
             370 VAN DORN                       F: Unknown
             GRENADA, MS 38901

MS0360000    LAFAYETTE COUNTY SO                V: 234-6421/234-6423
             711 JACKSON AVENUE                 F: Unknown
             OXFORD, MS 38655

MS061015C    MS DOC - CMCF                      V: 932-2880
             POST OFFICE BOX 88550              F: Unknown
             PEARL, MS 39208
```

End of Rap Sheet

```
NL01006T,MRI3863516
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/CLARK,EDNA.SOC/          .PUR/C.ATN/MSTEED/MBI/DEATHIN
V.
END
MRI 3863526 21126    4 AT 11:33:10 03/27/19
```

```
                    Mississippi Criminal History Record
                    Information on file as of MARCH 27, 2019
```

1. INTRODUCTION

This record contains information contained in the criminal history file
of Mississippi Department of Public Safety on the date it was prepared;
if information is needed later, a new inquiry should be made. This
information is based on fingerprint identification.

If the request for this information did not include fingerprints, this
record may not describe the subject of the inquiry.

There may be further information concerning this subject in local files.

Use of this information is subject to state and federal law and is
limited to the purpose stated in the inquiry. Misuse is subject to
criminal and civil penalty.

Offenses are marked as felonies, misdemeanors or violations in
accordance with Mississippi law.

2. SEX OFFENDER DATA

No Sex Offender data.

3. IDENTIFICATION DATA

NAME
TAYLOR, BRADLEY, LEE,

SID                MS DOC              DRIVER LICENSE
MS08123888         Unknown/NA          MS:

SSN                MISC IDS                                DNA ON FILE
                   Unknown/NA                              None

SEX                RACE                DATE OF BIRTH        HEIGHT
Male               White                                   5'09"

WEIGHT             HAIR                EYES                 FINGER PATTERNS
190                Brown               Blue                 R: RS RS UC UC UC
                                                            L: UC LS LS LS UC

SCARS, MARKS & TATTOOS          DESCRIPTION
Unknown/NA                      Unknown/NA

PLACE BORN          CITIZENSHIP         INS NUMBER
MS                  Unknown             Unknown/NA

MUGSHOTS
No mugshots available in Criminal History Repository.

SAMPLE TYPE         AGENCY
Photo               MS0590000 - PRENTISS COUNTY SO
```

```
OCCUPATION           EMPLOYER                        AS OF
FARMER               SELF EMPLOYED                   2016-05-12
                     100 CR 5300 BOONEVILLE MS


RESIDENCE                                            AS OF
100 CR 5300                                          2016-05-12
BOONEVILLE MS 38829

CAUTION COMMENTS
None.
```

4.  CRIMINAL HISTORY SUMMARY

```
CONVICTIONS: 0 Felony; 0 Misdemeanor; 0 Violation; 0 Unknown
ARRESTS: 0 Felony; 2 Misdemeanor; 0 Violation; 2 Unknown
FAILURE TO APPEAR: 0
MOST RECENT ARREST: 2016-05-12
HABITUAL OFFENDER: Unknown
```

5.  CORRECTIONS HISTORY

No Corrections Data.

6.  CRIMINAL HISTORY

```
ARREST 1 EVENTS: (ATN 9133518211)
EVENT DATE  EVENT                         SEVERITY    OFFENSE DATE CNTS
2016-05-12  Arrest Charge                 Misdemeanor 2016-05-04   1

            STATUTE:  97-17-43
STATUTE DESCRIPTION:  Larceny - Petit
     Arrest AGENCY:  MS0590000 - PRENTISS COUNTY SO

2016-05-12  Arrest Charge                 Unknown     2016-05-04   1

            STATUTE:  97-17-67
STATUTE DESCRIPTION:  Malicious Mischief
     Arrest AGENCY:  MS0590000 - PRENTISS COUNTY SO

2016-05-12  Arrest Charge                 Unknown     2016-05-04   1

            STATUTE:  97-29-45
STATUTE DESCRIPTION:  Telephone or Electronic Communication:
                      Obscene,Indecent,Annoying,Threatening or Harassing
     Arrest AGENCY:  MS0590000 - PRENTISS COUNTY SO

2016-05-12  Arrest Charge                 Misdemeanor 2016-05-04   1

            STATUTE:  97-3-7(1)(a)(iii)
STATUTE DESCRIPTION:  Simple Assault; attempt by physical menace put
                      another in fear of imminent serious bodily harm
     Arrest AGENCY:  MS0590000 - PRENTISS COUNTY SO
```

7. AGENCIES

```
CODE        NAME & ADDRESS                       PHONE
```

```
MS0590000    PRENTISS COUNTY SO              V: 662-728-6232
             1901 E Chambers Drive          F: Unknown
             BOONEVILLE, MS 38829
```

End of Rap Sheet

```
NL01006T,MRI3863866
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/SANDERS,FRANK.SOC/            .PUR/C.ATN/MSTEED/MBI/DEAT
HINV.
END
MRI 3863867 21126    7 AT 11:35:19 03/27/19
```

```
NL01006T,MRI3863992
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/JOHNSON,JEROME.SOC/            .PUR/C.ATN/MSTEED/MBI/DEA
THINV.
END
MRI 3863995 21126    8 AT 11:36:14 03/27/19
```

```
NL01006T,MRI3864349
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/HARVEY,RAPHEAL.SOC/            PUR/C.ATN/MSTEED/MBI/DEA
THINV.
END
MRI 3864352 21126   10 AT 11:38:59 03/27/19
```

```
NL01006T,MRI3864458
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/WOODALL,REGGIE.SOC/            .PUR/C.ATN/MSTEED/MBI/DEA
THINV.
END
MRI 3864459 21126    11 AT 11:40:14 03/27/19
```

```
NL01006T,MRI3864580
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/PRAYER,MARCUS.SOC/          .PUR/C.ATN/MSTEED/MBI/DEAT
HINV.
END
MRI 3864582 21126   12 AT 11:41:22 03/27/19
```

```
NL01006T,MRI3864637
MSMHP0006
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE
IDENTIFICATION INDEX (III)
FOR
NAM/JONES,MICHAEL.SOC/          .PUR/C.ATN/MSTEED/MBI/DEAT
HINV.
END
MRI 3864639 21126   13 AT 11:42:05 03/27/19
```

```
Reference: 05BV000053
Msg ID   : 05BV000053
Msg Key  : DR
Date/Time: 20181129100246
Ent Agy  :
Requester:
User     :
ORI      : MSOLN0000
Source   : USER
Dest     : MS0220000
Control  :
Summary  : DQ: MS, [        ]

TXT: OLN/[        ]

OLN/801971871      CLASS/Regular Operator
LOGGINS       ROBERT        DEVON
1411 NORTH LEVEE ST          GRENADA      MS  389010000
RAC/B    SEX/M  EYE/Black      HAI/Black    HGT/511      WGT/150
SOC/[        ]  DOB/[        ]  ISSU/20160825 EXP/20200806
RESTRICTIONS/NONE       ENDORSEMENTS/NONE ELIG DATE/00000000
STATUS NON-CDL:Suspended          STATUS CDL:UNLICENSED

CONVICTED OF         OCCUR-DT  CONV-DT COM/HAZ ACC ENF-AGENCY      DISP
SPEEDING 20 OVER MPH  120916   011717 N N      N  Grenada PD       GLT
   ** END OF DRIVERS HISTORY **


MRI 9995726 32106    75 AT 10:02:46 11/29/18


================================================================
```

```
Reference: 05BV000058
Msg ID   : 05BV000058
Msg Key  : QH
Date/Time: 20181129100417
Ent Agy  :
Requester:
User     :
ORI      : MSNCIC000
Source   : NCIC
Dest     : 32106
Control  : MRI9995892
Summary  : QH: C, SANDERS DEATH INV, LOGGINS,ROBERT DEVON, M, B

TXT: 7L010087,MRI9995892
MS0220000
THIS NCIC INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
INQUIRY ON NAM/LOGGINS,ROBERT DEVON SEX/M RAC/B DOB/          SOC/
PUR/C ATN/SANDERS DEATH INV
NAME                          FBI NO.        INQUIRY DATE
LOGGINS,ROBERT DEVON          TH6AXHJWD      2018/11/29

SEX RACE BIRTH DATE     HEIGHT WEIGHT EYES HAIR PHOTO
M   B                   508    160    BRO  BLK  Y

BIRTH PLACE
MISSISSIPPI

FINGERPRINT CLASS       PATTERN CLASS

ALIAS NAMES
LOGGINS,ROBERT D                  LOGINS,ROBERT DEVON

SOCIAL SECURITY

IDENTIFICATION DATA UPDATED 2018/06/27

THE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
FOLLOWING:
  MISSISSIPPI   - STATE ID/MS0671773X

THE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
INDEX BY USING THE APPROPRIATE NCIC TRANSACTION.


END
MRI 9995894 32106   76 AT 10:04:17 11/29/18


===================================================================
```

```
Reference: 05BV00005K
Msg ID   : 05BV00005K
Msg Key  : FR
Date/Time: 20181129100959
Ent Agy  :
Requester:
User     :
ORI      : MSSIR0000
Source   : USER
Dest     : 32106
Control  :
Summary  : FQ: MS, SANDERS DEATH INV, C, MS0671773X
```

TXT: ATN/SANDERS DEATH INV

This MS Criminal History System response is the result of your inquiry:

```
FQ.MS0220000.MS.*MRI9996457.TXT
PUR/C.ATN/SANDERS DEATH INV.SID/MS0671773X.FMT/T
```

                    Mississippi Criminal History Record
                 Information on file as of NOVEMBER 29, 2018

## 1. INTRODUCTION

This record contains information contained in the criminal history file
of Mississippi Department of Public Safety on the date it was prepared;
if information is needed later, a new inquiry should be made. This
information is based on fingerprint identification.

If the request for this information did not include fingerprints, this
record may not describe the subject of the inquiry.

There may be further information concerning this subject in local files.

Use of this information is subject to state and federal law and is
limited to the purpose stated in the inquiry. Misuse is subject to
criminal and civil penalty.

Offenses are marked as felonies, misdemeanors or violations in
accordance with Mississippi law.

## 2. SEX OFFENDER DATA

No Sex Offender data.

## 3. IDENTIFICATION DATA

NAME
LOGGINS, ROBERT, D,
LOGGINS, ROBERT, DEVON,
LOGINS, ROBERT, DEVON,

| SID | MS DOC | DRIVER LICENSE | |
|-----|--------|----------------|---|
| MS0671773X | 160212 | MS: | |

| SSN | MISC IDS | | DNA ON FILE |
|-----|----------|---|-------------|
| | Unknown/NA | | At MS Crime Lab |

| SEX | RACE | DATE OF BIRTH | HEIGHT |
|-----|------|---------------|--------|
| Male | Black | | 5'11" |

| WEIGHT | HAIR | EYES | FINGER PATTERNS |
|--------|------|------|-----------------|
| 154 | Black | Brown | R: WU WU WU WU WU |
| | | | L: WU WU WU WU WU |

| SCARS, MARKS & TATTOOS | DESCRIPTION |
|------------------------|-------------|
| TAT L ARM | RIP EDDIE M |
| TAT NECK | #1 DE'AUDRE |

| PLACE BORN | CITIZENSHIP | INS NUMBER |
|------------|-------------|------------|
| MS | Unknown | Unknown/NA |

MUGSHOTS
A mugshot of this person may be available from MS DOC online at
www.mdoc.state.ms.us and select 'Inmate Search'.

```
SAMPLE TYPE    AGENCY
Palmprint      MS0220000 - GRENADA COUNTY SO
Photo          MS0220000 - GRENADA COUNTY SO
Photo          MS0360000 - LAFAYETTE COUNTY SO
Photo          MS061015C - MS DOC - CMCF
```

```
OCCUPATION       EMPLOYER                          AS OF
UNEMPLOYED         Unknown/NA                       2011-08-07

RESIDENCE                                           AS OF
1411 NORTH LEVEE ST.                                2011-08-07
GRENADA,MS 38901

81 RIVERSIDE PL.                                    2016-02-11
OXFORD MS 38655

81 RIVERSIDE PL                                     2017-01-30
OXFORD MS
38655
```

CAUTION COMMENTS
None.

4.  CRIMINAL HISTORY SUMMARY

CONVICTIONS: 0 Felony; 0 Misdemeanor; 0 Violation; 0 Unknown
ARRESTS: 1 Felony; 1 Misdemeanor; 1 Violation; 0 Unknown
FAILURE TO APPEAR: 0
MOST RECENT ARREST: 2017-01-30
HABITUAL OFFENDER: Unknown

5.  CORRECTIONS HISTORY

```
DATE           CURRENT STATUS          AGENCY       DOC NUMBER
2011-09-16      Inmate Intake           MS061015C    160212
2017-02-16      Inmate Intake           MS061015C    160212
```

Additional Corrections information may be available online at
www.mdoc.state.ms.us and select 'Inmate Search'. Or, contact MS DOC -

CMCF by phone at 932-2880.

6.  CRIMINAL HISTORY

ARREST 1 EVENTS: (ATN 9123079207)
```
EVENT DATE   EVENT                      SEVERITY    OFFENSE DATE CNTS
2011-08-07   Arrest Charge              Violation   2011-08-07   1

             STATUTE:      47-7-37
STATUTE DESCRIPTION:   Probation Violation
 AGENCY DESCRIPTION:   VIOLATION OF PROBATION
       Arrest AGENCY:  MS0220000 - GRENADA COUNTY SO
```

ARREST 2 EVENTS: (ATN 9133623112)
```
EVENT DATE   EVENT                      SEVERITY    OFFENSE DATE CNTS
2016-02-11   Arrest Charge              Felony      2016-02-11   1

             STATUTE:      47-7-27
STATUTE DESCRIPTION:   Parole Violation
       Arrest AGENCY:  MS0360000 - LAFAYETTE COUNTY SO
```

ARREST 3 EVENTS: (ATN 9133646074)
```
EVENT DATE   EVENT                      SEVERITY    OFFENSE DATE CNTS
2017-01-30   Arrest Charge              Misdemeanor 2017-01-30   1

             STATUTE:      63-1-5
STATUTE DESCRIPTION:   Motor Vehicle Violation - No License
       Arrest AGENCY:  MS0360000 - LAFAYETTE COUNTY SO
```

7. AGENCIES

```
CODE         NAME & ADDRESS                PHONE
MS0220000    GRENADA COUNTY SO             V: 226-2721/226-2722
             370 VAN DORN                  F: Unknown
             GRENADA, MS 38901

MS0360000    LAFAYETTE COUNTY SO           V: 234-6421/234-6423
             711 JACKSON AVENUE            F: Unknown
             OXFORD, MS 38655
```

```
MS061015C    MS DOC - CMCF                    V: 932-2880
             POST OFFICE BOX 88550            F: Unknown
             PEARL, MS 39208

END OF RECORD

MRI 9996458 32106    79 AT 10:09:59 11/29/18

========================================================
```

# **D**



# MISSISSIPPI STATE MEDICAL EXAMINER'S OFFICE
## 215 ALLEN STUART DRIVE
## PEARL, MS 39208



---

# PATHOLOGICAL EXAMINATION

**Loggins, Robert**

**Case No. ME18-1164**      **County: Grenada**

*Sex:* M      *Age: 26*      *Race: B*

**Date and Time of Autopsy: November 30, 2018 at 0900 Hours**

## FINAL PATHOLOGIC DIAGNOSES

### PRIMARY DIAGNOSES:

I. Methamphetamine Toxicity

    A.    Evidenced by:
        1. No lethal natural disease
        2. No lethal traumatic injury

    B.    Resulting in:
        1. Fatal cardiac arrhythmia

    C.    Associated with:
        1. Abrasions and contusions, (head, hands and legs)
        2. Puncture marks (back)

Forensic Pathologist:        Mark M. LeVaughn, MD



ME 18-1164

11-30-18

STATE
MEDICAL
EXAMINER

**BODY DIAGRAM**

Front

Back

CONTUSION

CONTUSION

ABRASIONS

CONTUSION

ABRASION

ABRASION

E.T. TUBE

BLACK HAIR
BROWN EYES
NATURAL TEETH
4+/4+ RIGOR
POSTERIOR LIVOR

CONTUSION

PUNCTURE
TYPE
WOUNDS
1 MM EACH

EKG
&
DEFIBRILLATOR
PADS

ABRASION

NO
EXTERNAL
LETHAL
TRAUMATIC
INJURY

ABRASIONS

ID

(X) = TATTOOS

Decedent's
Height _____ inches

Name _____
Examined
By _____ Date _____

ME-3 (5-85)

Laboratory Report Continued

**REFERENCE- MSFL Case Number 18-018469-0001**                          Page 3 of 6

 **NMS** L A B S

NMS Labs                                    **CONFIDENTIAL**
3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900   Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, F-ABFT, DABCC-TC, Laboratory Director

**Toxicology Report**

**Report Issued** 12/14/2018 17:01

| | |
|---|---|
| **Patient Name** | LOGGINS, ROBERT |
| **Patient ID** | 18-18469 |
| **Chain** | 18353214 |
| **Age** Not Given | **DOB** Not Given |
| **Gender** | Not Given |
| **Workorder** | 18353214 |

To:   10109
Mississippi State Medical Examiner Office
Attn: Sam Howell
215 Allen Stuart Drive
Pearl, MS  39208

*ME18-1164*

Page 1 of 4

**Positive Findings:**

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| Naloxone | Positive | ng/mL | 001 - Femoral Blood |
| Delta-9 Carboxy THC | 5.2 | ng/mL | 001 - Femoral Blood |
| Delta-9 THC | 1.4 | ng/mL | 001 - Femoral Blood |
| Amphetamine | 43 | ng/mL | 001 - Femoral Blood |
| Methamphetamine | 600 | ng/mL | 001 - Femoral Blood |

See Detailed Findings section for additional information

**Testing Requested:**

| Analysis Code | Description |
|---|---|
| 8052B | Postmortem, Expanded, Blood (Forensic) |

**Specimens Received:**

| ID | Tube/Container | Volume/ Mass | Collection Date/Time | Matrix Source | Miscellaneous Information |
|---|---|---|---|---|---|
| 001 | Gray Top Tube | 8.75 mL | Not Given | Femoral Blood | |
| 002 | Gray Top Tube | 8.75 mL | Not Given | Femoral Blood | |
| 003 | Gray Top Tube | 8 mL | Not Given | Femoral Blood | |
| 004 | Gray Top Tube | 6.75 mL | Not Given | Femoral Blood | |
| 005 | Red Vial | 8.75 mL | Not Given | Urine | |
| 006 | Red Vial | 4 mL | Not Given | Vitreous Fluid | |
| 007 | Red Vial | 2.25 mL | Not Given | Bile | |
| 008 | White Plastic Container | 70 mL | Not Given | Gastric Fluid | THICK, DARK BROWN FLUID WITH BITS, pH=4 |

All sample volumes/weights are approximations.

Specimens received on 12/06/2018.

NMS v.18.0

CERTIFIED REPORT

**NAME**     **Robert D. Loggins**
**CASE #**    **ME18-1164**

## IDENTIFICATION:

A postmortem examination was performed on the body of Robert Loggins at the Mississippi State Medical Examiner's Office in Jackson, Mississippi, on November 30, 2018 by Dr. Mark M. LeVaughn, Chief Medical Examiner.

## EXTERNAL EXAMINATION:

The body is that of a normally developed adult male who appears to be the stated age of 26 years. The eyes are brown. The hair is black. The teeth are natural. Rigidity is 4+/4+. Lividity is poorly discernible. Clothing on the body consists of black underwear, white socks, blue jean shorts, brown shoes (boots) and a black shirt.

## EVIDENCE OF TREATMENT:

EKG and defibrillator pads are on the chest. An ET tube is in the mouth and the tip is in the trachea

## EVIDENCE OF INJURY:

There is no identifiable evidence of external or internal traumatic injury that would have caused his death. A 3 cm contusion is on the right forehead. A 3 cm contusion is on the left forehead. A 4 cm contusion is in the subcutaneous tissue of the right posterior neck. A 1 x 2 cm abrasion is on the left side of the face. There are three 1-2 cm abrasions on the mid forehead. A 4 x .1 cm abrasion is on the right side of the head. A 1 cm abrasion is on the knuckle area of the right hand. 1-2 cm abrasions are on the anterior right and left knee. Two 1 mm puncture type injuries are on the back.

## INTERNAL EXAMINATION:

HEAD AND NECK:

Dissection of the scalp shows no evidence of soft tissue injury or skull fracture. Internal examination of the cranial cavity shows no evidence of hemorrhage or exudate. The dura and leptomeninges are unremarkable. The brain weighs 1380 grams. The vessels at the base of the brain form an essentially normal circle of Willis and are patent. The cranial nerves are unremarkable. There is no evidence of brain swelling or herniation. The sulci and gyri are normally developed. The cerebral and cerebellar hemispheres are roughly symmetric and the brain stem is in the midline. Multiple sections of the brain show well-demarcated gray and white matter. The ventricular system is in the midline, not enlarged and wet with clear cerebral spinal fluid. The basal ganglia are unremarkable. There is no evidence of pathologic change or traumatic injury on multiple cut surfaces of the brain. Multiple sections of the brainstem and cerebellum show no pathologic change or traumatic injury. Examination of the floor and the base of the skull show no evidence of fracture.

2

**NAME**      Robert D. Loggins
**CASE #**    ME18-1164

HEAD AND NECK (Continued):
    There is no pathologic change or traumatic injury within the oral cavity.  Dissection and examination of the neck shows no pathologic change or traumatic injury to the soft tissue, cartilaginous or vascular structures of the neck.  The carotid arteries and jugular veins are patent. The upper airway is patent. The thyroid gland is unremarkable.

CHEST:
    Dissection of the anterior chest shows no evidence of deep soft tissue injury, rib or sternal fracture.  Internal examination of the chest cavity shows the heart and lungs with the usual shape and in the usual position.  The heart weighs 399 grams. The predicted mean weight is grams. The right lung weighs    550 grams.  The left lung weighs 500 grams.  The pericardial and pleural cavities are wet with serous fluid.  The great vessels arise from and return to the heart in a normal manner.  There are no pericardial or pleural adhesions.  The epicardial and pericardial surfaces of the heart are smooth.  Multiple sections of the coronary arteries are patent.  Multiple sections of the heart show red-brown myocardium with no hemorrhage, scarring or necrosis.  The endocardial surfaces are smooth and the valves are thin and flexible with no fusion, vegetation or thickening.  The posterior mediastinum including the aorta, esophagus and lymph nodes are all unremarkable.  The external and cut surfaces of both lungs are red-pink and purple.  The cut surfaces show congestion and edema with no evidence of consolidation, tumor or emboli.  The proximal and distal airways are patent.  The posterior ribs, lower cervical and thoracic vertebrae show no pathologic change or traumatic injury.  The thoracic aspect of the diaphragm is unremarkable.

ABDOMEN:
    The peritoneal cavity is wet with serous fluid.  The gastrointestinal tract including the esophagus shows no pathologic change or traumatic injury.  The stomach contains approximately 100 cubic centimeters of thick red brown liquid.  The mucosal surfaces are intact with no evidence of hemorrhage or ulcer.  The remaining abdominal visceral organs have the usual shape and are in the usual position.  The external and cut surfaces of the liver, gallbladder, pancreas, spleen, adrenal glands and kidneys show no other pathologic change or traumatic injury.  Within the pelvis, the ureters and urinary bladder show no traumatic injury or pathologic change.

**MICROSCOPIC DESCRIPTION:**

    None

EXHIBIT B - MBI REPORT PART 2       TILLEY 149

NAME       Robert D. Loggins
CASE #     ME18-1164

**CAUSE OF DEATH:**          **Methamphetamine Toxicity**

**MANNER OF DEATH:**         **Accident**

**OPINION:**

This 26 year old male identified as Robert D. Loggins died as a result of the cardiotoxic effects of Methamphetamine, cardiac arrhythmia. There was no identifiable evidence of natural disease that would have caused or contributed to his death. Although several abrasions and contusions were present, there was no identifiable evidence of traumatic injury that would have caused or contributed to his death. With the currently available information, toxicology and and postmortem findings, the cause of death is Methamphetamine Toxicity and the manner of death is Accident

Mark M. LeVaughn, MD
**Chief Medical Examiner**

4



# Mississippi State Medical Examiner's Office
215 Allen Stuart Drive
Pearl, MS 39208
601-420-9140



## PATHOLOGICAL EXAMINATION

**CASE:** ME18-1164                    **COUNTY:** Grenada

**NAME OF DECEDENT**:  Robert D. Loggins          **SEX:** Male          **AGE:** 26 yoa

**DATE OF EXAMINATION:** November 30, 2018

## PROVISIONAL PATHOLOGICAL DIAGNOSIS

### PRIMARY DIAGNOSIS

1.  Pending Toxicology

**CAUSE OF DEATH:**          Pending

**MANNER OF DEATH:**          Pending

**Mark M. LeVaughn, M.D., Chief Medical Examiner**          **Date:** November 30, 2018



# MISSISSIPPI FORENSICS LABORATORY



LI-334-T

## Lab Case #: 18-018469-0001

**TOXICOLOGY Report**

Main Laboratory

215 Allen Stuart Dr
Pearl, MS 39208
601-420-9000
FAX: 601-420-9001

**January 02, 2019**

Page 1 of 6

DMEI Jo Morman
GRENADA COUNTY CMEI
1196 S Mound St
Grenada, MS 38901
662-226-3123
**REFERENCE- Agency Case # ME18-1164**

VICTIM: Robert D. Loggins

## REQUEST FOR ANALYSIS

On 11/30/2018 it was requested that the TOXICOLOGY section perform the following analysis: Postmortem Reference Lab. This examination was completed on 1/2/2019.

## EVIDENCE

11/30/2018 at 2:35 PM, Forensic Scientist Lynee Boackle received the following evidence from the MS STATE MEDICAL EXAMINER via Heather McLendon:

Submission 001          One sealed plastic bag labeled "Robert Loggins" containing biological specimens.

Submission 001-A        Four grey top tubes of blood contained in a sealed plastic bag.

Submission 001-B        One red top tube of vitreous fluid contained in a sealed plastic bag.

Submission 001-C        One red top tube of urine contained in a sealed plastic bag.

Submission 001-D        One red top tube of bile contained in a sealed plastic bag.

Submission 001-E        One specimen container of gastric contents contained in a sealed plastic bag.

## RESULTS

**Submission #: 001**

*See remark below

Submission 001 was submitted to NMS Labs for analysis. See attached report.

## REMARKS

Laboratory Report Continued

**REFERENCE- MSFL Case Number  18-018469-0001**                    Page 2 of 6

---

Case Analyst:                                                      Technical Reviewer:

*Alyssa P. Bailey*                                                 *Sam L. Howell*
_____                                          _____
Alyssa Bailey, D-ABFT-FA                                          Sam Howell, F-ABFT
Section Chief - Toxicology                                        Director

---

This report represents the analytical results of the examinations performed on the items of evidence in this case. It should be noted that this report does not represent all documentary items contained in the master file. Should additional material be required for court purposes, please contact the laboratory as soon as possible.
All samples submitted for toxicological examination will be routinely disposed of six (6) months after analyses are completed. If you anticipate that this evidence will be needed, please contact the laboratory to arrange for its return.

EXHIBIT B - MBI REPORT PART 2                    TILLEY 153

Laboratory Report Continued

**REFERENCE- MSFL Case Number 18-018469-0001**                        **Page 3 of 6**



**NMS Labs**

3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900  Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, F-ABFT, DABCC-TC, Laboratory Director

**CONFIDENTIAL**

**Toxicology Report**

Report Issued     12/14/2018 17:01

| | |
|---|---|
| **Patient Name** | LOGGINS, ROBERT |
| **Patient ID** | 18-18469 |
| **Chain** | 18353214 |
| **Age** Not Given | **DOB** Not Given |
| **Gender** | Not Given |
| **Workorder** | 18353214 |

To:     **10109**
Mississippi State Medical Examiner Office
Attn: Sam Howell
215 Allen Stuart Drive
Pearl, MS   39208

**Page 1 of 4**

**Positive Findings:**

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| Naloxone | Positive | ng/mL | 001 - Femoral Blood |
| Delta-9 Carboxy THC | 5.2 | ng/mL | 001 - Femoral Blood |
| Delta-9 THC | 1.4 | ng/mL | 001 - Femoral Blood |
| Amphetamine | 43 | ng/mL | 001 - Femoral Blood |
| Methamphetamine | 600 | ng/mL | 001 - Femoral Blood |

See Detailed Findings section for additional information

**Testing Requested:**

| Analysis Code | Description |
|---|---|
| 8052B | Postmortem, Expanded, Blood (Forensic) |

**Specimens Received:**

| ID | Tube/Container | Volume/ Mass | Collection Date/Time | Matrix Source | Miscellaneous Information |
|---|---|---|---|---|---|
| 001 | Gray Top Tube | 8.75 mL | Not Given | Femoral Blood | |
| 002 | Gray Top Tube | 8.75 mL | Not Given | Femoral Blood | |
| 003 | Gray Top Tube | 8 mL | Not Given | Femoral Blood | |
| 004 | Gray Top Tube | 6.75 mL | Not Given | Femoral Blood | |
| 005 | Red Vial | 8.75 mL | Not Given | Urine | |
| 006 | Red Vial | 4 mL | Not Given | Vitreous Fluid | |
| 007 | Red Vial | 2.25 mL | Not Given | Bile | |
| 008 | White Plastic Container | 70 mL | Not Given | Gastric Fluid | THICK, DARK BROWN FLUID WITH BITS, pH=4 |

All sample volumes/weights are approximations.
Specimens received on 12/06/2018.

NMS v.18.0

EXHIBIT B - MBI REPORT PART 2                        TILLEY 154

## Laboratory Report Continued

**REFERENCE- MSFL Case Number  18-018469-0001**                                   Page 4 of 6

---

 NMS   **CONFIDENTIAL**

| | |
|---|---|
| Workorder | 18353214 |
| Chain | 18353214 |
| Patient ID | 18-18469 |

**Page 2 of 4**

**Detailed Findings:**

| Analysis and Comments | Result | Units | Rpt. Limit | Specimen Source | Analysis By |
|---|---|---|---|---|---|
| Naloxone | Positive | ng/mL | 1.0 | 001 - Femoral Blood | LC/TOF-MS |
| Delta-9 Carboxy THC | 5.2 | ng/mL | 5.0 | 001 - Femoral Blood | LC-MS/MS |
| Delta-9 THC | 1.4 | ng/mL | 0.50 | 001 - Femoral Blood | LC-MS/MS |
| Amphetamine | 43 | ng/mL | 5.0 | 001 - Femoral Blood | LC-MS/MS |
| Methamphetamine | 600 | ng/mL | 5.0 | 001 - Femoral Blood | LC-MS/MS |

**Other than the above findings, examination of the specimen(s) submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.**

**Reference Comments:**

1. Amphetamine - Femoral Blood:

   Amphetamine (Adderall, Dexedrine) is a Schedule II phenethylamine CNS-stimulant. It is used therapeutically in the treatment of narcolepsy and obesity and also in the treatment of hyperactivity in children. Amphetamine has a high potential for abuse. When used in therapy, initial doses should be small and increased gradually. In the treatment of narcolepsy, amphetamine is administered in daily divided doses of 5 to 60 mg. For obesity and children with attention deficits, usual dosage is 5 or 10 mg daily.

   Following a single oral dose of 10 mg amphetamine sulfate, a reported peak blood concentration of 40 ng/mL was reached at 2 hr. Following a single 30 mg dose to adults, an average peak plasma level of 100 ng/mL was reported at 2.5 hr. A steady-state blood level of 2000 - 3000 ng/mL was reported in an addict who consumed approximately 1000 mg daily.

   Overdose with amphetamine can produce restlessness, hyperthermia, convulsions, hallucinations, respiratory and/or cardiac failure. Reported blood concentrations in amphetamine-related fatalities ranged from 500 - 41000 ng/mL (mean, 9000 ng/mL). Amphetamine is also a metabolite of methamphetamine, benzphetamine and selegiline.

2. Delta-9 Carboxy THC (Inactive Metabolite) - Femoral Blood:

   Delta-9-THC is the principle psychoactive ingredient of marijuana/hashish. Delta-9-carboxy-THC (THCC) is the inactive metabolite of THC. The usual peak concentrations in serum for 1.75% or 3.55% THC marijuana cigarettes are 10 - 101 ng/mL attained 32 to 240 minutes after beginning smoking, with a slow decline thereafter. The ratio of whole blood concentration to plasma concentration is unknown for this analyte. THCC may be detected for up to one day or more in blood. Both delta-9-THC and THCC may be present substantially longer in chronic users. THCC is usually not detectable after passive inhalation.

3. Delta-9 THC (Active Ingredient of Marijuana) - Femoral Blood:

   Marijuana is a DEA Schedule I hallucinogen. Pharmacologically, it has depressant and reality distorting effects. Collectively, the chemical compounds that comprise marijuana are known as Cannabinoids.

   Delta-9-THC is the principle psychoactive ingredient of marijuana/hashish. It rapidly leaves the blood, even during smoking, falling to below detectable levels within several hours. Delta-9-carboxy-THC (THCC) is the inactive metabolite of THC and may be detected for up to one day or more in blood. Both delta-9-THC and THCC may be present substantially longer in chronic users.
   THC concentrations in blood are usually about one-half of serum/plasma concentrations. Usual peak levels in serum for 1.75% or 3.55% THC marijuana cigarettes: 50 - 270 ng/mL at 6 to 9 minutes after beginning smoking, decreasing to less than 5 ng/mL by 2 hrs.

4. Methamphetamine - Femoral Blood:

   d-methamphetamine is a DEA schedule II stimulant drug capable of causing hallucinations, aggressive behavior and irrational reactions. Chemically, there are two forms (isomers) of methamphetamine: l- and d-methamphetamine. The l-isomer is used in non-prescription inhalers as a decongestant and has weak CNS-stimulatory activity. The d-isomer has been used therapeutically as an anorexigenic agent in the treatment of obesity and has potent CNS-, cardiac- and circulatory-stimulatory activity. Amphetamine and norephedrine (phenylpropanolamine) are metabolites of methamphetamine. d-methamphetamine is an abused substance because of its stimulatory effects and is also addictive.

NMS v.18.0

EXHIBIT B - MBI REPORT PART 2                    TILLEY 155

Laboratory Report Continued

**REFERENCE- MSFL Case Number 18-018469-0001**                    Page 5 of 6

 **NMS**          CONFIDENTIAL    | Workorder | 18353214 |
|---|---|
| Chain | 18353214 |
| Patient ID | 18-18469 |

Page 3 of 4

**Reference Comments:**

A peak blood concentration of methamphetamine of 20 ng/mL was reported at 2.5 hr after an oral dosage of 12.5 mg. Blood levels of 200 - 600 ng/mL have been reported in methamphetamine abusers who exhibited violent and irrational behavior. High doses of methamphetamine can also elicit restlessness, confusion, hallucinations, circulatory collapse and convulsions.

*In this case, the level of methamphetamine determined has not been differentiated according to its isomeric forms. Differentiation of the isomers of methamphetamine is available upon request.

5.   Naloxone (Narcan®) - Femoral Blood:

Naloxone is a narcotic antagonist used to counter the central nervous system depression effects of opioids, including respiratory depression. It is also used for the diagnosis of suspected acute opioid overdosage. Naloxone is available as a 0.4 mg/mL solution of the hydrochloride for parenteral injection.

Naloxone is also available in combination with buprenorphine (Suboxone®) for the treatment of opioid dependence. This combination is available in tablets of 2 mg buprenorphine with 0.5 mg naloxone or 8 mg buprenorphine with 2 mg of naloxone for sublingual administration.

The reported qualitative result for this substance was based upon a single analysis only. If confirmation testing is required please contact the laboratory.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded six (6) months from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.

Workorder 18353214 was electronically
signed on 12/14/2018 16:02 by:

*William M. Schroeder, M.S.*
Certifying Scientist

**Analysis Summary and Reporting Limits:**

All of the following tests were performed for this case.  For each test, the compounds listed were included in the scope. The Reporting Limit listed for each compound represents the lowest concentration of the compound that will be reported as being positive.  If the compound is listed as None Detected, it is not present above the Reporting Limit.   Please refer to the Positive Findings section of the report for those compounds that were identified as being present.

Acode 52198B - Cannabinoids Confirmation, Blood - Femoral Blood

-Analysis by High Performance Liquid Chromatography/ Tandem Mass Spectrometry (LC-MS/MS) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| 11-Hydroxy Delta-9 THC | 1.0 ng/mL | Delta-9 THC | 0.50 ng/mL |
| Delta-9 Carboxy THC | 5.0 ng/mL | | |

Acode 52485B - Amphetamines Confirmation, Blood - Femoral Blood

-Analysis by High Performance Liquid Chromatography/ Tandem Mass Spectrometry (LC-MS/MS) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Amphetamine | 5.0 ng/mL | Norpseudoephedrine | 5.0 ng/mL |
| Ephedrine | 5.0 ng/mL | Phentermine | 5.0 ng/mL |
| MDA | 5.0 ng/mL | Phenylpropanolamine | 5.0 ng/mL |
| MDEA | 5.0 ng/mL | Pseudoephedrine | 5.0 ng/mL |
| Methamphetamine | 5.0 ng/mL | | |

Acode 8052B - Postmortem, Expanded, Blood (Forensic) - Femoral Blood

NMS v.18.0

 **NMS**

CONFIDENTIAL          **Workorder**     18353214
                      **Chain**         18353214
                      **Patient ID**    18-18469

                      **Page 4 of 4**

**Analysis Summary and Reporting Limits:**

-Analysis by Enzyme-Linked Immunosorbent Assay (ELISA) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Barbiturates | 0.040 mcg/mL | Salicylates | 120 mcg/mL |
| Cannabinoids | 10 ng/mL | | |

-Analysis by Headspace Gas Chromatography (GC) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Acetone | 5.0 mg/dL | Isopropanol | 5.0 mg/dL |
| Ethanol | 10 mg/dL | Methanol | 5.0 mg/dL |

-Analysis by High Performance Liquid Chromatography/Time of Flight-Mass Spectrometry (LC/TOF-MS) for: The following is a general list of compound classes included in this screen.  The detection of any specific analyte is concentration-dependent. Note, not all known analytes in each specified compound class are included. Some specific analytes outside these classes are also included.  For a detailed list of all analytes and reporting limits, please contact NMS Labs.
Amphetamines, Anticonvulsants, Antidepressants, Antihistamines, Antipsychotic Agents, Benzodiazepines, CNS Stimulants, Cocaine and Metabolites, Hallucinogens, Hypnosedatives, Hypoglycemics, Muscle Relaxants, Non-Steroidal Anti-Inflammatory Agents, Opiates and Opioids.

NMS v.18.0





# MISSSISSIPPI BUREAU OF INVESTIGATION
### 1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
### PHONE 601-987-1560 · FAX 601-987-1579

## CHAIN OF CUSTODY

RECEIVED FROM: *Mark Steed, MBI*
RECEIVED BY: *Allyson Grant*                          *allyson grant*
DATE: *3-26-2019*                    TIME: *12:00*

RECEIVED FROM: _____
RECEIVED BY: _____
DATE: _____    TIME: _____

RECEIVED FROM: _____
RECEIVED BY: _____
DATE: _____    TIME: _____

## DESCRIPTION OF EVIDENCE

*1. one DVD-R labeled Robert Devon Loggins, MBI case number MI9-00000391.*



## MISSSISSIPPI BUREAU OF INVESTIGATION
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

### CHAIN OF CUSTODY

RECEIVED FROM: _Mark Steed_
RECEIVED BY: _____
DATE: _12-12-2018_          TIME: _11:12_

RECEIVED FROM: _Jimmy mell — I-8_
RECEIVED BY: _____
DATE: _____     TIME: _____

RECEIVED FROM: _____
RECEIVED BY: _____
DATE: _____     TIME: _____

### DESCRIPTION OF EVIDENCE

1. One black StreamLight, Stinger, serial number
C4-0932508 0615, and labeled GPD 12397.

EXHIBIT B - MBI REPORT PART 2          TILLEY 160



**MISSSISSIPPI BUREAU OF INVESTIGATION**
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: _Hal Merriman_
Address: _____
SSN: _____
DOB: _____
Education: _____
Case No: _____

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION –ADVICE OF RIGHTS

### YOUR RIGHTS

Place _Grenada DA Office_
Date _11-30-2018_
Time _11:10 A.M._

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _Esther H. Me_

Read by: _Esther Me_
Witnessed by: _William Blackmon_
Time: _____

ID-76



**MISSSISSIPPI BUREAU OF INVESTIGATION**
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: *Michael Jones*
Address:
SSN:
DOB:
Education:
Case No:

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION –ADVICE OF RIGHTS

### YOUR RIGHTS

Place *Grenada AA office*
Date *11-30-18*
Time *0 9:54*

Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed *Michael Jones*

Read by: *Michael Jones*
Witnessed by: *William Blackmon*
Time:

ID-76



**MISSSISSIPPI BUREAU OF INVESTIGATION**
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: _Dean Tilley_
Address: _____
SSN: _____
DOB: _11-30-95_
Education: _____
Case No: _____

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION –ADVICE OF RIGHTS

### YOUR RIGHTS

Place _Grenada DA Office_
Date _11-30-95_
Time _09:01_

Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _____

Read by: _Deane Tilley_
Witnessed by: _William Blackmon_
Time: _____

ID-76



### MISSSISSIPPI BUREAU OF INVESTIGATION
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: *Rapheal Harvey*
Address:
SSN:
DOB:
Education:
Case No:

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION – ADVICE OF RIGHTS

### YOUR RIGHTS

Place *DA's office Grenada*
Date *11-29-18*
Time *17:04*

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed *Rapheal Harvey*

Read by: *Mark Steed*
Witnessed by: *William Blackmon*
Time: *17:04*

ID-76



**MISSSISSIPPI BUREAU OF INVESTIGATION**
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: _Jerome C Johnson_
Address: _____
SSN: _____
DOB: _____
Education: _____
Case No: _____

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION –ADVICE OF RIGHTS

### YOUR RIGHTS

Place _Grenada DA office_
Date _11-29-18_
Time _16:46_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _Jerome C. Johnson_

Read by: _Mark Hurd_
Witnessed by: _William Blackmon_
Time: _1646_

ID-76



**MISSSISSIPPI BUREAU OF INVESTIGATION**
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: *Frank Sanders*
Address:
SSN:
DOB:
Education:
Case No:

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION –ADVICE OF RIGHTS

### YOUR RIGHTS

Place *Grenada DA's Office*
Date *11-29-18*
Time *16:25*

Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed *[signature]*

Read by: *Mark Little*
Witnessed by: *William Blackmon*
Time: *16:28*

ID-76



**MISSSISSIPPI BUREAU OF INVESTIGATION**
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: _Justin Gammage_
Address: _____
SSN: _____
DOB: [                ]_____
Education: _____
Case No: _____

## MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION —ADVICE OF RIGHTS

### YOUR RIGHTS

Place _AM Office_
Date _11-29-18_
Time _____

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _Justin A. Gammage_

Read by: _Justin A. Gammage_
Witnessed by: _____
Time: _____

ID-76



## MISSSISSIPPI BUREAU OF INVESTIGATION
1900 EAST WOODROW WILSON BOULEVARD, JACKSON, MS 39216
PHONE 601-987-1560 · FAX 601-987-1579

Name: _Reggie Woodall_
Address: _____
SSN: _____
DOB: _____
Education: _____
Case No: _____

# MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
## INTERROGATION –ADVICE OF RIGHTS

### YOUR RIGHTS

Place _D.A. office_
Date _11-29-18_
Time _14:04_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _____

Read by: _Reggie Woodall_
Witnessed by: _Mark Herd_
Time: _14:04_
_Witnessed by: William Blackmon_
_14:04_

ID-76

Incident Search Results

Page: 1 of 1

# Grenada County Sheriff's Department

| Event Type | Start Date | Start Time |
|---|---|---|
| UNRESPONSIVE OFFENDER | 11/29/2018 | 5:59 AM |

Notes

On November 29,2018 at approximately 0559 hrs, While conducting my briefing before starting my shift Sgt Johnson D shift supervisor stated to me Sgt Clark that there was a problem in booking with incoming offender Robert Loggins #160212. Officers Moody, Sanders, Hollis and Hankins and I entered admissions. Grenada Police Deparment Officers Hal Merriman badge # 29, Michael Jones badge # 44, and Dean Tilley badge # 39 and GCADC Officer Rafeal Harvey and shift Supervisor Sgt. J Johnson had Robert Loggins on the floor in admissions. After seeing the condition of Mr.Loggins he had blood coming from his mouth, he appeared to be in distress. I Sgt. Clark stated to officers Merriman, Jones and Tilley that I was not going to keep the offender. At that time it was stated that the EMT had checked Mr. Loggins out and that he Mr.Loggins had been cleared to be brought to jail. I stated again that I was not going to keep him. GPD Offiers Merriman,and Jones went out door 19 with Officer Jones waving me off as I keep telling them that I was not going to keep him. Officer Tilley was left to retrieve his hand cuffs from the offender. Offender Loggins was moving from side to side Officers Hollis, Harvey, Sanders, along with Sgt. Johnson assisted Officer Tilley by holding the offender Loggins arms and legs, officer Tilley placed his knee on the back of offender Loggins head, Officer Tilley was unable to take the cuffs off he Officer Tilley straddled offender Loggins head. After the handcuffs was removed the offender was secure, At approximately 0607 Grenada Police Officers D. Tilley, M. Jones and H. Merriman exited the facility. Officers Hollis and Hankis and lifted Offender Loggins up off the floor and was assisting him to cell B-15 I had them bring him back to booking. At approximately 0609 I Sgt. Clark called EOC to have an Ambulance dispatched to the Grenada County Jail, EOC informed me Sgt. Clark that the EMT's that had been dispatched to the scene and had cleared him, at that time I stated that I wanted the ambulance at the Jail. I Sgt Clark contacted Warden Carver, Deputy Warden Adams a well as Sheriff Strider who asked to be kept Informed. At Approximately 0613 hrs, I Sgt. Clark noticed that Offender Loggins eyes was half open, I checked for a pulse put my hand close to his mouth and nose to check for breathing and raised his shirt up to check for movement of breathing. I informed Sgt. Johnson that Offender Loggins was not breathing. Sgt. Johnson and Officer Harvey removed offender vest and cut his shirt to prepare for CPR, at that time I called EOC again and stated that the offender was unresponsive and that we need the ambulance ASAP. Deputy Warden was contacted again to report that Offender Loggins was now unresponsive and not breathing. At the approximate time of 0618 the EMT's arrived and began CPR on Offender Loggins. At that time Captain Justin Gammage from the Grenada Police Department Officer Alexis Jackson, Micheal Burnettand Dean Tilley enter the facility. At approximately 0635 hrs, EMT's exited the facility with Offender-Loggins to UMMC of Grenada ------------------------------End Of Report------------------------------

| Inmates | Officers |
|---|---|
| (None) Robert D. Loggins # 160212 | CLARK, EDNA M. |
| | SANDERS, FRANK A |
| | Moody, Patricia |
| | HANKINS, JAMICA |

**Officer Signature:**

*Sgt E Clark*

Incident Search Results

# Grenada County Sheriff's Department

| Event Type | Start Date | Start Time |
|---|---|---|
| UNRESPONSIVE OFFENDER | 11/29/2018 | 10:09 AM |

Notes

on 11-29-2018 at appox 0615, SGT. JOHNSON CAME TO THE FRONT DESK, WHILE B SHIFT WAS HAVING BRIEFING AND STATED THERE WAS AN EMERGENCY AT BOOKING DESK. UPON ARRIVAL I OFFICER SANDERS SAW A BLACK MALE LAYING ON THE FLOOR ON HIS BACK WITH HIS ARMS BEHIND HIM. SUBJECT APPEARED TO BE TRYING TO TALK AND MOVE AROUND. SUBJECT APPEARED TO HAVE SEVERAL CUTS ON HIM AND WAS BLEEDING FROM HIS MOUTH.. AFTER HANDCUFFS WERE REMOVED , SUBJECT BEGAN TO HAVE BREATHING PROBLEMS. GRENADA POLICE OFFERS WERE ADVISED THAT THE SUBJECT NEEDED MEDICAL ATTENTION. THE POLICE OFFICER TURN AND WALKED OUT THE EXIT DOOR OF#19. THE SUBJECT WAS LATER ID. AS ROBERT LOGGINS.MDOC 160212

Inmates _Robert Loggins MDOC 160212_     Officers _FRANK Sanders_
(None)                                                                                    (None)

**Officer Signature:** _Frank Sanders_

Incident Search Results

# Grenada County Sheriff's Department

| Event Type | Start Date | Start Time |
|---|---|---|
| UNRESPONSIVE OFFENDER | 11/29/2018 | 5:54 AM |

Notes

On the above date and time main control officer S. Mc Neil informed me the shift supervisor that E.O.C called and notified the jail that police officers where on the way with a violent offender, and need assistance upon arrival. Myself (SGT J. Johnson), and officer R. Harvey goes out to assist police officers bring in the offender. Officer Harvey, myself and police officers D.Tilley, and M. Jones carries offender R. Loggins into the building. I went to get the oncoming shift supervisor and officers for help with offender R. Loggins. Officers R. Harvey, F. Sanders, J. Hankins, L. Hollis, and myself and police officers D. Tilley, M. Jones, and H. Merriman, detains offender R. Loggins to exchange handcuffs and place on leg irons on the offender. Once finished Sgt Clark explained to police officers why we couldn't keep offender Loggins in custody, the police officers left and Sgt Clark made some calls to the deputy warden, then to the warden. After talking to the higher ups she was told to call the ambulance. After calling for paramedics, she goes over and starts to talk to offender Loggins and upon talking to him she notices that he was not responsive and informed me. Then officers J. Hankins, R. Harvey, L. Hollis and myself started to check for vitals. After checking for vitals, we prepared to perform CPR. Then EMT'S arrived and took over the scene. I got into ambulance for security on the way to the hospital, after arriving offender loggins was pronounced dead.

Inmates    _R. Loggins_        _MDOC 160212_          Officers    _Sgt J. Johnson_
(None)                                                (None)

Officer Signature: _Sgt J. Johnson_

Incident Search Results

# Grenada County Sheriff's Department

| Event Type | Start Date | Start Time |
|---|---|---|
| UNRESPONSIVE OFFENDER | 11/29/2018 | 5:54 AM |

*Notes*

On the above date and time SGT J.Johnson called myself Officer R.Harvey to booking area and told me that E.O.C called had notified the jail that police officers where on the way with a violent offender, and need assistance upon arrival. At 05:58 SGT J.Johnson myself (Officer) R. Harvey and other officers along with several staff and police officers tried to remove the handcuffs from offender. Offender was still refusing to cooperate. Police were advised by SGT Clark that offender R.Loggins should be taken to the emergency room. Then after the police officers left a few minutes later offender R.Loggins stop breathing. The staff members and myself prepared to preformed C.P.R on offender R.Loggins. Then EMT's arrived and took over the scene.

Inmates R. Loggins  MDOC 160212          Officers Rapheal Harvey
(None)                                              (None)

**Officer Signature:** _Rapheal Harvey_

EXHIBIT B - MBI REPORT PART 2  TILLEY 172

# F

IN THE CHANCERY COURT OF GRENADA COUNTY, MISSISSIPPI

IN THE MATTER OF THE ESTATE OF
ROBERT DEVON LOGGINS, DECEASED                    CAUSE NO. 18-CV-282   PL

RIKA JONES, ADMINISTRATRIX

---

### SUBPOENA DUCES TECUM

---

STATE OF MISSISSIPPI
COUNTY OF GRENADA

**RECEIVED**

TO:   **Mississippi Bureau of Investigation**
     **ATTN:  Legal Office**                                     MAR 1 4 2019
     **1900 East Woodrow Wilson Avenue**
     **Jackson, Mississippi 39216-5118**                  **Legal office**

You are hereby commanded to produce by U. S. Mail at Tannehill, Carmean &

McKenzie, PLLC, 829 North Lamar Boulevard, Suite 1, Oxford, Mississippi 38655, on or before

_April 12_, 2019, the following, to wit:

1. Any and all documents, photographs, videos, statements, and reports that
   employees of the Mississippi Bureau of Investigation have generated or otherwise
   obtained possession of through its officials, officers, jailers, and any other
   relevant representative during an investigation into the arrest of Robert Devon
   Loggins on or about November 29, 2018.

2. These documents shall include, but not be limited to:

   a. All two-way dispatch recordings and transcripts;
   b. 911 communication;
   c. Cellular communication of any kind whatsoever (MMS messages, SMS
      messages, text messages, instant messaging, voicemail, voice conversation,
      and any other method of cellular communication);
   d. Any and all surveillance video, jail video, dash cam footage, and body camera
      footage;
   e. Any and all taser logs and records;
   f. Jail logs, booking information;
   g. Written and recorded statement(s) from witnesses, city and county official
      written and recorded statements or reports.

3. Any and all documents, photographs, videos, statements, and reports that employees of the Mississippi Bureau of Investigation have generated or otherwise obtained possession of through its officials, officers, jailers, and any other relevant representative during an investigation into the cause of death of Robert Devon Loggins on or about November 29, 2018.

This writ is being issued pursuant to Rule 45 of the Mississippi Rules of Civil Procedure.

**You may comply with this Subpoena by mailing certified copies of the above referenced documents to Jacob B. Jordan at Tannehill, Carmean, & McKenzie PLLC, 829 North Lamar Boulevard, Suite 1, Oxford, Mississippi 38655. Should you choose to comply with the Subpoena by mailing the above-referenced, documents or copies must be mailed on or before the above referenced date. Your statement for the cost of copying and mailing these records should be mailed simultaneously. You may also provide material responsive to this subpoena in the form of a disk or other form of electronic storage.**

WITNESS MY HAND AND OFFICIAL SEAL, this the _27_ day of _February_, 2019.

**Johnny L. Hayward**, Clerk
Grenada County Chancery Court

BY: _Victoria S Blaylock, D.C._



EXHIBIT B - MBI REPORT PART 2          TILLEY 175

PROOF OF SERVICE - SUBPOENA
(PROCESS SERVER)
(Use separate proof of service for each person served)

## MISSISSIPPI BUREAU OF INVESTIGATION

      I, the undersigned process server, served the Subpoena upon the person or entity named above in the manner set forth below (process server must check proper space and provide all additional information that is requested and pertinent to the mode of service used):

_____**FIRST CLASS MAIL AND ACKNOWLEDGMENT SERVICE.**   By mailing (by first class mail, postage prepaid), on the date stated in the attached Notice, copies to the person served, together with copies of the form of notice and acknowledgment and return envelope, postage prepaid, addressed to the sender (Attach completed acknowledgment of receipt pursuant to M.R.C.P. Form 1B).

_____**PERSONAL SERVICE.**  I personally delivered copies to _____ on the day of _____, 20\_\_\_\_, where I found said person(s) in _____ County of the State of Mississippi.

_____**RESIDENCE SERVICE.**  After exercising reasonable diligence I was unable to deliver copies to said person within _____ County, Mississippi. I served the Subpoena on the _____ day of _____, 20\_\_\_\_, at the usual place of abode of said person by leaving a true copy of the Subpoena with _____ who is the _____ (here insert wife, husband, son, daughter or other person as the case may be) a member of the family of the person served above the age of sixteen years and willing to receive the subpoena, and thereafter on the \_\_\_\_\_day of _____, 20\_\_\_\_, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

_____**CERTIFIED MAIL SERVICE.**  By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served.  (Attach signed return receipt or the return envelope marked "Refused".)

At the time of service I was at least 18 years of age and not a party to this action.
Fee for service: $

Process server must list below: (Please print or type)

Name_____
Social Security No. _____
Address _____
Telephone No. _____

**State of** _____
**County of** _____

      Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service–Subpoena" are true and correct as therein stated.

Process Server (Signature)

Sworn to and subscribed before me this the \_\_\_\_ day of _____, 20\_\_\_\_.

(SEAL)                             _____
                                          Notary Public

My Commission Expires: \_\_\_\_ day of _____, 20\_\_\_\_.

3

## IN THE CIRCUIT COURT OF GRENADA COUNTY, MISSISSIPPI

**IN RE: GRENADA COUNTY, MISSISSIPPI, CIRCUIT COURT
GRAND JURY INVESTIGATION**

### REQUEST FOR SUBPOENA DUCES TECUM

TO THE CIRCUIT CLERK OF GRENADA COUNTY, MISSISSIPPI:

You are hereby requested to issue a Subpoena Duces Tecum, a copy of which is

attached hereto, to the person named therein at the stated address, directing that the named items,

documents or records be produced for investigation of the above referenced matter, the same to be

produced to Doug Evans, or his authorized representative, William Hopper, Office of the District

Attorney, Fifth Circuit Court District, 234 First Street, Grenada, Mississippi, 38901, or Mark Steed,

Mississippi Bureau of Investigations, for purposes of inspection.

The items, documents or records which are named and specified are material which

is necessary to the investigation of the above referenced criminal matter.

THIS, the _27_ day of March, 2019.

_____

William Hopper
Assistant District Attorney

Office of The District Attorney
Fifth Circuit Court District
234 First Street
Grenada, MS 38901
(662) 226-8545

**FILED**
GRENADA COUNTY

**MAR 27 2019**

MICHELE REDDITT GARCIA, CIRCUIT CLERK

BY: _____ D.C.

IN THE CIRCUIT COURT OF GRENADA COUNTY, MISSISSIPPI

IN RE: GRENADA COUNTY, MISSISSIPPI, CIRCUIT COURT
GRAND JURY INVESTIGATION

<u>SUBPOENA DUCES TECUM</u>

TO THE SHERIFF OF GRENADA COUNTY OR TO ANY OTHER LAWFUL OFFICER OF
MISSISSIPPI AUTHORIZED TO SERVE PROCESS, GREETINGS:

You are hereby directed to summon **MEDICAL RECORDS CUSTODIAN, MEDICAL
RECORDS, THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER-GRENADA, 960
J.K. AVENT DR. GRENADA, MISSISSIPPI 38901 (662) 227-7000,** requiring such person to
be and appear in the Circuit Court of Grenada County, located at the Grenada County Courthouse,
Grenada, Mississippi, on June 18, 2019 at 9:00 A.M., and to then and there have the following
documents/records: **"MEDICAL RECORDS CONTAINING PATIENT DEMOGRAPHIC
INFORMATION, CHIEF COMPLAIN, HISTORY OF PRESENT ILLNESS,
LABORATORY TESTS RESULTS, PROGRESS NOTES AND DISCHARGE SUMMARY
FOR PATIENT ROBERT D LOGGINS (DOB** [ ] **SSN:** [ ] **) THE
OCCURRED ON OR ABOUT 11/29/2018"**

Failure to appear and comply with this Subpoena may result in your arrest and the
initiation of criminal contempt proceedings.

WITNESS my hand and seal of office on this the 27 day of March, 2019.

MICHELLE REDDITT
CIRCUIT COURT CLERK

*I, William Blackmon,
Personally Served this
Subpoena to UMMC Grenada
Records Office Representative
at 10:12 A.M. 3-27-19*



**THE UNIVERSITY OF MISSISSIPPI**
**MEDICAL CENTER**

UMMC GRENADA
960 Avent Drive
GRENADA MS 38901
Notes

Loggins, Robert D
MRN: 2330319, DOB: [redacted], Sex: M
Adm: 11/29/2018, D/C: 11/29/2018

---

**ED Notes by Christy M Flowers, RN at 11/29/18 0700**

| | | |
|---|---|---|
| Author: Christy M Flowers, RN | Service: --- | Author Type: Registered Nurse |
| Filed: 11/29/18 0825 | Date of Service: 11/29/18 0700 | Note Type: ED Notes |
| Status: Signed | Editor: Christy M Flowers, RN (Registered Nurse) | |

GPD officer attempting to contact next of kin without success.

---

**ED Provider Notes by Sebastian Jacobi, MD at 11/29/18 0720**

| | | |
|---|---|---|
| Author: Sebastian Jacobi, MD | Service: Emergency Medicine | Author Type: Physician |
| Filed: 11/29/18 0724 | Date of Service: 11/29/18 0720 | Note Type: ED Provider Notes |
| Status: Signed | Editor: Sebastian Jacobi, MD (Physician) | |

Procedure Orders
1. CPR [128290123] ordered by Sebastian Jacobi, MD at 11/29/18 0723

## History

**Chief Complaint**
Patient presents with
• Cardiac Arrest

HPI
26-year-old male was brought in by EMS for cardiac arrest. Patient was in police custody earlier this morning. The patient was tasered prior to being arrested. The patient then became unresponsive at the facility. EMS was called. CPR was started at 0631. Patient is noted to be in PEA. Multiple rounds of epinephrine were given without return of spontaneous circulation.
HISTORY:
History documented here is for the purposes of medical decision making and the ED physician note. It will NOT file to the patient's permanent history.:

Past Medical History:
Diabetes: No

Past Medical History:
Diagnosis                                                        Date
• Asthma

History reviewed. No pertinent surgical history.

History reviewed. No pertinent family history.

**Social History**

Tobacco Use
• Smoking status:          Current Every Day Smoker
     Packs/day:            0.50
• Smokeless tobacco:       Never Used

---

Generated on 3/27/19 10:41 AM

EXHIBIT B - MBI REPORT PART 2          TILLEY 179



THE UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER

UMMC GRENADA
960 Avent Drive
GRENADA MS 38901
Notes

Loggins, Robert D
MRN: 2330319, DOB: [    ] Sex: M
Adm: 11/29/2018, D/C: 11/29/2018

---

**ED Provider Notes by Sebastian Jacobi, MD at 11/29/18 0720 (continued)**

Substance Use Topics

- Alcohol use:                   No
- Drug use:                      No


No birth history on file.

Review of Systems
Unable to perform ROS: Patient unresponsive


# Physical Exam

Physical Exam
Constitutional: He appears well-developed and well-nourished.
HENT:
Head: Normocephalic.
**Eight 0 endotracheal tube in oropharynx**
Eyes:
**Fixed/dilated pupils bilaterally, injected conjunctiva**
Neck: Neck supple. No tracheal deviation present.
Cardiovascular:
**No cardiac activity.  No palpable pulses.**
Pulmonary/Chest:
**no ventilatory effort when unassisted.**
Abdominal:
**Soft abdomen, multiple tattoos.**
Genitourinary: Penis normal.
Musculoskeletal:
**All 4 extremities intact.**
Neurological:
**No cough, gag nor corneal reflex.  GCS 3**
Skin:
**Multiple abrasions to bilateral knees**
Psychiatric:
**Unable to assess due to cardiac arrest**


# ED Course

CPR
Date/Time: **11/29/2018 7:23 A M**
Performed by: **Sebastian Jacobi, MD**
Authorized by: **Sebastian Jacobi, MD**
Consent: **The procedure was performed in an emergent situation.**
Imaging studies: **imaging studies available**
Time out: **Immediately prior to procedure a "time out" was called to verify the correct patient, procedure, equipment, support staff and site/side marked as required.**

---

Generated on 3/27/19 10:41 AM                                                                 Page 2



**THE UNIVERSITY OF MISSISSIPPI**
**MEDICAL CENTER**

UMMC GRENADA
960 Avent Drive
GRENADA MS 38901
Notes

Loggins, Robert D
MRN: 2330319, DOB: [redacted] Sex: M
Adm: 11/29/2018, D/C: 11/29/2018

---

ED Provider Notes by Sebastian Jacobi, MD at 11/29/18 0720 (continued)

Preparation: **Patient was prepped and draped in the usual sterile fashion.**
Local anesthesia used: **no**

Anesthesia:
Local anesthesia used: **no**

Sedation:
Patient sedated: **no**

Comments: **10 minutes of CPR performed per ACLS protocol.**

MDM
Patient arrived in PEA. No palpable pulse. ACLS protocol continued however no return of spontaneous circulation. Time of death 0704

## Clinical Impressions
Final diagnoses:
Cardiac arrest

## Plan
**ED Disposition**

| ED Disposition | Condition | Comment |
|---|---|---|
| Expired | | Date: 11/29/2018 |
| | | Patient: Robert D Loggins |
| | | Admitted: 11/29/2018 6:57 AM |
| | | Attending Provider: Sebastian Jacobi, MD |
| | | Robert D Loggins was pronounced dead at 0704 by Dr. Sebastian Jacobi, MD. |
| | | |
| | | The family was not present. |

## Discharge information if applicable:
Follow-up Information
   None

Discharge Medications

No medications have been prescribed.

---

Generated on 3/27/19 10:41 AM

Page 3



| | UMMC GRENADA | Loggins, Robert D |
| --- | --- | --- |
| THE UNIVERSITY OF MISSISSIPPI **MEDICAL CENTER** Notes | 960 Avent Drive GRENADA MS 38901 | MRN: 2330319, DOB: [          ], Sex: M Adm: 11/29/2018, D/C: 11/29/2018 |

**ED Provider Notes by Sebastian Jacobi, MD at 11/29/18 0720 (continued)**

Sebastian Jacobi, MD
11/29/18 0724

**ED Notes by Christy M Flowers, RN at 11/29/18 0954**

| Author: Christy M Flowers, RN | Service: — | Author Type: Registered Nurse |
| --- | --- | --- |
| Filed: 11/29/18 0955 | Date of Service: 11/29/18 0954 | Note Type: ED Notes |
| Status: Signed | Editor: Christy M Flowers, RN (Registered Nurse) | |

All belongings other than clothing collected and tak en by K. Sanders I-2.

---

### END OF REPORT

EXHIBIT B - MBI REPORT PART 2                    TILLEY 182

From:Legacy Hospice - Grenada, MS      662 226 1097         12/12/2018 17:55    #097 P.001/001

 **Mississippi State Medical Examiner's Office**
215 Allen Stuart Drive
Pearl, MS 39208
601-420-9140 

# PATHOLOGICAL EXAMINATION

**CASE:** ME18-1164.                    **COUNTY:** Grenada

**NAME OF DECEDENT:** Robert D. Loggins        **SEX:** Male        **AGE:** 26 yoa

**DATE OF EXAMINATION:** November 30, 2018

## PROVISIONAL PATHOLOGICAL DIAGNOSIS

**PRIMARY DIAGNOSIS**

    1. Pending Toxicology

  **CAUSE OF DEATH:**        Pending

  **MANNER OF DEATH:**        Pending

**Mark M. LeVaughn, M.D., Chief Medical Examiner**        **Date:** November 30, 2018

# REPORT OF DEATH INVESTIGATION

**STATE MEDICAL EXAMINER** MSME

| | Central Office Use Only |
|---|---|
| | (Date of Receipt) |
| | (DOD Code) |
| | (COD Code) |
| | (ME Case Number) |

**DECEDENT:** ROBERT (First Name) D. (Middle Name) LOGGINS (Last Name) (Jr., Sr., III, etc.)

**ADDRESS:** 1411 NORTH LEVEE St. (Number & Street or Route, Box No.) GLENDA, MS (City, State) GLENDA (County)

## INFORMATION ABOUT DECEDENT AND DESCRIPTION OF BODY

**AGE** (If less than 2 yrs. give months & days): 26

**Date of Birth:** 

**SEX:**
- ☒ Male
- ☐ Female
- ☐ Undetermined

**CLOTHING:**
- ☒ Clothed
- ☒ Partly Clothed
- ☐ Unclothed

**EYES:** Color Brown

**BODY TEMPERATURE:**
- ☒ Warm
- ☐ Cool
- ☐ Cold _____ (if taken)

**BLOOD:**
- ☒ Nose ☐ Present
- ☒ Mouth ☐ Absent
- ☒ Ears
- ☒ Clothing
- ☐ None

**FROTH:**

**OCCUPATION** (Please fill in both parts)

**TYPE OF WORK:**

**MARITAL STATUS:**
- ☐ Married
- ☒ Never Married
- ☐ Widowed
- ☐ Divorced
- ☐ Separated
- ☐ Unknown

**HEAD-HAIR:**
- ☐ None
- ☐ Partly Bald
- ☐ Blonde
- ☐ Brown
- ☐ Red
- ☒ Black
- ☐ Grey
- ☐ White

**RIGOR (Circle Degree):**
- ☒ Neck ⊙ 1+ 2+ 3+
- ☒ Arms ⊙ 1+ 2+ 3+
- ☒ Legs ⊙ 1+ 2+ 3+

**LIVOR:**
Color _____
Fixed? ☐ Yes ☒ No
- ☐ Anterior
- ☐ Posterior
- ☐ Lateral

**WEIGHT:** 526

**LENGTH:** 142

**OTHER (Dirt, water, etc.):**
- ☐ Nose
- ☐ Mouth
- ☐ Ears
- ☒ None

**DECOMPOSITION:**
- ☐ Early
- ☐ Advanced
- ☒ None

(Example: machinist, typist, fireman, farmer, salesman, homemaker)

**INDUSTRY:**

(Example: textile, banking, fire dept., nursing, insurance, home)

☒ No Occupational Information

**RACE:**
- ☐ White
- ☒ Black
- ☐ Hispanic
- ☐ Other

**MISCELLANEOUS:**

**OTHER HAIR:**
- ☐ Mustache
- ☐ Beard
- ☐ Circumcised

## INFORMATION ABOUT OCCURRENCE

| ITEM | DATE | TIME | LOCATION | COUNTY | TYPE OF PREMISES (Home, farm, highway, hospital, etc.) |
|---|---|---|---|---|---|
| INJURY OR ONSET OF ILLNESS | 1-29-18 | | | | ON THE JOB? ☐ YES ☒ NO UMMC GLENDA ER |
| LAST SEEN ALIVE | 1-29-18 | | (By whom: Name and Address) GLENDA P.D. | GLENDA | |
| DEATH | 1-29-18 | | UMMC GLENDA ER 8 | GLENDA | |
| FOUND DEAD BY | 1-29-18 | | (By whom: Name and Address or Title) | | |
| POLICE NOTIFIED | 1-29-18 | | POLICE AGENCY: GLENDA P.D. | | OFFICER: |
| CORONER/M.E. NOTIFIED | 1-29-18 | 7:15 AM | (By whom: Name and Address) UMMC GLENDA ER | | |
| VIEW OF BODY | 1-29-18 | 740 AM | UMMC GLENDA ER #8 | | ☐ NOT VIEWED |
| WITNESS TO INJURY OR ILLNESS AND DEATH | | | (Name) | (Address) | BLOOD SAMPLE DRAWN: ☒ Yes CRIME LAB ☐ Why not? |

## MANNER OF DEATH

☐ NATURAL  ☐ HOMICIDE  ☐ ACCIDENT  ☐ SUICIDE  ☐ UNKNOWN  ☐ PENDING

**MEDICO-LEGAL AUTOPSY AUTHORIZED:** ☒ Yes  ☐ No

**PATHOLOGIST:** UMMC LAB

**OTHER AUTOPSY DONE:** ☐ Yes  ☐ No

**PROBABLE CAUSE OF DEATH:**
1. DECEASED IS SENT TO CRIME LAB
2. Due to: _____
Contributing factor: _____
M.S.M.E. _____

I hereby certify that after receiving notice of the death described herein I took charge of the body and made inquiries regarding the cause of death in accordance with the Mississippi Code Annotated, and that the information contained herein regarding such death is true and correct to the best of my knowledge and belief.

_(Signature of Coroner or Medical Examiner)_

1-29-18 (Date Signed)  GLENDA (County)  ME/ (Your Number)

**\*\*\*\*IS DECEDENT AN ORGAN DONOR?** _____ YES _____ NO (Please ask family when at all possible)

_____ KIDNEY _____ EYE _____ ANY NEEDED ORGAN

IF DONOR, DID YOU NOTIFY TRANSPLANT TEAM? _____ YES _____ NO  IF NO, WHO DID?

COUNTY OF _Grenada_



**STATE MEDICAL EXAMINER**

PERMIT BY MEDICAL EXAMINER FOR AUTOPSY

Under the provisions of Senate Bill 2638, Chapter 459, Laws of 1986, in my opinion it is advisable and in the public interest that an autopsy be performed on the body of:

_Robert D. Coggins_ , _26_ , _Black_ , _Male_
(NAME) (AGE) (RACE) (SEX)

who died on _11-29-18_ , _____ , at _960 Avent Dr._
(DATE) (TIME) (STREET, NUMBER OR ROUTE)

_Grenada_ , _Grenada_ under the following circumstances:
(CITY OR TOWN) (COUNTY)

TYPE OF DEATH:

| | | |
|---|---|---|
| Violent | Natural | |
| Sudden, when in apparent health | Accident | |
| Unattended by physician | Suicide | |
| Custody of Law ✓ | Homicide | |
| Suspicious, unusual or unnatural manner ✓ | Undetermined | |
| Disease which might threaten public health | Pending | |
| Possibly drug-related | | |

NARRATIVE SUMMARY OF CIRCUMSTANCES SURROUNDING DEATH:

_This 26 y/o Black male was brought into UMMC-Grenada unresponsive- ongoing investigation by Grenada Police Dept./ Please call Police Dept. Detective Sanders before doing Autopsy at 662-809-0806 or 662-809-2617_

Authority is hereby given to Doctor _Crime Lab_ , _Rankin Co._
(PATHOLOGIST) (CITY OR TOWN)

to perform such autopsy upon the body of the decedent named herein.

_11-29-18_
(DATE) (MEDICAL EXAMINER, CITY OR TOWN)

One copy to person performing autopsy, one copy to circuit clerk one copy retained by Medical Examiner

FORM ME-17

EXHIBIT B - MBI REPORT PART 2          TILLEY 185

## University of Mississippi Health Care

| | |
|---|---|
| Encounter Date: | 11/29/2018 |
| Hospital Account: | 4600574803 |
| MRN: | 2330319 |
| Guarantor: | LOGGINS,ROBERT D |
| Contact Serial #: | 2032905242 |
| Patient Class: | Emergency |

## ENCOUNTER

| | | | | |
|---|---|---|---|---|
| Religion: | None [ 2] | Preferred Language: English | Unit: | GH EMERGENCY |
| Hospital Service: | Emergency Medicine | | Bed: | ED 8-01 |
| Admitting Provider: | | Referring Physician: | | |
| Attending Provider: | | Adm Diagnosis: | | |

## PATIENT

| | | | | |
|---|---|---|---|---|
| Name: | LOGGINS, ROBERT D | | DOB: | (26 yrs) |
| Address: | 1411 NORTH LEVEE ST | | Sex: | Male |
| City: | GRENADA, MS 38901 | | Race: | Black Or African American |
| | | | Ethnicity: | Not Hispanic Or Latino |
| Primary Care Provider: | Ralph C Armstrong Jr., * | | Primary Phone: | 999-999-9990 |

EMERGENCY CONTACT

| Contact Name | Legal Guardian? | Relationship to Patient | Home Phone | Work Phone |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |

## GUARANTOR

| | | | | |
|---|---|---|---|---|
| Guarantor: | LOGGINS,ROBERT D | | DOB: | |
| Address: | 1411 NORTH LEVEE ST | | Sex: | Male |
| | GRENADA, MS 38901 | | | |
| Relation to Patient: | Self | | Home Phone: | 999-999-9999 |
| Guarantor ID: | 737105 | | Work Phone: | |

GUARANTOR EMPLOYER

| | | | | |
|---|---|---|---|---|
| Employer: | | | Status: | NOT EMPLO |

*(handwritten: @ UMMC-ER-8  TP 740 Am  11-29-18  Autopsy - Chmt Lbs)*

## COVERAGE

PRIMARY INSURANCE

| | | | | |
|---|---|---|---|---|
| Payor: | UMR | | Plan: | UMR |
| Group Number: | 76-412524 | | Insurance Type: | INDEMNITY |
| Subscriber Name: | LOGGINS,ROBERT D | | Effective Date: | 1/1/2017 |
| Subscriber ID: | 17930136 | | Subscriber DOB: | |
| Pat. Rel. to Subscriber: | Self | | | |

SECONDARY INSURANCE

| | | | | |
|---|---|---|---|---|
| Payor: | | | Plan: | |
| Group Number: | | | Insurance Type: | |
| Subscriber | | | Effective Date: | 1/1/2017 |
| Subscriber ID: | | | Subscriber DOB: | |
| Pat. Rel. to Subscriber: | | | | |

| | | |
|---|---|---|
| Contact Serial # (2032905242) | November 29, 2018 | Chart ID (2330319-GC ELECTRO-9) |

Booking Sheet

227-65'25

# Booking Sheet

## LOGGINS , ROBERT D (12125)

## Location

(Released)



| Booking Info | | Ids | | Appearance | |
|---|---|---|---|---|---|
| Book In: | 1/2/2011 12:39 AM | SSN: | | Male | |
| Book Out: | 6/6/2011 8:35 AM | SSN: | | African American - Other | |
| Booking #: | 5 | SSN: | | skin tone | |
| Booking ID: | 36069 | SSN: | | Brown Eyes | |
| | | SSN: | | Black hair Other | |
| | | *File#: | 12125 | 5' 2" tall | |
| | | | | 130 lbs. | |
| | | **Aliases** | | Medium build | |
| | | (None) | | Scars/Marks/Tattoos: | NONE |

### Contact Information

| Address: | 1411 N. LEVEE STREET GRENADA, MS 38901-6622 |
|---|---|
| Birthdate: | |
| Phone: | 662-614-2364 |
| POB: | GRENADA, MS |

Age: 26
Marital Status: Other

### Arrest Information

| Arrest Date | 3/1/2015 7:58:52 PM |
|---|---|
| Arrest Tracking # | |
| Arrest Location | 1333 LEVEE |
| Arresting Agency | GRENADA POLICE DEPARTMENT(GPD) |
| Arresting Officer | HODGES, EARL |
| Booking Officer | PITTMAN, FREDA S. |
| Incident Notes | 2011010005 |
| Release Notes | GREENWOOD RESTITUTION CENTER |
| Inmate Notes | -VOP-GRAND LARCENY--SIMPLE ASSAULT- |

Inmate Flags

Override

### Personal Contacts

| Contact Name | Relationship | Next Of Kin | Appr. Visitor | Phone | Address |
|---|---|---|---|---|---|
| (No Contacts) | | | | | |

### Charges

| Case/Warrant # | Charge | Court | Court Date | Bond Status | Bond Amount | Cleared | Fine Amt | Paid |
|---|---|---|---|---|---|---|---|---|
| | 1 Count: BREAKING AND ENTERING-DWELLING HOUSE | Circuit Court | N/A | Cash or Pro | $25,000.00 | No | $0.00 | Yes |
| | Notes: ### | | | | | | | |
| | 1 Count: SIMPLE ASSAULT/DOMESTIC VIOLENCE-VAIDEN PD | Justice Court | N/A | Cash or Pro | $0.00 | No | $0.00 | Yes |
| | Notes: ### | | | | | | | |
| | 1 Count: VOP-GRAND LARCENY | Circuit Court | N/A | Cash or Pro | $0.00 | No | $0.00 | Yes |
| | Notes: ### | | | | | | | |

Total Bond: $25,000.00    Total Fine: $0.00

### Detainers

Printed: 11/29/2018 7:07:15 AM

EXHIBIT B - MBI REPORT PART 2          TILLEY 187

# G



**AMR CENTRAL MS**
**PATIENT CARE REPORT**

DOB:
SEX:
CASE #: 61240921
DOS: 11/29/2018

| SERVICE MODEL AGENCY AMR | DISPATCH INFORMATION | TIMES | |
|---|---|---|---|
| **FROM:**<br>81 BLEDSOE ST<br>GRENADA, MS 38901<br>(HOME/RESIDENCE) | **CALLER:** LAW ENFORCEMENT<br>**UNIT:** 708<br>**RESPONSE MODE:** LIGHTS AND SIREN<br>**ALS ASSESSMENT:** AMR EMT-P<br>**DISPOSITION:**<br>CANCEL ON SCENE-NO PT CONTACT - CANC<br>BY LAW ENFORCEMENT<br>**NATURE OF CALL:**<br>SICK PERSON/OVERRIDE-DELTA | **CALL RECEIVED:**<br>**DISPATCHED:**<br>**ENROUTE:**<br>**AT SCENE:**<br>**AVAILABLE:** | 05:55:00<br>05:55:15<br>05:55:23<br>06:00:07<br>06:08:07 |

**PATIENT DEMOGRAPHICS**

NAME:                                                    DOB:
ADDRESS:                                                 AGE:
CITY, STATE ZIP:                                         GENDER:
COUNTRY:                                                 ETHNICITY:
PHONE:
CELL PHONE:
SSN:

INSURANCE: NO INSURANCE AVAILABLE

RESPONSIBLE PARTY:
PHONE:

**NARRATIVE**

NARRATIVE
EMS DISPATCHED DUE TO PT BEING TAZED. OUR ARRIVAL, GRENADA PD HAS PT IN HANDCUFFS IN THE PATROL CAR. NO
CONTACT MADE WITH PT.

**IMPRESSION**

NO INFORMATION DOCUMENTED.

**HISTORY OF PRESENT ILLNESS**

NO INFORMATION DOCUMENTED.

**MEDICAL HISTORY**

NO INFORMATION DOCUMENTED.

EXHIBIT B - MBI REPORT PART 2                    TILLEY 189

# CHECKPOINT AUDIT TRAIL

SITE: JACKSON

PCR ID: 2018112906151648411

| DATE ENTERED CHECKPOINT | CASE NUMBER | DOS | TOTAL AGE(HRS) | IS TRIP IN CHECKPOINT |
|---|---|---|---|---|
| | | | | |

| QUEUE NAME | TIMER ENTERED QUEUE | TIME SUBMITTED | HOURS PRESENT | SUBMITTED/MOVED BY | SUBMITTED METHOD |
|---|---|---|---|---|---|
| | | | | | |

| FIELD NAME | OLD VALUE | NEW VALUE | TIME MODIFIED | MODIFIED BY |
|---|---|---|---|---|
| | | | | |

EXHIBIT B - MBI REPORT PART 2          TILLEY 190

https://medsviewer.amr.net/

12/4/2018

,
**DOB:**
**SEX:**
**CASE #:** 61240921
**DOS:** 11/29/2018

## VITAL SIGNS

NO VITALS TO DISPLAY.

## PHYSICAL FINDINGS

NO INFORMATION DOCUMENTED.

## TREATMENTS

| PTA | TIME | CAREGIVER | PROCEDURE |
|-----|------|-----------|-----------|
| | | WATSON, JOHN,AMR | **FACILITY ACTIVATION** - ACTIVATION TYPE: NO ALERT |

## ADDENDUM

| DATE | ADDENDUM |
|------|----------|
| 06:49:00 11/29/2018 | ON OUR ARRIVAL, THE PT IS FIGHTING WITH GRENADA PD WHILE STILL IN HANDCUFFS. EMS UNABLE TO OBTAIN VITAL SIGNS |

## RUN COMPLETION

NO INFORMATION DOCUMENTED.

**PCR ID:** 2018112906151648411          **DEVICE:** SJACMEDS14          **PRINTED:** 12/4/2018 14:15:13



**AMR CENTRAL MS**

## PRE-HOSPITAL CARE REPORT SIGNATURES

**CASE #:** 61240921      **UNIT ID:** 708      **DATE:** 11/29/2018

| AMR CENTRAL MS CREW MEMBERS | |
|---|---|
| **CREW 1**<br>**NAME:** WATSON, JOHN,AMR<br>**NUMBER:** 1012146<br>**CERTIFICATION:** PARAMEDIC | *John Wotson* |
| **CREW 2**<br>**NAME:** HOWELL, JENNIFER,AMR<br>**NUMBER:** 1011016<br>**CERTIFICATION:** EMT | *JHowell* |

**PCR ID:** 2018112906151648411      **DEVICE:** SJACMEDS14      **PRINTED:** 12/4/2018 14:15:13

EXHIBIT B - MBI REPORT PART 2      TILLEY 192

https://medsviewer.amr.net/      12/4/2018



**AMR CENTRAL MS**
**PATIENT CARE REPORT**

| | |
|---|---|
| LOGGINS, ROBERT | |
| DOB: [ ] (26 YEARS) | |
| SEX: MALE | |
| CASE #: 61240923 | |
| DOS: 11/29/2018 | |

| SERVICE MODEL AGENCY AMR | DISPATCH INFORMATION | TIMES |
|---|---|---|
| **FROM:**<br>33 DOAK ST<br>GRENADA, MS 38901<br>(LAW/CORRECTIONAL FACILITY)<br>**TO:**<br>UNIVERSITY OF MISSISSIPPI MEDICAL CNT - GRENADA<br>960 J K AVENT DR<br>GRENADA, MS 38901<br>(HOSPITAL - ED)<br>ROOM/DEPT: HOSPITAL-EMERGENCY DEPARTMENT<br>**DESTINATION DECISION:**<br>CLOSEST/MOST APPROPRIATE - OTHER | **CALLER:** LAW ENFORCEMENT<br>**UNIT:** 708<br>**RESPONSE MODE:** LIGHTS AND SIREN<br>**TRANSPORT MODE:** LIGHTS AND SIREN<br>**ALS ASSESSMENT:** AMR EMT-P<br>**DISPOSITION:**<br>TRANSPORTED - TO HOSPITAL ER/ED<br>**NATURE OF CALL:**<br>HEMOR/LAC/OVERRIDE-DELTA | **CALL RECEIVED:** 06:24:56<br>**DISPATCHED:** 06:25:52<br>**ENROUTE:** 06:25:55<br>**AT SCENE:** 06:29:23<br>**AT PT SIDE:** 06:30:00<br>**TRANSPORT:** 06:50:10<br>**ARRIVAL:** 06:54:05<br>**CARE TRANS'D:** 06:55:00<br>**AVAILABLE:** 07:14:15<br><br>**SCENE MILES:** 5.0<br>**DESTINATION MILES:** 7.0<br>**TOTAL MILES:** 2.0 |

## PATIENT DEMOGRAPHICS

**NAME:** LOGGINS, ROBERT
**ADDRESS:** 1411 NORTH LEVEE ST
**CITY, STATE ZIP:** DUBARD, MS 38901
**PHONE:**
**CELL PHONE:**
**SSN:**

**DOB:** [ ]
**AGE:** 26 YEARS
**GENDER:** MALE
**ETHNICITY:** CAUCASIAN

**INSURANCE:** NO INSURANCE AVAILABLE    **POLICY:**    **GROUP:**

**RESPONSIBLE PARTY:** LOGGINS, ROBERT
**PHONE:**

## NARRATIVE

**NARRATIVE**
EMS DISPATCHED TO THE JAIL FOR A INMATE BLEEDING. UPON OUR ARRIVAL, EOC NOTIFIED EMS THAT PT HAS CODED. UPON OUR ARRIVAL, PT IS LYING SUPINE ON THE FLOOR. PT PLACED ON MONITOR AND CPR STARTED. DUE TO PTS HX OF DRUG USE, NARCAN IS ADMINISTERED.

## IMPRESSION

**PRIMARY IMPRESSION:** CARDIAC - CARDIAC ARREST
**SECONDARY IMPRESSION:** OTHER - OTHER

## HISTORY OF PRESENT ILLNESS

**CHIEF COMPLAINT(S):**

**PT. STATED COMPLAINT:** UNRESPONSIVE; **CHIEF COMPLAINT CATEGORY:** CARDIAC ARREST

EXHIBIT B - MBI REPORT PART 2          TILLEY 193

**LOGGINS, ROBERT**
DOB: [ ] (26 YEARS)
SEX: MALE
CASE #: 61240923
DOS: 11/29/2018

| PTA | TIME | CAREGIVER | PROCEDURE |
|---|---|---|---|
| | 06:33:00 | WATSON, JOHN,AMR | MEDICATION ADMINISTRATION - OXYGEN - 20 LPM BVM/MASK; RESULT AFTER: UNCHANGED |
| | 06:34:00 | WATSON, JOHN,AMR | CAPNOMETRY/CAPNOGRAPHY - CO2 VALUE: 36 |
| | 06:35:00 | WATSON, JOHN,AMR | INTRAOSSEOUS - INDICATION: MEDICATION ADMINISTRATION; TYPE: EZ IO; SITE: PROXIMAL TIBIA RIGHT; SOLUTION: NORMAL SALINE; TOTAL VOLUME: 0; ATTEMPTS: 1; PROCEDURE WAS: SUCCESSFUL; RESULT AFTER: UNCHANGED |
| | 06:36:00 | WATSON, JOHN,AMR | MEDICATION ADMINISTRATION - NALOXONE HCL 0.4MG/ML AMPULE - 2 MG ENDOTRACHEAL TUBE; RESULT AFTER: UNCHANGED; COMMENTS: PT GIVEN NARCAN THROUGH IO |
| | 06:40:00 | WATSON, JOHN,AMR | MEDICATION ADMINISTRATION - EPINEPHRINE (1:10,000) 0.1 MG/ML 0.1MG/ML SYRINGE - 1 MG INTRAOSSEOUS; RESULT AFTER: UNCHANGED |
| | 06:42:00 | WATSON, JOHN,AMR | INTUBATION - INDICATION: CARDIAC ARREST; TYPE: ORAL; TUBE SIZE: 8.0MM; BLADE TYPE: CURVED BLADE (MAC); CUFFED: YES; # OF ATTEMPTS: 1; TUBE CONFIRMATION STEPS: VISUALIZATION OF TUBE PASSING THROUGH THE CORDS,VISUALIZATION OF THE CHEST RISING WITH VENTILATION,AUSCULTATION OF BILATERAL BREATH SOUNDS; CMS AT TEETH: 24; RESULT AFTER: UNCHANGED; PROCEDURE WAS: SUCCESSFUL |
| | 06:45:00 | WATSON, JOHN,AMR | PATIENT MOVE - TYPE: TO GURNEY; COMMENTS: SECURED X 5 STRAPS |
| | 06:51:00 | WATSON, JOHN,AMR | FACILITY ACTIVATION - ACTIVATION TYPE: CARDIAC ARREST ALERT |
| | 06:52:00 | WATSON, JOHN,AMR | MEDICATION ADMINISTRATION - NALOXONE HCL 0.4MG/ML AMPULE - 1 MG ENDOTRACHEAL TUBE; RESULT AFTER: UNCHANGED; COMMENTS: PT GIVEN NARCAN THROUGH IO |
| | 06:55:00 | WATSON, JOHN,AMR | MEDICATION ADMINISTRATION - EPINEPHRINE (1:10,000) 0.1 MG/ML 0.1MG/ML SYRINGE - 1 MG INTRAOSSEOUS; RESULT AFTER: UNCHANGED |

## CARDIAC ARREST

REASON FOR ARREST: OTHER
WITNESSED ARREST: YES
ARREST WITNESSED BY: LAY PERSON
DISPATCHER CPR INSTRUCTIONS: NO
WHO FIRST PROVIDED CPR:
RESPONDING EMS (TRANSPORTING AGENCY)
AED PRIOR TO EMS ARRIVAL: NO

FIRST KNOWN RHYTHM: ASYSTOLE
PATIENT FIRST DEFIBRILLATED BY: NONE
MECHANICAL ADJUNCTS USED: NONE
PULSE RETURNED: NO
PULSE UPON ARRIVAL AT HOSPITAL: NO
EVENT RESOLUTION: ONGOING RESUSCITATION IN ED

## RUN COMPLETION

PRIVACY PRACTICES: THE NOTICE OF PRIVACY PRACTICES WAS UNABLE TO BE PROVIDED

PCR ID: 2018112907501648411     DEVICE: SJACMEDS14     PRINTED: 12/4/2018 14:12:34



## SUPPLIES REPORT

**CASE #:** 61240923          **PT. NAME:** ROBERT LOGGINS          **DATE:** 11/29/2018

| Supply Description | Quantity |
|---|---|
| DISPOSABLE SUPPLIES | 1 |
| EKG MONITOR | 1 |
| EKG MONITOR ELECTRODES SUPPLY | 1 |
| END TIDAL CO2 DETECTION SUPPLY | 1 |
| IO PROCEDURE | 1 |
| EPI 1:10,000 | 1 |
| IV, SALINE LOCK | 1 |
| LARYNGOSCOPE BLADE | 1 |
| OXYGEN | 1 |
| NARCAN | 1 |
| SODIUM BICARB 50 MEQ | 1 |
| INTUBATION SUPPLIES | 1 |
| DISPOSABLE LINEN | 1 |
| IV/IO INF SUP 1 BAG OF FLUID | 1 |

CASE #:61240923
PCR ID:2018112907501648411
UNIT ID:708
PT # 1 OF 1

PAGE 1 OF 1
PT:ROBERT LOGGINS

PRINTED:12/4/2018 14:12:34

https://medsviewer.amr.net/

12/4/2018

EXHIBIT B - MBI REPORT PART 2          TILLEY 195

## American Medical Response

Run Number: 61240923                                    Date and Time of Transport: 11/29/2018 06:50:10
Patient Name: robert loggins
Destination: University of Mississippi Medical Cnt - Grenada, 960 J K Avent Dr, Grenada, MS 38901

I acknowledge that I am legally responsible for the ambulance services provided to me. I request and assign payment of authorized Medicare benefits and/or other insurance benefits be made on my behalf to AMR directly for any ambulance services and supplies furnished to me by AMR whether in the past, now, or in the future. I authorize any holder of medical information about me or other relevant documentation about me to release to the Centers for Medicare and Medicaid Services and its agents and contractors, any and all appropriate third party payers and their respective agents and contractors, as well as AMR, any information or documentation in their possession needed to determine these benefits and/or the benefits payable for related services whether in the past, now or in the future. I agree to cooperate with AMR or its agent in collecting any such benefits. I acknowledge that I have been provided with a copy of AMR's Notice of Privacy Practices. I expressly authorize AMR, its related corporate entities, associates, agents, servicers, debt collectors and independent contractors, to contact me or any responsible party at any telephone number (including numbers assigned to any paging, cellular, or mobile service, or any service which charges for the call) mailing address, e-mail address, or any other electronic address used by, or associated with, me or any responsible party and obtained through any source (including any telephone number I, any responsible party, or any party accompanying me at the time of service, have provided previously or may provide in the future) for the purpose of resolving any unpaid balances or any other pertinent issues regarding this account. I expressly agree any such contact by AMR, its related corporate entities, associates, agents, servicers, debt collectors and independent contractors, may be through any means (including a dialer, automatic telephone dialing system, predictive dialer, interactive voice recognition system, pre-recorded or artificial voice, pre-set email messages, or any pre-set electronic messages delivered by any other electronic messaging or text messaging system). Patient or Guarantor agrees and acknowledges any e-mail address or any other electronic address Patient or Guarantor provides to AMR is Patient's or Guarantor's private address, is not owned or furnished by their employer and cannot be accessed by unauthorized third parties. Patient or Guarantor also authorizes AMR or its agents or associates to obtain a credit report to assist in the collection of any unpaid balances. Nothing herein shall relieve me from the direct financial responsibility for any charges not paid by an insurer. I further agree to send promptly to AMR any payments that an insurer forwards to me.

_____          _____
*Signature of Patient*                          *Date*

### REPRESENTATIVE SIGNATURE

Reason Patient could not Sign :

_____    _____    _____
*Signature of Representative*         *Printed Name of Representative*         *Date*

---

### FACILITY SIGNATURE

Complete this section only if you are unable to obtain the signature of the patient or authorized representative listed above.
Reason Patient could not Sign: Cardiac Arrest

By signing below, I certify that the above named patient was physically or mentally incapable of signing at the time of transport and that none of the individuals listed in 42 C.F.R. $424.36(b)(1)-(3) was available or willing to sign the claim on behalf of the beneficiary.

_____          11/29/2018
*Crew Signature*                               *Crew Date*

*This section is to be complete by a representative of the receiving facility, whenever you are unable to obtain the signature of the patient or an authorized representative. Note: The crew must also complete the "Crew Signature" Section above.*

Name and Location of Facility  University of Mississippi Medical Cnt - Grenada, 960 J K Avent Dr

The above named patient, as described by AMR, was received by our facility, which provided care or assistance to the patient, on the date and time set forth above.

_____          11/29/2018
*Signature of Receiving Representative*          *Date*

christy flowers                                           Registered Nurse
*Printed Name of Receiving Facility Representative*          *Title*

**AMR is required to obtain this form in order to submit a claim for payment to Medicare or other third party payer. This Signature is not an acceptance of financial responsibility for the patient.**

---

CASE #:61240923                          PAGE 1 OF 1                          PRINTED:12/4/2018 14:12:34
PCR ID:20181129075016484411          PT:ROBERT LOGGINS          DEVICE NAME:SJACMEDS14
DATE:11/29/2018                                                               PT # 1 OF 1:12/4/2018 14:12:34

EXHIBIT B - MBI REPORT PART 2                          TILLEY 196

https://medsviewer.amr.net/                                                  12/4/2018

# CHECKPOINT AUDIT TRAIL

SITE: JACKSON

PCR ID: 2018112907501648411

| DATE ENTERED CHECKPOINT | CASE NUMBER | DOS | TOTAL AGE(HRS) | IS TRIP IN CHECKPOINT |
|---|---|---|---|---|
| | | | | |

| QUEUE NAME | TIMER ENTERED QUEUE | TIME SUBMITTED | HOURS PRESENT | SUBMITTED/MOVED BY | SUBMITTED METHOD |
|---|---|---|---|---|---|
| | | | | | |

| FIELD NAME | OLD VALUE | NEW VALUE | TIME MODIFIED | MODIFIED BY |
|---|---|---|---|---|
| | | | | |

Case: 4:20-cv-00220-SA-JMV Doc #: 49-2 Filed: 07/31/21 108 of 149 PageID #: 518

## Prior Active Ambulance Run: 61240923

| Snapshot | SavePlan |
|---|---|

| | | | |
|---|---|---|---|
| **Pick Up Loc:** | 33 DOAK ST-GREN | **Multi-Run:** | |
| **Additional Loc:** | GRENADA JAIL | **Date Rec:** | 11/29/2018 |
| **Apt Building:** | | **Sched Date:** | 11/29/2018 |
| **Zip:** | 38901 | **Sched Time:** | 06:24:56 |
| **Callback:** | 601-999-9999 | **Req. Assist:** | |
| **Contact:** | |GSO | **Units Assisting:** | |
| **Patient Cond:** | 21D00 - HEMOR/LAC/OVERRIDE-DELTA | **First Responder:** | |
| **Patient 1:** | Not Captured | **Delay Codes:** | |
| **Priority:** | 1-EMR LIFE THREAT | | |
| **Call Type:** | ALS_EMERGENCY | | |
| **CallTaker:** | ROBINSON, FRANCHON | | |
| **Dispatcher:** | ROBINSON, FRANCHON | **Unit:** | 708 |
| **Channel:** | J | **Crew 1:** | 005136  WATSON, JOHN |
| **Grid:** | GRE101 | **Crew 2:** | *005141  HOWELL, JENNIFER |
| **Map:** | | **Crew 3:** | |
| **Cross St1:** | 48 1 ST | **Crew 4:** | |
| **Cross St2:** | | | |
| **AD Zone:** | J7 | | |
| **AD Area:** | | **Dispatched:** | 06:25:52 |
| **Fire Dist:** | | **Enroute:** | 06:25:55 |
| **Transport To:** | UMCG - UNIV MISSISSIPPI MED CENTER | **OnScene:** | 06:29:23 |
| **Trans To Loc:** | 960 J K AVENT DR-GREN | **Transporting:** | 06:50:10 |
| **Trans To Cross:** | 1956 F S HILL DR/ | **At Hospital:** | 06:54:05 |
| **Transport Pri:** | 1 | **Available 1st:** | 00:00:00 |
| **Dispatch From:** | ST80 - STATION 80 | **Available:** | 07:14:15 |
| **Init By:** | LE - LAW ENFORCEMENT | | |

**Notes:**

| | |
|---|---|
| 06:24:36 | *GRENADA COUNTY |
| 06:24:56 | Nature: 21D00-HEMOR/LAC/OVERRIDE-DELTA (FQR) |
| 06:24:57 | CALL TYPE=ALSE (FQR) |
| 06:25:52 | AMBULANCE 708 DISPATCHED (FQR) |
| 06:25:55 | STATUS OF '708' CHANGED TO ENROUTE (FQR) |
| 06:26:44 | Ambulance Incident location changed from: 15 (FQR) |
| 06:26:44 | N MAIN ST-GREN (FQR) |
| 06:26:44 | New Ambulance address: 33 DOAK ST-GREN (FQR) |
| 06:26:44 | *GRENADA COUNTY (FQR) |
| 06:29:23 | STATUS OF '708' CHANGED TO ONSCENE (FQR) |
| 06:50:10 | TRANS TO CODE CHANGED FROM BLANK (FQR) |
| 06:50:10 | TRANS TO LOCATION CHANGED FROM BLANK (FQR) |

EXHIBIT B - MR REPORT 09332          TILLEY-00

Case: 4:20-cv-00220-SA-JMV Doc #: 49-2 Filed: 07/31/21 109 of 149 PageID #: 519

```
06:50:10   STATUS OF '708' CHANGED TO TRANSPORTING (FQR)
06:54:05   STATUS OF '708' CHANGED TO ARRIVED DEST (FQR)
07:14:15   STATUS OF '708' CHANGED TO AVAILABLE (BGH)
07:14:24   POSTS RECOMMENDED: ; POST SELECTED: ST80
07:14:24   *Ambulance incident 61240923 closed (BGH)
```

## University of Mississippi Health Care

| | |
|---|---|
| Encounter Date: | 08/29/2018 |
| Hospital Account: | 4600574803 |
| MRN: | 2330319 |
| Guarantor: | LOGGINS,ROBERT D |
| Contact Serial #: | 2032905242 |
| Patient Class: | Emergency |

## ENCOUNTER

| | | | |
|---|---|---|---|
| Religion: | None [12] | Unit: | GH EMERGENCY |
| | Preferred Language: English | Bed: | ED 8-01 |
| Hospital Service: | Emergency Medicine | | |
| Admitting Provider: | | Referring Physician: | |
| Attending Provider: | | Adm Diagnosis: | |

## PATIENT

| | | | |
|---|---|---|---|
| Name: | LOGGINS, ROBERT D | DOB: | (26 yrs) |
| Address: | 1411 NORTH LEVEE ST | Sex: | Male |
| City: | GRENADA, MS 38901 | Race: | Black Or African American |
| | | Ethnicity: | Not Hispanic Or Latino |
| Primary Care Provider: | Ralph C Armstrong Jr., * | Primary Phone: | 999-999-9999 |

EMERGENCY CONTACT

| Contact Name | Legal Guardian? | Relationship to Patient | Home Phone | Work Phone |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |

## GUARANTOR

| | | | |
|---|---|---|---|
| Guarantor: | LOGGINS,ROBERT D | DOB: | |
| Address: | 1411 NORTH LEVEE ST | Sex: | Male |
| | GRENADA, MS 38901 | | |
| Relation to Patient: | Self | Home Phone: | 999-999-9999 |
| Guarantor ID: | 737105 | Work Phone: | |

GUARANTOR EMPLOYER

| | | | |
|---|---|---|---|
| Employer: | | Status: | NOT EMPLO* |

## COVERAGE

PRIMARY INSURANCE

| | | | |
|---|---|---|---|
| Payor: | UMR | Plan: | UMR |
| Group Number: | 76-412524 | Insurance Type: | INDEMNITY |
| Subscriber Name: | LOGGINS,ROBERT D | Effective Date: | 1/1/2017 |
| Subscriber ID: | 17930136 | Subscriber DOB: | |
| Pat. Rel. to Subscriber: | Self | | |

SECONDARY INSURANCE

| | | | |
|---|---|---|---|
| Payor: | | Plan: | |
| Group Number: | | Insurance Type: | |
| Subscriber | | Effective Date: | 1/1/2017 |
| Subscriber ID: | | Subscriber DOB: | |
| Pat. Rel. to Subscriber: | | | |

| | | |
|---|---|---|
| Contact Serial # (2032905242) | November 29, 2018 | Chart ID (2330319-GC ELECTRO-9) |

EXHIBIT B - MBI REPORT PART 2          TILLEY 200

Case: 4:20-cv-00220-SA-JMV Doc #: 49-2 Filed: 07/31/21 111 of 149 PageID #: 521

## Prior Active Ambulance Run: 61240921

Snapshot

| | | | |
|---|---|---|---|
| **Pick Up Loc:** | 81 BLEDSOE ST-GREN | **Multi-Run:** | |
| **Additional Loc:** | | **Date Rec:** | 11/29/2018 |
| **Apt:** | | **Sched Date:** | 11/29/2018 |
| **Building:** | | **Sched Time:** | 05:55:00 |
| **Zip:** | 38901 | **Cancel Date:** | 11/29/2018 |
| **Callback:** | | **Cancel Time:** | 06:08:00 |

| | |
|---|---|
| **Contact:** | EOC |
| **Patient Cond:** | 26D00 - SICK PERSON/OVERRIDE-DELTA |
| **Cancel Reason:** | REFUSAL - NOT TREATED |
| **Cancelled By:** | ROBINSON, FRANCHON |

| | |
|---|---|
| **Priority:** | 1-EMR LIFE THREAT |
| **Call Type:** | ALS_EMERGENCY |
| **CallTaker:** | WILLIAMS, MARSEAH |
| **Dispatcher:** | WILLIAMS, MARSEAH |
| **Channel:** | J |
| **Grid:** | GRE101 |
| **Map:** | |
| **Req. Assist:** | |
| **Units Assisting:** | |
| **First Responder:** | |
| **Delay Codes:** | |

| | |
|---|---|
| **Cross St1:** | 1106 ADAMS ST |
| **Cross St2:** | 1106 FAIRGROUND RD |
| **AD Zone:** | J7 |
| **AD Area:** | |
| **Fire Dist:** | |
| **Unit:** | 708 |
| **Crew 1:** | 005136 WATSON, JOHN |
| **Crew 2:** | *005141 HOWELL, JENNIFER |
| **Crew 3:** | |
| **Crew 4:** | |

| | |
|---|---|
| **Transport To:** | |
| **Trans To Loc:** | |
| **Trans To Cross:** | / |
| **Transport Pri:** | . |
| **Dispatch From:** | ST80 - STATION 80 |
| **Init By:** | LE - LAW ENFORCEMENT |

| | |
|---|---|
| **Dispatched:** | 05:55:15 |
| **Enroute:** | 05:55:23 |
| **OnScene:** | 06:00:07 |
| **Transporting:** | 00:00:00 |
| **At Hospital:** | 00:00:00 |
| **Available 1st:** | 00:00:00 |
| **Available:** | 06:08:07 |

**Notes:**

| | |
|---|---|
| 05:54:56 | *GRENADA COUNTY |
| 05:55:00 | Nature: 26D00-SICK PERSON/OVERRIDE-DELTA (MDW) |
| 05:55:03 | CALL TYPE=ALSE (MDW) |
| 05:55:15 | AMBULANCE 708 DISPATCHED (MDW) |
| 05:55:23 | STATUS OF '708' CHANGED TO ENROUTE (MDW) |
| 06:00:07 | STATUS OF '708' CHANGED TO ONSCENE (FQR) |
| 06:08:09 | POSTS RECOMMENDED: ; POST SELECTED: ST80 |
| 06:08:09 | *Ambulance incident 61240921 closed (FQR) |

EXHIBIT E MBI REPORT PART 2                TILLEY 201



# Grenada Police Department
## Taser X26/M26 Exposure Report

Date: **11/29/18**                                  Case Number: **2018112154**

Subject's Name: **Robert Loggins**

Date of Birth: _____   Race: **Blk**   Sex: **M**   Height: **5-7**   Weight: **157**

## Taser Deployment

Which Taser was the above subject exposed with?   ☐ M26   ☑ X26

Type of Discharge:   ☐ Probe   ☐ Drive Stun   ☑ Both

Type of Cartridge:   ☑ Regular Darts   ☐ XP Darts

Drive Stun:   ☑ Yes   ☐ No

Approximation of the Range at which the unit was deployed: **5 ft.**

Length of Exposure: **40** Seconds     Number of five second cycles used: **8**

## Impact

Did probe contacts penetrate the subject's skin?   ☑ Yes   ☐ No

Type of clothing the probes encountered: **coat and underwears**

Length of Exposure: **40** Seconds     Number of five second cycles used: **8**

Points of Impact on subject: **Lower back and right side of the body**

Application Areas:  Place "X" in ink on points of contact.



## Effect/Injury

How did the Tazer affect the subject? _somewhat_

Could the subject fight the effects of the Taser? ☐ Yes ☑ No

Did the application cause injury? ☐ Yes ☑ No

Describe the injury: _na_

Was the subject treated for the injury? ☑ Yes ☐ No

Describe treatment: _EMS looked over him and removed the probes from his back_

## After Discharge Actions

What were the afterdischarge actions taken by the officer?_____

Were wire leads, air cartridges, and afid tags placed in evidence? ☑ Yes ☐ No

If no, explain why not: _the afid tags could not be located_

Circumstances explaining the use of the Taser. (Attach Arrest Report, Offense Report, or Other.)

Officer's Signature: _____ Date: _11/25/18_

Supervisor's Signature: _____ Date: _11/29/18_

**GRENADA POLICE DEPARTMENT**                    **INCIDENT/OFFENSE REPORT SUPPLEMENT**

| ORI MS0220100 | | | Date and Time of This Report | | | | GPD Case Number | |
|---|---|---|---|---|---|---|---|---|
| | | | Month | Day | Year | Time | | |

| 1 Victim Name as on Original Report (Last, First, Middle) | | 2 Date Original Report | | | | 3 Type of Report |
|---|---|---|---|---|---|---|
| | | Month | Day | Year | Time | ☑ Continuation ☐ Follow-up |

| 4 Original Incident / Offense | 5 New Incident / Offense if Changed | 5a From NCIC Code | 5b To NCIC Code |
|---|---|---|---|

| 6 Has an Arrest Been Made? | 7 Date of Arrest | | | 8 Has a Warrant Been Signed? | 9 Date Original Report | | | |
|---|---|---|---|---|---|---|---|---|
| | Month | Day | Year | | Month | Day | Year | Time |

| INSTRUCTIONS FOR FOLLOW-UP OR SUPPLEMENTAL USAGE: | Under Narrative, record your activity and all developments in the case subsequent to last report. Describe and record value of any property recovered, names and arrest numbers of any persons arrested. Explain any offense classification change. Clearly show disposition of recovered property and inventory numbers. Recommend to supervisor case status and to reviewer UCR disposition. Indicate "item number continued" at left, if any. |
|---|---|

**EVENT**

**NARRATIVE**

Officers of the Grenada Police Dept. were called to the area of 50 West Govan Street in regards to someone behind their house yelling. Once we got to the area of 50 West Govan St., Cpl. Merriman and Officer Tilley went to Bledsoe Street to see if they could who it was yelling. Capt. Gammage, Officer Jones and myself stayed in the area of Govan Street. We could hear someone yelling but could not pen point the location. Cpl. Merriman and Officer Tilley went behind 81 Bledsoe Street and that is when they saw who was yelling in the area. Officer Tilley stated that it was Robert Loggins that was yelling in the area and he was laying down on the ground in some tall brushes. Capt. Gammage, Officers Jones and myself walked around a house on Govan and made contact with Loggins. Loggins was ordered by all of us to show his hands, but he refused to do so. After telling him several time the taser was discharged to the under and low part of his back. The first contact with the taser was effective with neuromuscular incapacitation, but after the five seconds were over he would not comply with any orders he was then given two more cycles from the Taser. He then locked his arms under his body. Loggins was drive stunned. He was drive stunned Loggins two more exposures with the taser at 5 seconds each. He still would not comply with orders. After the taser showed no effect on him Officers went hands on. During the time Officers went hands on, Loggins bit Officer Tilley on his hand as Officer Jones and him were trying to place him in handcuffs. Capt. Gammage then drive stunned Loggin on his right biceps. Officers then to use physical force to remove his hands from under his body. Officers Tilley, Jones and Capt. Gammage had to physically remove his hands. They were able to place had cuffs on Loggins. He was then carried from the area and checked by EMS. EMS checked Loggins and the Taser probes were removed by EMS. He was transported to Grenada County Jail for booking and holding. Loggins is charged with the following: Disturbance the peace and Simple Assault of a Police Officer

**VALUE**

| 10 Vehicles | 11 Currency, Notes, etc. | 12 Jewelry and Precious Metals | 13 Clothing and Furs | 14 Office Equipment |
|---|---|---|---|---|
| $_____ S | $_____ S | $_____ S | $_____ S | $_____ S |
| $_____ R | $_____ R | $_____ R | $_____ R | $_____ R |
| 15 TV, Radio, etc. | 16 Household Goods | 17 Firearms | 18 Consumable Goods | 19 Livestock | 20 Miscellaneous |
| $_____ S | $_____ S | $_____ S | $_____ S | $_____ S | $_____ S |
| $_____ R | $_____ R | $_____ R | $_____ R | $_____ R | $_____ R |

| MOTOR VEHICLE RECOVERY ONLY | 21 Stolen in Your Jurisdiction? ☐ Yes ☐ No Where?_____ | 22 Recovered in Your Jurisdiction? ☐ Yes ☐ No Where?_____ |
|---|---|---|

**ADMIN**

| 23 Case Status | 24 Case Disposition | 25 Reporting Officer No. 1        Code | 29 Entered NCIC | | | |
|---|---|---|---|---|---|---|
| ☐ Pending ☐ Inactive ☐ Closed | ☐ Cleared by Arrest (Def under 18 Years) ☐ Cleared by Arrest (Def 18 Years or Over) ☐ Exc. Cleared ☐ Unfounded | 26 Reporting Officer No. 2        Code | Month | Day | Year | Time |
| | | 27 Supv. Approval   28 Shift Cmdr. | ☐ Person ☐ Vehicle ☐ Article | ☐ Gun ☐ Boat ☐ Securities | | |

GRENADA POLICE DEPARTMENT | INCIDENT / OFFENSE REPORT

| ORI MS0220100 | Date and Time of This Report | | | | GPD Case Number | 2018112154 |
|---|---|---|---|---|---|---|
| | Month 11 | Day 29 | Year 18 | Time 0600 | | |

**VICTIM**

| 1 Last Name Tilley | First Deane | Middle | 2 Address (Street-City-State) 15 N Main Street, Grenada, MS 38901 | 3 Phone 6622273455 |
|---|---|---|---|---|
| 4 Employer or School | | 5 Occupation | 6 Address (Street-City-State) | 7 Phone |

| Victims Description | 8 Armed? | 9 Sex M | 10 Race W | 11 HGT 5'8 | 12 WGT 180 | 13 Date of Birth | | | 14 Relationship of Victim to Offender |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Month | Day | Year | |

| 15 Type of Incident or Offense  ☑Felony ☐Misd Simple Assault on Policeman | 16 NCIC Code | 17 Type of Incident (a) Felony (b) Misd | 18 NCIC Code |
|---|---|---|---|

| 19 Place of Occurrence 45 Govan Street | 20 Sector Number 2 |
|---|---|

| 21 Point of Entry | 22 Location of Victims Property |
|---|---|

**EVENT**

| 23 Occurred on or Between | | | | | 24 Lighting | 26 Premise Type |
|---|---|---|---|---|---|---|
| Month 11 | Day 29 | Year 18 | Time 0500 | Day of Week Thursday | ☑Natural ☐Moon ☐Artificial Ext. ☐Artificial Int. ☐Unknown | ☐Hwy-Str-Aly ☐Commercial ☐Svc. Sta ☐Chn. Store ☑Residence ☐Bank |
| Month 11 | Day 29 | Year 18 | Time 0600 | Day of Week Thursday | 25 Weather ☑Clear ☐Cloudy ☐Rain ☐Fog ☐Snow-Sleet ☐Hail ☐Unknown | ☐Church ☐School ☐Other |

| 27 Method of Attack | 28 Tool Used (Burglary) |
|---|---|

| 29 Weapon Used ☐Fire Arm ☐Hands, Fists, etc. ☐Knife or cutting inst. ☐Other Weapon | 30 Description of Weapon Used |
|---|---|

| 31 Complainant Name (Last-First-Middle) Unknown | 32 Address (Street-City-State) Unknown | 33 Phone Unknown |
|---|---|---|

**VEHICLE / Stolen / Wanted**

| 34 Tag Number | 35 State | 36 Year | 37 Tag Color | 38 VIN | | 39 |
|---|---|---|---|---|---|---|
| 40 Veh. Yr | 41 Veh Make | 42 Veh Mod | 43 Style | 44 Color (Top) (Bottom) | 45 Additional Description | |

| Stolen Motor Vehicle Only | 46 Area Stolen ☐Bus ☐Res ☐Rur | 47 Ownership Verified By ☐Tag Receipt ☐Bill of Sale ☐Title ☐License Registration ☐Other | 48 Warrant Signed (Yes or No) |
|---|---|---|---|

| 49 Auto Insurer Name (Company) | 50 Address (Street-City-State) | 51 Phone |
|---|---|---|

| Motor Vehicle Recovery Only | 52 Stolen in Your Jurisdiction? ☐Yes ☐No Where? | 53 Recovered in Your Jurisdiction? ☐Yes ☐No Where? |
|---|---|---|

**PROPERTY DESCRIPTION**

| 54 Qty | 55 Describe Property Stolen or Recovered (Include Make, Model, Size, Type, Serial Number, etc.) | 56 Value Stolen | 57 Recovered | |
|---|---|---|---|---|
| | | | Date | Value |

**VALUE**

| 58 Vehicles $ Stolen: | 59 Currency, Notes, Etc. $ Stolen: | 60 Jewelry and Precious Metals $ Stolen: | 61 Clothing and Furs $ Stolen: | 62 Office Equipment $ Stolen: |
|---|---|---|---|---|
| $ Recovered: | $ Recovered: | $ Recovered: | $ Recovered: | $Recovered: |
| 63 T.V., Radio, Etc. $ Stolen: | 64 Household Goods $ Stolen: | 65 Firearms $ Stolen: | 66 Consumable Goods $ Stolen: | 67 Livestock $ Stolen: | 68 Miscellaneous $ Stolen: |
| $ Recovered: | $ Recovered: | $ Recovered: | $ Recovered: | $ Recovered: | $ Recovered: |

**ADMIN**

| 69 Case Status ☑Pending ☐Inactive ☐Closed | 70 Case Description ☐Cleared by Arrest (Def under 18 years of age) ☐Cleared by Arrest (Def 18 years or older) ☐Exc Cleared ☐Unfounded | 71 Reporting Officer No. 1 CPL- HW M___ Code G29 | 75 Entered NCIC |
|---|---|---|---|
| | | 72 Reporting Officer No. 2 Code | Month Day Year Time |
| | | 73 Supervisor Approval 74 Shift Cmdr. | ☐Person ☐Gun ☐Vehicle ☐Boat ☐Article ☐Security |

| INCIDENT / OFFENSE REPORT CONTINUED | Date and Time of This Report | | | | GPD Case Number | |
|---|---|---|---|---|---|---|
| | Month 11 | Day 29 | Year 18 | Time 0600 | | 2018112154 |

| WITNESS | 76 Name (Last-First-Middle) | 77 Address | | 78 Res Phone | 79 Bus Phone |
|---|---|---|---|---|---|
| | 80 | 81 | | 82 | 83 |
| | 84 | 85 | | 86 | 87 |
| | 88 | 89 | | 90 | 91 |

| MISSING | 92 Name (Last-First-Middle) | | 93 Nickname | 94 Sex | 95 Race | 96 Age | 97 Date of Birth Month | Day | Year |
|---|---|---|---|---|---|---|---|---|---|
| | 98 Address or Probable Destination | | | 99 HGT | 100 WGT | Hair | 103 Complexion | | |
| | 104 Scars, Marks, Tattoos, etc. | | 105 Clothing Worn | | | | | | |

| WANTED | 106 Name (Last-First-Middle) | | 107 Nickname | 108 Sex | 109 Race | Age | 111 Date of Birth Month | Day | Year |
|---|---|---|---|---|---|---|---|---|---|
| | 112 Address or Probable Destination | | | 113 HGT | 114 WGT | Hair | 117 Complexion | | |
| | 118 Scars, Marks, Tattoos, etc. | | 119 Clothing Worn | | | | | | |

**NARRATIVE**

On the above date and time, I responded to the area of 50 Govan Street in reference to someone screaming for help. Upon my arrival to 50 Govan Street, I could hear some screaming but could not make out where it was coming from. As Officer Tilley, Jones and Sgt. Woodall made the area, we could tell the screaming was coming from the area between Govan Street and Bledsoe Street. Myself and Officer Tilley went to Bledsoe Street. We found the screaming coming from directly behind 81 Bledsoe Street. Myself and Officer Tilley located Robert Loggins lying in the bushes on the South side of the fence behind 81 Bledsoe Street. Cpt. Gammage, Sgt. Woodall, and Officer Jones walked around a house on Govan Street and made contact with Loggins. They advised Loggins to put his hands up several times and he refused. Sgt. Woodall deployed the tazer into Loggins back. The taser locked him up but when the 5 second cycle had ended Loggins began resisting, he was tazed 4 more 5 second cycles. Loggins continued to resist. Officer Jones, Tilley, Cpt. Gammage and Sgt. Woodall had to go hands on the effect the arrest. During the scuffle Loggins bit Officer Tilley. EMS was called to the scene to check Loggins out. EMS arrived on scene, they did not check any of Loggins vitals they just looked at him and said he was ok. Myself, Officer Tilley and Officer Jones dragged Loggins to the Patrol Car and put him in the car. Officer Jones transported him to the Grenada County Jail.

# Grenada Police Department
## Use of Force Report

| Date 11/29/18 | Time 0541h | Location 45 Govan Street | | Case Number 2018112154 | | |
|---|---|---|---|---|---|---|
| Subject's Name Robert Loggins | | | Date of Birth | | Sex M | Race Blk |

**Reason For Use of Force**

- ☑ Necessary to effect an arrest
- ☐ To prevent a violent, forcible felony
- ☑ Necessary to defend another officer
- ☑ To restrain for subject's safety
- ☐ Necessary to defend another person
- ☐ Other

| Was subject Injured? ☐ Yes  ☑ No | Conveyance Patrol Unit 19 | Destination Grenada County Jail | Attending Physician na |
|---|---|---|---|
| Subjects that resisted 1 | Officers Present 5 | Supervisor Notified Time was on scene | Notified Supervisor's Signature |

**At the time of arrest. The subject was**

- ☑ Under the Influence of Alcohol/Drugs
- Mentally Impaired
- ☐ Suspected Under the Influence of Alcohol/Drugs
- ☐ Other

Describe Subject's Injuries

**Levels of Resistance**

Psychological Intimidation: Explain: Loggins would not show his hands
(Non verbal cues indicating subject's attitude or physical readiness)

Verbal Non-Compliance: Explain: Loggins was asking was we going to kill him
(Verbal responses or threats of non-compliance to officer's directions)

Passive Resistance: Explain: Loggins locked his arms under his body
(Dead weight or Clinging to objects in an attempt to prevent the officer from gaining control)

Escape Resistance: Explain Loggins bite Officer Tilley on the hand
(Pushing, pulling, or running away from officer to avoid control; never attempting to harm the officer)

Active Aggression: Explain: Loggins bite Officer
(Physical actions of assult)

Aggravated Active Aggression: Explain:
(Assaults with Weapons)

**Levels of Control (Officer presence is implied**

Verbal Direction; Explain He was told to show his hand and to put his hands behind his back
(Commands of direction or of arrest)

Empty Hands Control: Explain

Soft / Hard

- ☐ Muscling
- ☑ Hand Strikes Body Part: side of THE Body
- ☐ Joint Locks
- ☐ Leg Strikes  Body Part:
- ☑ Pressure Points

Intermediate Weapons:
(Chemical etc).:

Impact Weapons:
(Primary or Alternative):

Lethal Weapons: Specify
(Firearms or other lethal force.:

| Officer's Signature | Badge 6-12 | Supervisor's Signature | | Badge |
|---|---|---|---|---|

EXHIBIT B - MBI REPORT PART 2                    TILLEY 208

## Control Point Target Areas

Mandibular Angle (PP.)
Hypoglossal Nerve (P.P.)
Brachial Plexus (Origin)(H.E.H.)
Brachial Plexus (Clavical Notch)(P.P.)

Infra-Orbital Nerve (P.P.)
Jugular Notch (P.P.)
Braciel Plexus Tie-In (H.E.H.)

Radial Nerve (I.W. H.E.H)

Median Nerve H.E.H.I.W

Femoral Nerve (I.W.)
Common Peroneal (I.W.)

Tibial Nerve (rear) (I.W.)

**Legend**
P.P. - Pressure Point
H.E.H. - Hard Empty Hand
I.W. - Impact Weapon

Varibles Affecting Levels of Control
1. Officer/Subject Size and Gender
2. Enviromental Conditions
3. Reaction Time

## Chemical Spray Target Area

Primary Target Area                    Application Area

### Effects of Chemical Spray

Was Spray Effective? ☐ Yes  ☐ No

Number of Times Sprayed _____

Distance from Subject: _____

| Effect on Eyes: | ☐ Closer | ☐ Tears | ☐ No Effect |
| Effect on Nose: | ☐ Discharge | ☐ Irritation | ☐ No Effect |
| Effect on Chest: | ☐ Coughing | ☐ Labored Breathing |
| Effect on Skin: | ☐ Redness | ☐ Burning | ☐ No Effect |

## Post-Incident Observation

Immediately Following Final Control Technique:


15 Minutes Following Final Control Technique:


30 Minutes Following Final Control Technique:


### Narrative
Attach Arrest Report and Offense Report

✳ See  Tazer  Report


Officer's Signature: _____ Badge#: 012    Supervisor Signature: _____ Badge#: _____

**POLICE DEPARTMENT**
**GRENADA**

**COMPLAINT NUMBER:** 2018112154

## ARREST REPORT

| NAME | | | | MAIDEN NAME | | PHONE | |
|---|---|---|---|---|---|---|---|
| Robert Loggins | | | | | | 662-294-3210 | |

| ADDRESS | CITY | STATE | | PREVIOUS ADDRESS | | CITY | STATE |
|---|---|---|---|---|---|---|---|
| 1411 Levee Street | Grenada | MS | | | | | |

| DOB | RACE B | SEX M | AGE 25 | HEIGHT 5'8 | WEIGHT 157 | HAIR Blk | SOCIAL SECURITY | DRIVERS LICENSE | ST | OCCUPATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| OFFENSE | STATUTE | DATE | TIME | LOCATION | OFFICERS |
|---|---|---|---|---|---|
| Disturbing the Peace | 97-35-15 | 11-29-18 | 0600 | Govan Street | G29 G44 |
| Simple Assault on Policeman | 97-3-7(1)(b)(a)(i) | 11-29-18 | 0600 | 45 Govan Street | G29 G44 |

| RIGHTS | DATE | TIME | COMPLAINANT | ADDRESS | PHONE |
|---|---|---|---|---|---|
| ☐ N/A  ☐ NO  ☐ YES | | | Cpl. Hal Merriman | 15 N Main Street | 662-227-3455 |

### NARRATIVE

NOTE FACTS OF ARREST NOT INCLUDED ABOVE

On the above date and time, Robert Loggins was arrested at 45 Govan Street. He is charged with Disturbing the Peace and Simple Assault on a Policeman in the Line of Duty. Loggins was transported to the Grenada County Jail.

| WITNESS | ADDRESS | PHONE |
|---|---|---|
| | | |

| WITNESS | ADDRESS | PHONE |
|---|---|---|
| | | |

| OFFICER | BADGE | APPROVING SUPERVISOR | BADGE |
|---|---|---|---|
| Cpl. Hal Merriman | G29 | | |

# THE STATE OF MISSISSIPPI

## VS

Docket No _____

Robert Loggins

_____

In the Municipal court of the
**City of Grenada ● Grenada County, Mississippi**

**AFFIDAVIT**
THE STATE OF MISSISSIPPI
COUNTY OF GRENADA
CITY OF GRENADA

Before me, Sgt Cassidy Williamson Clerk of the Municipal Court of the City of Grenada, Mississippi, Cpl Hal Merriman _____ makes oath that on or about the 29th day of November 20 18 , Robert Loggins _____ within the corporate limits of the City of Grenada, in Grenada, Mississippi, did willfully and unlawfully disturb the public peace at 45 Govan Street by boisterious conduct in that he was yelling, being loud, and acting wild.

Contrary to the laws of the state of Mississippi and / or ordinances of the City of Grenada, Mississippi.

_CPL - Hal MR_____ , Signature

Corporal Hal Merriman _____ , Name
Affiant

Subscribed and sworn to before me this 29th day of _____November_____ , 20 18

_Cajn_____ , ~~Clerk~~ /D.C.

To Wit __Disturbing the Peace [97-35-15]__

---

## JUDGEMENT

On this, the_____ day of _____ , 20____ at the required time of this court came the described cause to be heard and the defendant (with) (without) (through) counsel, and after hearing the evidence and argument, and after due consideration of the same, his court finds the defendant:

_____ Guilty
_____ Not Guilty
_____ Dismissed
_____ Remanded to the files
_____ Bound over to the Grand Jury
_____ Insufficient evidence to bind over to the Grand Jury of the offense charged in the complaint in this cause.

It is therefore ordered and adjudged by the court that the State of Mississippi for the use and benefit of the City of Grenada do have and recover of the defendant the sum of $_____ , the fine assessed and all costs in the case incurred said fine and cost are to be paid:

_____ Immediately
_____ On or before _____ , 20_____

It is therefore ordered and adjudged by the court that the defendant in default of payment be committed to and remain in the custody of the chief of police of the City of Grenada until said fine and cost shall have been fully paid or otherwise discharged by law. It is further ordered and adjudged that execution issue for all of said fine and cost. It is further ordered and adjudged by the court that the defendant_____

_____

_____ , Judge, Municipal Court, City of Grenada, Mississippi

# THE STATE OF MISSISSIPPI
## VS

**Docket No** _____

Robert Loggins

_____

In the Municipal court of the
**City of Grenada • Grenada County, Mississippi**

**AFFIDAVIT**
THE STATE OF MISSISSIPPI
COUNTY OF GRENADA
CITY OF GRENADA

Before me, Sgt Cassidy Williamson Clerk of the Municipal Court of the City of Grenada, Mississippi,
Cpl Hal Merriman _____ makes oath that on or about the 29th day of November 20 18 ,
Robert Loggins _____ within the corporate limits of the City of Grenada, in Grenada, Mississippi,
did purposely, knowingly and feloniously cause bodily injury to Deane Tilley, a police officer while
acting within the scope of his duty by biting him on the left hand as he was arresting the suspect.

Contrary to the laws of the state of Mississippi and / or ordinances of the City of Grenada, Mississippi.

_CPL- HhP MR_ , Signature

Corporal Hal Merriman , Name
Affiant

Subscribed and sworn to before me this 29th day of November , 20 18

_Cap2in_ , Clerk / D.C.

**To Wit** __Assault, Simple - On Policeman In Line Of Duty [97-3-7(1)(b)(a)(i)]__

## JUDGEMENT

On this, the_____ day of _____, 20____ at the required time of this court came the described cause to
be heard and the defendant (with) (without) (through) counsel, and after hearing the evidence and argument, and after due
consideration of the same, his court finds the defendant:
_____ Guilty
_____ Not Guilty
_____ Dismissed
_____ Remanded to the files
_____ Bound over to the Grand Jury
_____ Insufficient evidence to bind over to the Grand Jury of the offense charged in the complaint in this cause.
It is therefore ordered and adjudged by the court that the State of Mississippi for the use and benefit of the City of Grenada
do have and recover of the defendant the sum of $_____ , the fine assessed and all costs in the case incurred
said fine and cost are to be paid:
_____ Immediately
_____ On or before _____, 20_____
It is therefore ordered and adjudged by the court that the defendant in default of payment be committed to and remain in
the custody of the chief of police of the City of Grenada until said fine and cost and cost shall have been fully paid or otherwise
discharged by law. It is further ordered and adjudged that execution issue for all of said fine and cost. It is further ordered
and adjudged by the court that the defendant_____

_____

_____ , Judge, Municipal Court, City of Grenada, Mississippi

## Chapter 10
## Use of Force

**10.1 Purpose**

It is the purpose of this order to establish guidelines and limitations for the use of force and deadly force for officers of this Department.

**10.2 Policy**

It is the policy of this Department that an officer's use of force will be that of a minimum to accomplish a legitimate police objective.

**10.3 The Order**

A. **General Considerations:** The nature of police work is such that, from time to time, officers find it necessary to use coercion and/or physical force in order to accomplish a police objective. The necessity for using physical force is recognized in both State law and Department policy. However, the need for restricting the use of force is also recognized and appropriate limitations are established accordingly.

B. **Use of Minimum Force Necessary**

1. The guiding principle by which an officer's use of force is judged allows the application of the minimum force necessary to accomplish a legitimate policy objective. It is incumbent upon the officer to access each situation as to the necessity for the use of force and the degree of force required.

2. There are a wide variety of methods short of physical force by which an officer can influence the uncooperative subject to cooperate. These range from friendly persuasion to stern warning that continued resistance will mandate the use of physical force. When possible, an officer should seek to resolve the situation short of physically grappling with or striking the subject. However, should words prove ineffective, the officer is empowered to apply force, short of deadly force, to accomplish a legitimate objective. As a general rule, the force required to subdue a belligerent suspect should be escalated in priorities to accomplish the objective. Accordingly, the following priorities of force should be used as far as practicable in the order listed:

   a. Friendly Persuasion
   b. Come-Along-Hands
   c. Chemical Agents
   d. Police Baton
   e. Deadly Force

C. **Controlling the Human Factor**

1. As difficult as it is to do, officers are required to divorce their human emotions from their professional duties when using physical force. The Police are, in many respects, uniquely empowered to apply physical force in the name of the law. That power carries with it a great deal of responsibility and mandated that it be used only for legitimate purposes and with professional restraint.

2. The police officer must be careful to control his own emotions when engaged in a physical confrontation. His handling of the situation will, in every respect, be scrutinized for overreaction or improper behavior. The subject with whom he is dealing can afford to be rude, arrogant, threatening, and verbally abusive - - the police officer cannot.

D. **Reporting Use of Force:** In as instant in which an officer uses significant physical force to subdue a subject, a written report shall be made detailing the circumstances.

1. If an arrest or crime report is submitted, the details on the use of force shall be included.

2. If no arrest or crime report is made, the circumstances regarding the use of force shall be documented on a Grenada Police Department's Use of Force form and submitted to the officer's supervisor.

3. Any time any force at or above chemical agents is used, a use of force report shall be completed (See example use of force form following this chapter).

E. **Chemical Mace:** Officers shall use chemical mace only when considerable force is necessary to subdue an individual and prior to the use of a police baton or in some cases, a firearm, if possible.

1. Officers should direct a stream of liquid into the subject's facial area for one (1) second. (Additional gas does not improve effectiveness but does increase the probability of a chemical burn.) The subject should be handcuffed as soon as possible after being subdued, but his face kept exposed to the air. He should be advised to blink his eyes and not keep them closed. Proper first aid shall be administered as soon as possible. As soon as the subject is cooperative, the affected area should be washed with tap water (not directly into the eyes).

2. The subject should be provided the opportunity and direction to cleanse the affected areas. The fact that the subject was advised of the cleaning procedures and given the opportunity to do so shall also be noted in the written report.

**F. Police Baton:** The police baton is the principal impact weapon. It is the intermediate stop between hand applied force and the ultimate force of firearms. Officers shall avoid the intentional striking of a subject in the head with the baton. When the baton is used, it should be used to poke or jab, not normally to strike. If due to circumstances the officer must strike, he should strike at the extremities of the combative subject. Officers shall never deliberately strike at the head of a subject.

**G. Deadly Force**

1. **General Policy:** As long as members of the public are victims of violent crimes and Police Officers, in the performance of their official duties with deadly force, it shall remain necessary for Police Officers to be properly armed for the protection of society. The policy of the Grenada Police Department on the use of deadly force and the discharging of firearms shall be set forth herein, as defined in Tennessee vs. Garner.

   a. Officers of this Department shall exhaust every other reasonable means of apprehension, restraint, or force before resorting to the use of firearms.

   b. Officers shall not unnecessarily draw or display any firearm or carelessly handle a firearm at any time. The same rules of good judgment applicable to the discharge of a weapon shall also apply to the drawing and displaying of a weapon by an officer, whether on or off duty.

   c. No warning shots shall be fired by an officer under any circumstances. An officer who fires a shot to warn or who otherwise discharges a firearm without proper justification, shall be subject to disciplinary action.

   d. Officers shall not discharge firearms in connection with police activities, either on or off duty, except under the following circumstances:

      1. At an approved range.

      2. In the case of seriously wounded or dangerous animals after having received permission of a supervisor, when other methods of disposition are impractical.

      3. In defense, to overcome an attack which could produce great bodily harm or death to the officer or other person. Firearms, or any other deadly force, should be used only if the officer has no other means available to overcome the attacker.

      4. To effect the capture of or prevent the escape or rescue of a person whom the officer knows has committed a felony and where violence or where the potential for violence exists with the following limitations:

    a. The crime for which the arrest is sought involves the use or threatened use of deadly force.

    b. There is a substantial risk that the person whose arrest is sought will cause death or serious bodily harm if his apprehension is delayed.

    c. The firearm shall not be used under any circumstances where innocent bystanders are likely to be injured or killed.

    d. The officer shall not shoot unless all other available means to effect the capture of the felon have been exhausted or would prove ineffective.

5. Any officer who discharges a firearm accidentally or intentionally while performing a police function, either on duty or off duty, shall make a verbal report to his supervisor as soon as circumstances will permit and a written report as soon as possible.

**H.** **Juvenile Felony Suspects:** An officer generally should not shoot at a fleeing felon whom he has reasonable grounds to believe is a juvenile. However, when the escape of such a suspect can reasonably be expected to pose a serious threat to the life of another person, then under these circumstances an officer may shoot to prevent the escape of such a person. This section does not limit an officer's right of self-defense or his defense of others whose lives he reasonably believes are in imminent peril.

**I.** **Shooting at Fleeing Misdemeanor Suspects:** Officers shall not intentionally use deadly force to effect the arrest of a misdemeanor suspect.

**J.** **Shooting at Vehicles:** Officers **SHALL NOT** fire at or from moving vehicles except in self defense, the defense of a third party, or to prevent the escape of a driver who is or would pose a threat to society.

**K.** **Notification and Reports Required**

1. Any time a police officer discharges his firearm, on or off duty, except at an approved range, a verbal report setting forth the full circumstances shall be made **immediately** to the on-duty supervisor, with a written report to follow. The following personnel shall be notified immediately by the on-duty supervisor when any shooting incident results in injury or death.

    a. Assistant Chief of Police
    b. Detective Supervisor
    c. Chief of Police

2. The detective supervisor or other supervisor designated by the Chief of Police shall conduct a thorough investigation of any incident involving an officer-involved shooting. A full written report shall be submitted to the Chief of Police within 48 hours of the incident. If the investigation is not complete, a preliminary report shall be submitted.

## L.   Qualifications

Officers of this Department shall qualify semi-annually with all firearms they are authorized to use. Any officer who is issued a shotgun shall also fire the shotgun during firearms training for familiarization. Only officers demonstrating an overall proficiency with their authorized firearms shall be allowed to carry such weapons. Officers carrying any weapon other than Department issued must have written permission from the Chief of Police. Rifles are authorized upon successful completion of a rifle qualification course, instructed by a certified rifle instructor.

In order to qualify, each officer must shoot three qualifying courses and obtain an average score of 75% or greater. The courses shall be as follows:

| Yards | - | Rounds | - | Seconds |
|-------|---|--------|---|---------|
| 7     | - | 6/6    | - | 15      |
| 15    | - | 6/6    | - | 20      |
| 25    | - | 6      | - | 20      |
| 15    | - | 6      | - | 10      |
| 7     | - | 6/6    | - | 15      |
| 7     | - | 1/1    | - | 6       |

## M.   Supervisor Responsibility

All supervisors shall ensure that each of their subordinate employees receives a copy of this directive and is thoroughly instructed in its content. Additionally, the range master shall instruct each officer on the contents of this directive at each weapons qualification training.

N.    **TAZER POLICY**

**1. General Policy:** It is the policy of the Grenada Police Department to use only the level of force reasonably necessary to control or otherwise subdue individuals. The purpose of this policy is to set standards and control measures for deployment techniques, carrying techniques, and after deployment actions.

**2. Definitions:** M26/x26 Advanced Taser: The M26 and X26 Taser is a hand held battery operated unity designed to immobilize a suspect by means of electrical current.

**3. Deployment:** Deployment of the TASER will be evaluated using the criteria set in this directive and within the framework of the Grenada Police Departments Use of Force Matrix. Officers must assess the effectiveness of each application and determine whether further applications were warranted or a different tactic should have been employed. The decision to use the TASER will be dependant upon the actions of the subject, the threat facing the officer, and the totality of the circumstances.

**4. Guidelines:**

a.    An approved TASER device may only be utilized by officers that have successfully completed the department approved training in its use taught by an electronic device certified instructor.

b.    Uniformed officers will carry the TASER in a department issued holster. The holster will be carried on the duty belt opposite the duty firearm, cross draw position is optional. Non-Uniformed officers will carry the TASER in an approved holster on the side opposite the duty firearm or in a position that is dictated by the tactical situation.

c.    The TASER shall be carried fully armed with the safety on in preparation for immediate use.

d.    Officers approved to use the TASER shall be issued a minimum of one spare cartridge as a back up in case of cartridge failure, the need for reapplication, or in case the first cartridge's leads break during engagement. The spare cartridges shall be stored and carried in a manner consistent with training.

e.    Only agency approved battery power sources shall be used in the TASER.

f.    The TASER should be inspected prior to each tour of duty.

g. An approved Grenada Police Department TASER exposure report shall be completed along with other department mandated use of force forms anytime a TASER is used, except in training.

h. All unintentional discharges shall be reported to a supervisor for evaluation.

i. In preparation of firing, when reasonable, the TASER shall be pointed in a safe direction, taken off safe and then aimed. Center mass of the subjects back it the primary aiming point, and center mass of the chest or legs are secondary targets.

j. Prior to use, if practical, a warning to the subject of the officer's intentions to use the TASER should be given.

k. Taser probes may not be intentionally fired at the face, head, neck, or groin; unless the use of deadly force would be justified.

l. Jail/Detention personnel shall be notified at the time of booking that the subject has been exposed to the TASER.

m. Officers shall evaluate all subjects against whom the TASER has been deployed, and shall provide emergency medical treatment if necessary. If the TASER probes have penetrated the skin in a sensitive area (head, neck, groin, or breast of a female), or if officers have difficulty in removing the probes (i.e. probe/barb separation), Emergency Medical Personnel should be called to the scene to remove the probes or the subject will be conveyed to an emergency room for removal. If the probes are embedded in non-sensitive area, a trained officer may remove the probes on scene.

n. After the TASER is deployed, probes should be removed from the suspect as soon as he/she is handcuffed.

o. When the TASER has been operationally, the officer's supervisor will collect the air cartridge, wire leads, darts, and as many of the AFID Tags as possible for evidence logging and process as such.

5. **Prohibited Actions:**

    A. The following actions are prohibited uses of the
       TASER, unless exigent circumstances are present.

      1. Against handcuffed subjects
      2. At or from a moving vehicle
      3. At subjects known to the officer to be pregnant
      4. At subjects who are known to be physically disabled and/ or
         suffering from a debilitating illness
      5. Against juveniles
      6. Against animals

    B. The TASER shall not be used under the following circumstances:

      1. For coercion or intimidation
      2. To escort or prod subject
      3. To awaken unconscious or intoxicated subjects
      4. When the officer knows or suspects the subject with flammable
         liquids or is in a flammable atmosphere.
      5. When the subject is in a position where a fall may cause substantial
         injury or death.

6. **Supervisor Actions:**

    A. Supervisors of officer that deployed TASER shall respond to scene
      of deployment and be responsible for collecting all evidence from
      deployment and be responsible for collecting all evidence from
      deployment (i.e. spent air cartridge(s), darts, and AFID tags).

    B. Download the data record of the TASER prior to the end of the shift of
      which a reported use of the TASER occurred and save the data to the
      appropriate file.

    C. Download the data record of each TASER under their command
      annually regardless of reported use.

    D. Review Grenada Police Department TASER Exposure Report, if
      correct, place in Assistant Chief of Police box for review and record.

## Less Lethal Impact Devices

### Purpose

To establish guidelines for the deployment of less lethal impact projectiles (bean bags, etc.)

### Policy

Sworn officers of the Grenada Police Department may deploy lethal projectiles (such as bean bags) as an alternative to lethal force whereby combative, non-compliant, violent, emotionally disturbed, or armed subjects may be brought under control without permanent injury to themselves or officers involved in the deployment of the devices. These devices may also be used in civil disturbances/riots.

### Definition

Less Lethal Projectiles - Commonly referred to as bean bags or rubber bullets. They are designed to inflict discomfort to a combative subject so that they are temporarily incapacitated without serious permanent injury or death so they can be taken into custody. Primary types are 12 gauge and 37/40 mm.

### Order

(A) Less lethal projectiles may only be deployed from a weapon suitable for firing such projectiles.

(B) Only officers who have successfully completed a certified training program may be allowed to deploy such munitions.

(C) When a situation justifies the use of less lethal munitions, officers should determine which type of munition would be the most effective to render the situation under control with minimal injury to the suspect.

(D) Only Department issued less lethal projectiles shall be authorized for deployment.

(E) When preparing to deploy less lethal projectiles, the officer should keep in mind the primary and second target areas.

    1. Primary Target Areas - These are major muscle areas of mass such as the legs, arms, buttocks, hips and thighs. These areas offer a low probability of causing serious injury.

2. Secondary Impact Areas - These are areas of the human body considered to be the center of mass areas, such as the abdomen and chest areas. These areas should be considered for impact only when as escalation of force and immediate incapacitation is necessary and appropriate. An increase in the potential for death or serious physical injury must be recognized.

3. Deadly Force Impact Areas - These areas of the body, when struck, may cause serious injury or death. These areas include the head, neck, throat, and groin.

(F) Once the determination is made to deploy less lethal projectiles, permission must be obtained from the supervisor in charge.

(G) Upon deployment of less lethal projectiles and the suspect has been placed in custody, it is imperative the prompt medical treatment be administered to the suspect and photographs taken of the injured impact areas.

(H) Once a situation has been resolved, a detailed incident report and a Use of Force report shall be completed as soon as possible.

(I) It shall be the responsibility of each officer who utilizes less lethal munitions to ensure the weapon is not at any time loaded with both lethal and less lethal rounds.

(J) When deploying less lethal projectiles, common sense should be used as to the condition of the suspect and the effect the round could possibly have. Subjects who are elderly, pregnant, physically disabled or extremely young should not generally be considered as a target unless extreme circumstances prevail the use.

(K) Any time an officer is preparing to deploy less lethal munitions a cover officer shall be present at all times.

(L) Prior to deploying less lethal munitions, the officer shall notify all officers in the area that less lethal impact rounds are about to be deployed so that the shot will not be a surprise to them.

(M) A use of force report will be completed any time less lethal impact devices are used. (See example use of force form following this chapter).

## Patrol Rifles

### Purpose

To establish guidelines in a lethal force situation whereby a patrol rifle may be deployed in order to eliminate a threat of the officer's and/or public's safety.

### Policy

Sworn officers of the Grenada Police Department (full time and part time) may be allowed to carry a personal or City issued patrol rifle while in the performance of their duties.

### Order

(1)  Patrol rifles will not be considered as a primary shoulder weapon.

(2)  All Patrol rifles will be carried in a carrying case and shall be stored in a secure area of a patrol unit.  The patrol rifle will be stored without a round in the chamber and with the safety on.

(3)  Each officer who wishes to carry a patrol rifle will have completed a qualifying course and achieved a passing score.  This course will be administered by a certified patrol rifle instructor.

(4)  Each officer must re-qualify semi-annually with their patrol rifles.

(5)  Patrol rifles must be a military style or law enforcement approved version such as an AR-15, M16, Mini 14, etc. and have the written approval of the Chief of Police.

(6)  The caliber of these rifles will be .223 or .308.

(7)  Only ammunition authorized by the Chief of Police may be carried in patrol rifles.

(8)  Each patrol rifle must have the manufacturer's fixed sights.  Telescopic sights, red dots, etc. are authorized as long as the fixed sights are still visible during deployment.

(9)  Patrol rifles will remain in a secure area of a patrol unit unless a situation occurs whereby the officer's safety is compromised or with a supervisor's permission to deploy.

# USE OF FORCE REPORT

| | 2) TIME | 3) LOCATION | 4) COMPLAINT NUMBER |
|---|---|---|---|

| UBJECT'S NAME | 6) DATE OF BIRTH | 7) SEX |
|---|---|---|

| JECT'S ADDRESS (NUMBER, STREET, CITY, STATE, ZIP) | 9) HOME PHONE |
|---|---|

**REASON FOR USE OF FORCE**

- ☐ NECESSARY TO AFFECT AN ARREST
- ☐ NECESSARY TO DEFEND ANOTHER OFFICER
- ☐ NECESSARY TO DEFEND ANOTHER PERSON
- ☐ TO PREVENT A VIOLENT, FORCIBLE FELONY
- ☐ TO RESTRAIN FOR SUBJECT'S SAFETY
- ☐ OTHER _____

| WAS THE SUBJECT INJURED? ☐ YES ☐ NO | 12) CONVEYANCE | 13) DESTINATION | 14) ATTENDING PHYSICIAN |
|---|---|---|---|

| UBJECTS THAT RESISTED | 16) # OFFICERS PRESENT | 17) SUPERVISOR NOTIFIED/ TIME | 18) NOTIFIED SUPERVISOR'S SIGNATURE |
|---|---|---|---|

**AT THE TIME OF ARREST, THE SUBJECT WAS:**

- ☐ UNDER INFLUENCE OF ALCOHOL/DRUGS
- ☐ SUSPECTED UNDER INFLUENCE OF ALCOHOL/DRUGS
- ☐ MENTALLY IMPAIRED
- ☐ OTHER _____

**DESCRIBE SUBJECT'S INJURIES**

**LEVELS OF RESISTANCE**

PSYCHOLOGICAL INTIMIDATION: EXPLAIN - _____
(non-verbal cues indicating subject's attitude or physical readiness)

VERBAL NON-COMPLIANCE: EXPLAIN - _____
(verbal responses or threats of non-compliance to officer's directions)

PASSIVE RESISTANCE: EXPLAIN - _____
(dead weight or clinging to objects in an attempt to prevent the officer from gaining control)

ESCAPE RESISTANCE: EXPLAIN - _____
(pushing, pulling, or running away from the officer to avoid control; never attempting to harm the officer)

ACTIVE AGGRESSION: EXPLAIN - _____
(physical actions of assault)

AGGRAVATED ACTIVE AGGRESSION: EXPLAIN - _____
(assaults with weapons)

**LEVELS OF CONTROL (OFFICER PRESENCE IS IMPLIED)**

VERBAL DIRECTION: EXPLAIN - _____
(commands of direction or of arrest)

EMPTY HAND CONTROL: EXPLAIN - _____

| SOFT | HARD (See Charts on Reverse Side) | |
|---|---|---|
| ☐ Muscling | ☐ Hand Strikes | Body Part: _____ |
| ☐ Joint Locks | ☐ Leg Strikes | Body Part: _____ |
| ☐ Pressure Points | ☐ V.N.R. | |

INTERMEDIATE WEAPONS:
(chemical etc., See Charts on Reverse Side) _____

IMPACT WEAPONS:
(primary or alternative, See Charts on Reverse Side) _____

LETHAL FORCE: Specify - _____
(firearms or other lethal force employed)

| PORTING OFFICER'S SIGNATURE: | 24) Badge # | 25) REGULAR SUPERVISOR'S SIGNATURE: | 26) Badge # |
|---|---|---|---|

EXHIBIT B - MBI REPORT PART 2      TILLEY 224

# Detailed Report - Call #18112154

## Common Place Information

| Common Place | | Cooridnates (Lat, Long) | | | | |
|---|---|---|---|---|---|---|
| McCAIN, NICHELLE | | 0, 0 | | | | |

**Notes**
Phone 662227-2289

## Call Detail

| Call Date | Address | | Apt | Zip | Mile Post |
|---|---|---|---|---|---|
| 11/29/2018 05:39:39 | 50 W GOVAN ST | | | | |

| City, State (County) | SubGrid - Grid (District) | Call Disposition |
|---|---|---|
| GRENADA, MS (GRENADA) | UNKNOWN (CITY OF GRENADA) | OPEN |

| Call Type | Priority | How Reported | Call Taker | Domestic Vio |
|---|---|---|---|---|
| DISTURBANCE | 1 | 911 WIRELESS 1 | CMURPHREE | |

| Code Red | Lake |
|---|---|
| | |

## Involved Information

| Name | Type | DOB | Phone | OLN |
|---|---|---|---|---|
| | | | (662) 294-1440 | |

| Address | Apt | City | State |
|---|---|---|---|
| | | | |

## Case Numbers

18112154
MERRIMAN, HAL (GRENADA POLICE DEPT)

## Units Dispatched to Call    ( ⅍ = Primary Unit)

| Unit | Activity | Started | Ended | Time | Location |
|---|---|---|---|---|---|
| **G12** | | **11/29/2018 05:46:57** | **11/29/2018 06:21:04** | **34.12** | |
| | DISPATCHED | 11/29/2018 05:46:57 | 11/29/2018 05:46:58 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:58 | 11/29/2018 05:46:58 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:58 | 11/29/2018 06:21:04 | 34.10 | |
| | CLEARED | 11/29/2018 06:21:04 | 11/29/2018 06:21:04 | 0.00 | |
| **G21** | | **11/29/2018 08:49:20** | | **73.32** | |
| | DISPATCHED | 11/29/2018 08:49:20 | 11/29/2018 08:49:22 | 0.03 | |
| | ENROUTE | 11/29/2018 08:49:22 | 11/29/2018 08:49:23 | 0.02 | |
| | ARRIVED | 11/29/2018 08:49:23 | | 73.27 | |
| **G29** | | **11/29/2018 05:40:12** | **11/29/2018 06:20:50** | **40.63** | |
| | DISPATCHED | 11/29/2018 05:40:12 | 11/29/2018 05:40:27 | 0.25 | |
| | ENROUTE | 11/29/2018 05:40:27 | 11/29/2018 05:43:22 | 2.92 | |
| | ARRIVED | 11/29/2018 05:43:22 | 11/29/2018 06:20:50 | 37.47 | |
| | CLEARED | 11/29/2018 06:20:50 | 11/29/2018 06:20:50 | 0.00 | |
| **G35** | | **11/29/2018 05:46:53** | **11/29/2018 06:20:56** | **34.05** | |
| | DISPATCHED | 11/29/2018 05:46:53 | 11/29/2018 05:46:54 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:54 | 11/29/2018 05:46:54 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:54 | 11/29/2018 06:20:56 | 34.03 | |
| | CLEARED | 11/29/2018 06:20:56 | 11/29/2018 06:20:56 | 0.00 | |
| **G43** | | **11/29/2018 09:32:38** | | **30.02** | |
| | DISPATCHED | 11/29/2018 09:32:38 | 11/29/2018 09:32:39 | 0.02 | |
| | ENROUTE | 11/29/2018 09:32:39 | 11/29/2018 09:34:36 | 1.95 | |
| | ARRIVED | 11/29/2018 09:34:36 | | 28.05 | |

EFORCE REPORTS

# Detailed Report - Call #18112154 (continued)

| Unit | Activity | Started | Ended | Time | Location |
|------|----------|---------|-------|------|----------|
| G | | **11/29/2018 05:46:54** | **11/29/2018 06:21:02** | **34.13** | |
| | DISPATCHED | 11/29/2018 05:46:54 | 11/29/2018 05:46:55 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:55 | 11/29/2018 05:46:55 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:55 | 11/29/2018 06:21:02 | 34.12 | |
| | CLEARED | 11/29/2018 06:21:02 | 11/29/2018 06:21:02 | 0.00 | |
| G48 | | **11/29/2018 09:18:22** | | **44.28** | |
| | DISPATCHED | 11/29/2018 09:18:22 | 11/29/2018 09:18:26 | 0.07 | |
| | ENROUTE | 11/29/2018 09:18:26 | 11/29/2018 09:33:34 | 15.13 | |
| | ARRIVED | 11/29/2018 09:33:34 | | 29.08 | |
| G6 | | **11/29/2018 05:41:25** | **11/29/2018 08:40:53** | **179.47** | |
| | DISPATCHED | 11/29/2018 05:41:25 | 11/29/2018 05:41:25 | 0.00 | |
| | ENROUTE | 11/29/2018 05:41:25 | 11/29/2018 05:43:22 | 1.95 | |
| | ARRIVED | 11/29/2018 05:43:22 | 11/29/2018 06:20:53 | 37.52 | |
| | CLEARED | 11/29/2018 06:20:53 | 11/29/2018 06:20:53 | 0.00 | |
| | DISPATCHED | 11/29/2018 08:20:10 | 11/29/2018 08:20:11 | 0.02 | |
| | ENROUTE | 11/29/2018 08:20:11 | 11/29/2018 08:20:11 | 0.00 | |
| | ARRIVED | 11/29/2018 08:20:11 | 11/29/2018 08:40:53 | 20.70 | |
| | CLEARED | 11/29/2018 08:40:53 | 11/29/2018 08:40:53 | 0.00 | |
| I2 | | **11/29/2018 09:50:08** | | **12.52** | |
| | DISPATCHED | 11/29/2018 09:50:08 | 11/29/2018 09:50:09 | 0.02 | |
| | ENROUTE | 11/29/2018 09:50:09 | 11/29/2018 09:59:53 | 9.73 | |
| | ARRIVED | 11/29/2018 09:59:53 | | 2.77 | |
| I4 | | **11/29/2018 09:06:48** | | **55.85** | |
| | DISPATCHED | 11/29/2018 09:06:48 | 11/29/2018 09:06:48 | 0.00 | |
| | ENROUTE | 11/29/2018 09:06:48 | 11/29/2018 09:06:49 | 0.02 | |
| | ARRIVED | 11/29/2018 09:06:49 | | 55.83 | |
| I8 | | **11/29/2018 08:49:21** | | **73.30** | |
| | DISPATCHED | 11/29/2018 08:49:21 | 11/29/2018 08:49:23 | 0.03 | |
| | ENROUTE | 11/29/2018 08:49:23 | 11/29/2018 08:49:23 | 0.00 | |
| | ARRIVED | 11/29/2018 08:49:24 | | 73.25 | |
| UNIT 708 | | **11/29/2018 05:52:12** | **11/29/2018 06:22:25** | **30.22** | |
| | DISPATCHED | 11/29/2018 05:52:12 | 11/29/2018 05:52:13 | 0.02 | |
| | ENROUTE | 11/29/2018 05:52:13 | 11/29/2018 06:00:04 | 7.85 | |
| | ARRIVED | 11/29/2018 06:00:04 | 11/29/2018 06:22:25 | 22.35 | |
| | CLEARED | 11/29/2018 06:22:25 | 11/29/2018 06:22:25 | 0.00 | |

## Call Notes

**11/29/2018 05:40:34 (CMURPHREE)**
SOMEONE BEHIND HER HOUSE SCREAMING FOR HELP

**11/29/2018 05:50:55 (CMURPHREE)**
BEHIND 81 BLEDSOE

**11/29/2018 05:50:59 (CMURPHREE)**
ROBERT LOGGINS

**11/29/2018 05:51:16 (CMURPHREE)**
NE___S ROBERT LOGGINS

**11/29/2018 05:51:32 (CSHEEDY)**
10-52 NEEDED



EXHIBIT B - MBI REPORT PART 2        TILLEY 226

# Detailed Report - Call #18112154 (continued)

## Call Notes (continued)

**11/29/2018 06:08:02 (CMURPHREE)**
44 10-15 ENR TO JAIL

**11/29/2018 06:09:33 (CMURPHREE)**
44--10-15 OOC JAIL

**11/29/2018 06:10:08 (CMURPHREE)**
35 AND 29 OOC JAIL

**11/29/2018 08:29:56 (KSWINDOLL)**
REF CASE # 2155

**11/29/2018 09:07:00 (KSWINDOLL)**
I4 10-16 FROM THIS LOCATION TO 61

**11/29/2018 09:10:30 (KSWINDOLL)**
I4 10-16 OOC 61

**11/29/2018 09:18:36 (KSWINDOLL)**
NEED ANIMAL CONTROL OUT HERE IN REF TO A K9

**11/29/2018 09:33:12 (KSWINDOLL)**
UNITS ARE OOC AT 60 GOVAN ST

# Detailed Report - Call #18112154

## Common Place Information

| Common Place | Coordinates (Lat, Long) |
|---|---|
| MCCAIN, NICHELLE | 0, 0 |

Notes
Phone 662227-2289

## Call Detail

| Call Date | Address | Apt | Zip | Mile Post |
|---|---|---|---|---|
| 11/29/2018 05:39:39 | 50 W GOVAN ST | | | |

| City, State (County) | SubGrid - Grid (District) | Call Disposition |
|---|---|---|
| GRENADA, MS (GRENADA) | UNKNOWN (CITY OF GRENADA) | OPEN |

| Call Type | Priority | How Reported | Call Taker | Domestic Vio |
|---|---|---|---|---|
| DISTURBANCE | 1 | 911 WIRELESS 1 | CMURPHREE | |

| Code Red | Lake |
|---|---|

## Involved Information

| Name | Type | DOB | Phone | OLN |
|---|---|---|---|---|
| | | | (662) 294-1440 | |

| Address | Apt | City | State |
|---|---|---|---|
| | | | |

## Case Numbers

18112154
MERRIMAN, HAL (GRENADA POLICE DEPT)

## Unit Dispatched to Call ( = Primary Unit)

| Unit | Activity | Started | Ended | Time | Location |
|---|---|---|---|---|---|
| 612 | | **11/29/2018 05:46:57** | **11/29/2018 06:21:04** | **34.12** | |
| | DISPATCHED | 11/29/2018 05:46:57 | 11/29/2018 05:46:58 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:58 | 11/29/2018 05:46:58 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:58 | 11/29/2018 06:21:04 | 34.10 | |
| | CLEARED | 11/29/2018 06:21:04 | 11/29/2018 06:21:04 | 0.00 | |
| 621 | | **11/29/2018 08:49:20** | | **41.02** | |
| | DISPATCHED | 11/29/2018 08:49:20 | 11/29/2018 08:49:22 | 0.03 | |
| | ENROUTE | 11/29/2018 08:49:22 | 11/29/2018 08:49:23 | 0.02 | |
| | ARRIVED | 11/29/2018 08:49:23 | | 40.97 | |
| G29 | | **11/29/2018 05:40:12** | **11/29/2018 06:20:50** | **40.63** | |
| | DISPATCHED | 11/29/2018 05:40:12 | 11/29/2018 05:40:27 | 0.25 | |
| | ENROUTE | 11/29/2018 05:40:27 | 11/29/2018 05:43:22 | 2.92 | |
| | ARRIVED | 11/29/2018 05:43:22 | 11/29/2018 06:20:50 | 37.47 | |
| | CLEARED | 11/29/2018 06:20:50 | 11/29/2018 06:20:50 | 0.00 | |
| 635 | | **11/29/2018 05:46:53** | **11/29/2018 06:20:56** | **34.05** | |
| | DISPATCHED | 11/29/2018 05:46:53 | 11/29/2018 05:46:54 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:54 | 11/29/2018 05:46:54 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:54 | 11/29/2018 06:20:56 | 34.03 | |
| | CLEARED | 11/29/2018 06:20:56 | 11/29/2018 06:20:56 | 0.00 | |
| 644 | | **11/29/2018 05:46:54** | **11/29/2018 06:21:02** | **34.13** | |
| | DISPATCHED | 11/29/2018 05:46:54 | 11/29/2018 05:46:55 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:55 | 11/29/2018 05:46:55 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:55 | 11/29/2018 06:21:02 | 34.12 | |

EXHIBIT B - MBI REPORT PART 2     TILLEY 228

# Detailed Report - Call #18112154 (continued)

| Unit | Activity | Started | Ended | Time | Location |
|------|----------|---------|-------|------|----------|
| 64 (continued) | | | | | |
| | CLEARED | 11/29/2018 06:21:02 | 11/29/2018 06:21:02 | 0.00 | |
| 648 | | **11/29/2018 09:18:22** | | **11.98** | |
| | DISPATCHED | 11/29/2018 09:18:22 | 11/29/2018 09:18:26 | 0.07 | |
| | ENROUTE | 11/29/2018 09:18:26 | | 11.92 | |
| G6 | | **11/29/2018 05:41:25** | **11/29/2018 08:40:53** | **179.47** | |
| | DISPATCHED | 11/29/2018 05:41:25 | 11/29/2018 05:41:25 | 0.00 | |
| | ENROUTE | 11/29/2018 05:41:25 | 11/29/2018 05:43:22 | 1.95 | |
| | ARRIVED | 11/29/2018 05:43:22 | 11/29/2018 06:20:53 | 37.52 | |
| | CLEARED | 11/29/2018 06:20:53 | 11/29/2018 06:20:53 | 0.00 | |
| | DISPATCHED | 11/29/2018 08:20:10 | 11/29/2018 08:20:11 | 0.02 | |
| | ENROUTE | 11/29/2018 08:20:11 | 11/29/2018 08:20:11 | 0.00 | |
| | ARRIVED | 11/29/2018 08:20:11 | 11/29/2018 08:40:53 | 20.70 | |
| | CLEARED | 11/29/2018 08:40:53 | 11/29/2018 08:40:53 | 0.00 | |
| 4 | | **11/29/2018 09:06:48** | | **23.55** | |
| | DISPATCHED | 11/29/2018 09:06:48 | 11/29/2018 09:06:48 | 0.00 | |
| | ENROUTE | 11/29/2018 09:06:48 | 11/29/2018 09:06:49 | 0.02 | |
| | ARRIVED | 11/29/2018 09:06:49 | | 23.53 | |
| 8 | | **11/29/2018 08:49:21** | | **41.00** | |
| | DISPATCHED | 11/29/2018 08:49:21 | 11/29/2018 08:49:23 | 0.03 | |
| | ENROUTE | 11/29/2018 08:49:23 | 11/29/2018 08:49:23 | 0.02 | |
| | ARRIVED | 11/29/2018 08:49:24 | | 40.95 | |
| INI 08 | | **11/29/2018 05:52:12** | **11/29/2018 06:22:25** | **30.22** | |
| | DISPATCHED | 11/29/2018 05:52:12 | 11/29/2018 05:52:13 | 0.02 | |
| | ENROUTE | 11/29/2018 05:52:13 | 11/29/2018 06:00:04 | 7.85 | |
| | ARRIVED | 11/29/2018 06:00:04 | 11/29/2018 06:22:25 | 22.35 | |
| | CLEARED | 11/29/2018 06:22:25 | 11/29/2018 06:22:25 | 0.00 | |

## Call Notes

11/29/2018 05:40:34 (CMURPHREE)
SOMEONE BEHIND HER HOUSE SCREAMING FOR HELP

11/29/2018 05:50:55 (CMURPHREE)
BEHIND 81 BLEDSOE

11/29/2018 05:50:59 (CMURPHREE)
ROBERT LOGGINS

11/29/2018 05:51:16 (CMURPHREE)
NEG 29S ROBERT LOGGINS

11/29/2018 05:51:32 (CSHEEDY)
10-52 NEEDED

11/29/2018 06:08:02 (CMURPHREE)
64-10-15 ENR TO JAIL

11/29/2018 06:09:33 (CMURPHREE)
64--10-15 OOC JAIL

11/29/2018 06:10:08 (CMURPHREE)
65 AND 29 OOC JAIL

11/29/2018 08:29:56 (KSWINDOLL)
REF CASE # 2155

# Detailed Report - Call #18112154 (continued)

## Call Notes (continued)

**11/29/2018 09:07:00 (KSWINDOLL)**
[4 10-16 FROM THIS LOCATION TO 61

**11/29/2018 09:10:30 (KSWINDOLL)**
[4 10-16 OOC 61

**11/29/2018 09:18:36 (KSWINDOLL)**
NEED ANIMAL CONTROL OUT HERE IN REF TO A K9

# Detailed Report - Call # 18112154

## Common Place Information

| Common Place | Coordinates (Lat, Long) |
|---|---|
| MULLEN, NICHELLE | 0, 0 |

**Notes**
Phone 662227-2289

## Call Detail

| Call Date | Address | | Apt | Zip | Mile Post |
|---|---|---|---|---|---|
| 11/29/2018 05:39:39 | 50 W GOVAN ST | | | | |

| City, State (County) | SubGrid - Grid (District) | Call Disposition |
|---|---|---|
| GRENADA, MS (GRENADA) | UNKNOWN (CITY OF GRENADA) | OPEN |

| Call Type | Priority | How Reported | Call Taker | Domestic Vio |
|---|---|---|---|---|
| DISTURBANCE | 1 | 911 WIRELESS 1 | CMURPHREE | |

| Code Red | Lake |
|---|---|

## Involved Information

| Name | Type | DOB | Phone (662) 294-1440 | OLN |
|---|---|---|---|---|
| Address | Apt | City | State | |

## Case Numbers

18112154
MERRIMAN, HAL (GRENADA POLICE DEPT)

## Units Dispatched to Call ( = Primary Unit)

| Un | Activity | Started | Ended | Time | Location |
|---|---|---|---|---|---|
| G12 | | **11/29/2018 05:46:57** | **11/29/2018 06:21:04** | **34.12** | |
| | DISPATCHED | 11/29/2018 05:46:57 | 11/29/2018 05:46:58 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:58 | 11/29/2018 05:46:58 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:58 | 11/29/2018 06:21:04 | 34.10 | |
| | CLEARED | 11/29/2018 06:21:04 | 11/29/2018 06:21:04 | 0.00 | |
| G21 | | **11/29/2018 08:49:20** | | **73.32** | |
| | DISPATCHED | 11/29/2018 08:49:20 | 11/29/2018 08:49:22 | 0.03 | |
| | ENROUTE | 11/29/2018 08:49:22 | 11/29/2018 08:49:23 | 0.02 | |
| | ARRIVED | 11/29/2018 08:49:23 | | 73.27 | |
| G29 | | **11/29/2018 05:40:12** | **11/29/2018 06:20:50** | **40.63** | |
| | DISPATCHED | 11/29/2018 05:40:12 | 11/29/2018 05:40:27 | 0.25 | |
| | ENROUTE | 11/29/2018 05:40:27 | 11/29/2018 05:43:22 | 2.92 | |
| | ARRIVED | 11/29/2018 05:43:22 | 11/29/2018 06:20:50 | 37.47 | |
| | CLEARED | 11/29/2018 06:20:50 | 11/29/2018 06:20:50 | 0.00 | |
| G35 | | **11/29/2018 05:46:53** | **11/29/2018 06:20:56** | **34.05** | |
| | DISPATCHED | 11/29/2018 05:46:53 | 11/29/2018 05:46:54 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:54 | 11/29/2018 05:46:54 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:54 | 11/29/2018 06:20:56 | 34.03 | |
| | CLEARED | 11/29/2018 06:20:56 | 11/29/2018 06:20:56 | 0.00 | |
| G43 | | **11/29/2018 09:32:38** | | **30.02** | |
| | DISPATCHED | 11/29/2018 09:32:38 | 11/29/2018 09:32:39 | 0.02 | |
| | ENROUTE | 11/29/2018 09:32:39 | 11/29/2018 09:34:36 | 1.95 | |
| | ARRIVED | 11/29/2018 09:34:36 | | 28.05 | |

EFORCE

EXHIBIT B - MBI REPORT PART 2               TILLEY 231

| Unit | Activity | Started | Ended | Time | Location |
|------|----------|---------|-------|------|----------|
| G4? | | **11/29/2018 05:46:54** | **11/29/2018 06:21:02** | **34.13** | |
| | DISPATCHED | 11/29/2018 05:46:54 | 11/29/2018 05:46:55 | 0.02 | |
| | ENROUTE | 11/29/2018 05:46:55 | 11/29/2018 05:46:55 | 0.00 | |
| | ARRIVED | 11/29/2018 05:46:55 | 11/29/2018 06:21:02 | 34.12 | |
| | CLEARED | 11/29/2018 06:21:02 | 11/29/2018 06:21:02 | 0.00 | |
| G48 | | **11/29/2018 09:18:22** | | **44.28** | |
| | DISPATCHED | 11/29/2018 09:18:22 | 11/29/2018 09:18:26 | 0.07 | |
| | ENROUTE | 11/29/2018 09:18:26 | 11/29/2018 09:33:34 | 15.13 | |
| | ARRIVED | 11/29/2018 09:33:34 | | 29.08 | |
| G6 | | **11/29/2018 05:41:25** | **11/29/2018 08:40:53** | **179.47** | |
| | DISPATCHED | 11/29/2018 05:41:25 | 11/29/2018 05:41:25 | 0.00 | |
| | ENROUTE | 11/29/2018 05:41:25 | 11/29/2018 05:43:22 | 1.95 | |
| | ARRIVED | 11/29/2018 05:43:22 | 11/29/2018 06:20:53 | 37.52 | |
| | CLEARED | 11/29/2018 06:20:53 | 11/29/2018 06:20:53 | 0.00 | |
| | DISPATCHED | 11/29/2018 08:20:10 | 11/29/2018 08:20:11 | 0.02 | |
| | ENROUTE | 11/29/2018 08:20:11 | 11/29/2018 08:20:11 | 0.00 | |
| | ARRIVED | 11/29/2018 08:20:11 | 11/29/2018 08:40:53 | 20.70 | |
| | CLEARED | 11/29/2018 08:40:53 | 11/29/2018 08:40:53 | 0.00 | |
| I2 | | **11/29/2018 09:50:08** | | **12.52** | |
| | DISPATCHED | 11/29/2018 09:50:08 | 11/29/2018 09:50:09 | 0.02 | |
| | ENROUTE | 11/29/2018 09:50:09 | 11/29/2018 09:59:53 | 9.73 | |
| | ARRIVED | 11/29/2018 09:59:53 | | 2.77 | |
| I4 | | **11/29/2018 09:06:48** | | **55.85** | |
| | DISPATCHED | 11/29/2018 09:06:48 | 11/29/2018 09:06:48 | 0.00 | |
| | ENROUTE | 11/29/2018 09:06:48 | 11/29/2018 09:06:49 | 0.02 | |
| | ARRIVED | 11/29/2018 09:06:49 | | 55.83 | |
| I8 | | **11/29/2018 08:49:21** | | **73.30** | |
| | DISPATCHED | 11/29/2018 08:49:21 | 11/29/2018 08:49:23 | 0.03 | |
| | ENROUTE | 11/29/2018 08:49:23 | 11/29/2018 08:49:23 | 0.00 | |
| | ARRIVED | 11/29/2018 08:49:24 | | 73.25 | |
| UNIT 708 | | **11/29/2018 05:52:12** | **11/29/2018 06:22:25** | **30.22** | |
| | DISPATCHED | 11/29/2018 05:52:12 | 11/29/2018 05:52:13 | 0.02 | |
| | ENROUTE | 11/29/2018 05:52:13 | 11/29/2018 06:00:04 | 7.85 | |
| | ARRIVED | 11/29/2018 06:00:04 | 11/29/2018 06:22:25 | 22.35 | |
| | CLEARED | 11/29/2018 06:22:25 | 11/29/2018 06:22:25 | 0.00 | |

## Call Notes

**11/29/2018 05:40:34 (CMURPHREE)**
SOMEONE BEHIND HER HOUSE SCREAMING FOR HELP

**11/29/2018 05:50:55 (CMURPHREE)**
BEHIND 81 BLEDSOE

**11/29/2018 05:50:59 (CMURPHREE)**
ROBERT LOGGINS

**11/29/2018 05:51:16 (CMURPHREE)**
NF   9S ROBERT LOGGINS

**11/29/2018 05:51:32 (CSHEEDY)**
10-52 NEEDED


EXHIBIT B - MBI REPORT PART 2          TILLEY 232

## Call Notes (continued)

**11/29/2018 06:08:02 (CMURPHREE)**
44--10-15 ENR TO JAIL

**11/29/2018 06:09:33 (CMURPHREE)**
44--10-15 OOC JAIL

**11/29/2018 06:10:08 (CMURPHREE)**
35 AND 29 OOC JAIL

**11/29/2018 08:29:56 (KSWINDOLL)**
REF CASE # 2155

**11/29/2018 09:07:00 (KSWINDOLL)**
I4 10-16 FROM THIS LOCATION TO 61

**11/29/2018 09:10:30 (KSWINDOLL)**
I4 10-16 OOC 61

**11/29/2018 09:18:36 (KSWINDOLL)**
NEED ANIMAL CONTROL OUT HERE IN REF TO A K9

**11/29/2018 09:33:12 (KSWINDOLL)**
UNITS ARE OOC AT 60 GOVAN ST



EXHIBIT B - MBI REPORT PART 2

TILLEY 233

```
Reference: 05BS00006T
Msg ID   : 05BS00006T
Msg Key  : ACK
Date/Time: 20181126153551
Ent Agy  :
Requester:
User     :
ORI      : MS0220000
Source   : SWITCH
Dest     : MS0450102
Control  :
Summary  : YQ: MS0450102
```

1st

```
TXT: MESSAGE ROUTED
MRI 9666962 32106 69 AT 15:35:51  11/26/2018
MRI-9666962
```

EXHIBIT B - MBI REPORT PART 2          TILLEY 234

```
Reference: 05BS000073
Msg ID   : 05BS000073
Msg Key  : ACK
Date/Time: 20181126155001
Ent Agy  :
Requester:
User     :
ORI      : MS0220000
Source   : SWITCH
Dest     : MS0450102
Control  :
Summary  : YQ: MS0450102          2nd

TXT: MESSAGE ROUTED
MRI 9668949 32106 72 AT 15:50:01  11/26/2018
MRI-9668949
```

```
Reference: 05BS00007F
Msg ID   : 05BS00007F
Msg Key  : LG
Date/Time: 20181126161330
Ent Agy  :
Requester:
User     :
ORI      : MSNCIC000
Source   : NCIC
Dest     : 32106
Control  : MRI9672007
Summary  : LG: 20181126

TXT: 1L010087,MRI9672007
MS0220000
LOCATE NIC/G404571015

MRI 9672009 32106  111 AT 16:13:30 11/26/18
```

554 Corey from EOC called & stated that they were bringing in a "wild one".

558 Sergeant Johnson Officer Harvey PD Tilley Michael Jones Carried offender Robert Loggins into admissions

559 Officer Johnson went to the front desk to notify Mrs. Clark

603 Ms. Clark stated to PD that she was not keeping Robert Loggin

605 Ms. Clark Notified Deputy Warden Adams & informed him that we had Robert Loggins here & that she was not going to keep & She w going to call an ambulance Ms. Clark checked

609 his vital signs she was not breathing

611 Ms. Clark called UMMC of Grenada to Notify that Robert Loggin was not breathing

615 Ambulance & PD arrived

635 John Page

640 2nd ambulance arrives

642 Shankles

645 Ms. Clark called Sheriff

647 Ambulance leaves





**Posts**

**Tito Ontherise Ellis**
34 mins · 🌐 · · ·

GRENADA POLICE AND SHERIFF DEPARTMENT..
I AM SAYING THIS TO ALL U PUSSY!!! FUCK YALL!!!! I
AM OUT AND ABOUT.. YALL WANNA END MY
FUCKING NIGGA LIFE!!!! WELL YOU COWARD ASS
MFERS-- I AM WAITING ON YOU TO APPROACH ME..
I AM GONNA TAKE A LOT OF YOU BITCHES WITH
ME.. FROM NOW ON U GET BEHIND ME YOU BETTER
BE READY FOR IT... I PUT MY LIFE ON IT!!! U BETTER
NOT APPROACH MY VEHICLE NOMO AND YEAH I AM
OUT HERE WILDING TODAY HO!!!
GAY ASS FUCK BOYS!!!
I DON'T EVEN GIVE A FUCK TODAY!!!
KILT MY MFING FAMILY!!! WE NOT BLOOD BUT HE
WAS MY LIL BRUH AND FUCK YEAH I AM READY TO
RIDE FOR HIM... JUST LIKE REAL FAMILY!!
I AM TIRED OF YOU POLICE GETTING AWAY WITH
SHIT AND EVERY FUCKING TIME I TURN AROUND
YALL DICK SUCKAS WANNA HARASS US FOR
NOTHING.
YOU EVER SEEN A REAL MFING GANGSTA?!!
WELL PUSSY LETS DO IT...
YALL WEAK!!!

 5                              1 Comment

    



**Replies**

**Mercedes Townsend**
**Santana Gary** I'm not sure if they
killed him or if he just died! When
he was screaming it sounded like
he said someone had stabbed
him! When the ambulance got
here they didn't put him in
it ...they put him in the police car.

5m    Like    Reply

**Santana Gary**
**Mercedes Townsend** wth!! So he
died in police car??

3m    Like    Reply        ♥ 1

**Mercedes Townsend**
I don't think it was the car...I
think it was just in their custody.

3m    Like    Reply

**Santana Gary**
**Mercedes Townsend**  damn,
prayers to his family.

1m    Like    Reply        ♥ 1

📷    Write a reply...                GIF    ☺