**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**RIKA JONES, As Administratrix of the Estate of**
**ROBERT LOGGINS; RIKA JONES, Individually**
**and on Behalf of the Wrongful Death Beneficiaries**
**of ROBERT LOGGINS, Deceased; and RIKA JONES,**
**As Mother and Next Friend of R.D.L., a Minor**                          **PLAINTIFFS**

**v.**                                                 **CIVIL ACTION NO. 4:20-CV-220-SA-JMV**

**JUSTIN GAMMAGE, REGGIE WOODALL,**
**EDWIN MERRIMAN, MICHAEL JONES, and**
**ALBERT DEANE TILLEY, In Their Individual Capacities;**
**MOBILE MEDICA AMBULANCE SERVICE, INC.**
**D/B/A AMR and AMERICAN MEDICAL RESPONSE;**
**AND CORRECTIONS MANAGEMENT SERVICES, INC.**            **DEFENDANTS**

---

**DEFENDANT ALBERT "DEANE" TILLEY'S  MEMORANDUM**
**IN SUPPORT OF SUMMARY JUDGMENT**

---

        **COMES NOW DEFENDANT, ALBERT "DEANE" TILLEY**, by counsel, and

respectfully files this his Memorandum in Support of his Motion for Qualified Immunity, as follows:

## I.  INTRODUCTION

        Officer Tilley is entitled to qualified immunity as to all of Plaintiffs' federal claims.  Here,

Plaintiffs bring claims under Section 1983 for violations of the Fourth and Fourteenth Amendment.

Because, as to all claims, they have 1) failed to allege a constitutional violation and 2) failed to

establish that it was "beyond debate" in 2018, this Court should dismiss their federal claims against

Officer Tilley. Once these claims are dismissed, this Court should decline to exercise jurisdiction

over the remaining state law claims.

1

## II.  UNDISPUTED FACTS

At approximately 5:00 a.m. on November 29, 2018, several Grenada Police Department officers responded to a disturbance call at 50 West Govan in the City of Grenada.[1]  Shortly thereafter, Officer Tilley and Corporal Merriman located Robert Loggins in the backyard of a home.[2]  At that time, Officer Tilley shone his flashlight toward Loggins' presumed location and could hear him speaking, but did not have a visual of him.[3]  Officer Tilley began talking to Loggins; however, he could not understand what Loggins was saying.[4]  Officer Tilley continued speaking, and Loggins finally identified himself.[5]  After Loggins identified himself, Officer Tilley asked him multiple times to stand up and show Tilley his hands.[6]  Loggins did not comply with these commands, and continued to yell.[7]

During this interaction, Officer Tilley remained on the outside of the fence, pointing his flashlight towards Loggins' location, and waited until the other officers, Captain Gammage, Sergeant Woodall, and Officer Jones arrived.[8]  Initially, the other officers had trouble locating Loggins.[9] However, after entering through several gates and into the backyard, Captain Gammage could see

---

[1] Ex. "A" (MBI Report Part 1), at T.4.

[2] Ex. "A," at T.33 & 69.

[3] Ex. "A," at T.9 & 33.

[4] Ex. "A," at T.33.

[5] Ex. "A," at T.33.

[6] Ex. "A," at T.33.

[7] Ex. "A," at T.33 & 35.

[8] Ex. "A," at T.33, 35, & 69. *See also,* T.9, 12, 20, 23, & 49.

[9] Ex. "A," at T.35. *See also,* T.9, 20, 23, 49, & 50.

Loggins lying face down in thick vegetation with his hands tucked beneath him.[10] Captain Gammage then commanded Loggins to show his hands.[11] Again, Loggins failed to comply with multiple commands and continued yelling and screaming.[12] At that point, an officer tased Loggins, but it seemed to have no effect, and Loggins continued to keep his hands underneath his body.[13] Officer Tilley then climbed over the fence to assist his fellow officers.[14]

The officers continued to give Loggins commands, but he failed to comply.[15] Officer Gammage instructed Officer Jones to go hands-on with Loggins.[16] Officers Tilley and Jones then made contact with Loggins to attempt to get his hands out from beneath him.[17] Loggins continued to struggle with the officers.[18] Sergeant Woodall tased Loggins a second time and third time.[19] Loggins placed his hands further beneath him.[20] Officer Tilley reached under Loggins to grab his hands, and Loggins bit Officer Tilley.[21] Officer Tilley, understandably, jerked his hand away and

---

[10] Ex. "A," at T.9 & 12.

[11] Ex. "A," at T.9 & 12.

[12] Ex. "A," at T.5, 9, & 12.

[13] Ex. "A," at T.5, 9, 20, & 33.

[14] Ex. "A," at T.9, 33, & 36.

[15] Ex. "A," at T.5, 9, 12, 20, 33, & 70.

[16] Ex. "A," at T.9.

[17] Ex. "A," at T.13, 21, & 33.

[18] Ex. "A," at T.5, 9, 20, 33, & 36.

[19] Ex. "A," at T.9, 20, 33, & 36.

[20] Ex. "A," at T.9, 21, 33, & 36.

[21] Ex. "A," at T.5, 10, 21, 33, & 36; Ex. "C," (Accident Investigation Report), at T.315.

3

stepped back from the scuffle.[22]

When Officer Tilley pulled his hand away, Loggins' arm was exposed, and Chief Gammage grabbed his arm.[23] Chief Gammage instructed Officer Tilley to give him Officer Tilley's taser, and Officer Tilley complied.[24] Chief Gammage then "drive stunned" Loggins' arm.[25] Eventually, the officers were able to handcuff Loggins.[26] There is no evidence or contention in any of the statements or the Third Amended Complaint that Officer Tilley tased Loggins.[27]

After Loggins was cuffed, the officers commanded him to get up.[28] Again, Loggins did not comply, so the officers picked him up.[29] At this point, Loggins took approximately two steps and went limp.[30] Officers Tilley and Jones and Sergeant Woodall then carried Loggins from the backyard to the carport.[31] As the officers were carrying Loggins to the carport, Sergeant Woodall radioed dispatch to give the waiting EMTs the exact location so that they could examine Loggins.[32]

---

[22] Ex. "A," at T.36 & 40.

[23] Ex. "A," at T.10.

[24] Ex. "A," at T.9-10.

[25] Ex. "A," at T.10 & 21.

[26] Ex. "A," at T.10, 21, & 25.

[27] *See generally,* Ex. "A," and **[Doc. 44].**

[28] Ex. "A," at T.21, 25, & 52.

[29] Ex. "A," at T.21, 25, & 52.

[30] Ex. "A," at T.21 & 28.

[31] Ex. "A," at T.14, 21, 25, & 52.

[32] Ex. "A," at T.21, & 38.

When the officers arrived to the carport with Loggins, they sat him on the ground.[33] Loggins continued to scream and resist officers' commands.[34] Two EMTs, John Watson and Jennifer Howell, arrived at the scene to examine Loggins.[35] According to the Third Amended Complaint, the EMTs failed to examine Loggins.[36] Despite this, the EMTs told the officers that Loggins was medically cleared and could be to be taken to the jail.[37]

Sergeant Woodall, Officers Tilley and Jones, and Corporal Merriman again had to assist in carrying Loggins to the patrol car because he was resisting and would not walk.[38] The entire time the officers attempted to load Loggins into the patrol car, he was active, awake, and kicking.[39] Eventually, the officers placed Loggins sitting up in the patrol car.[40] Officer Jones transported Loggins in his car to the Grenada County Jail.[41] Officer Tilley rode there with Corporal Merriman.[42]

Officer Jones stated that during the entire ride to the jail, Loggins was kicking the cage and doors of the patrol car and chanting.[43] When Officer Jones arrived to the jail, a corrections officer

---

[33] Ex. "A," at T.21, 25, 28, & 38.

[34] Ex. "A," at T.10, 14, 52, 79, & 86.

[35] Ex. "A," at T.5, 79-80 & 85-6. *See also,* T.21, 25, 52, & 57.

[36] [Doc. 42 at ¶¶ 43-45].

[37] Ex. "A," at T.5, 21, 25, 33, 38, 52, 57, 71, & 82.

[38] Ex. "A," at T.5, 26, 41, 52, 53, 56, & 72.

[39] Ex. "A," at T.21, 26, 52, & 59.

[40] Ex. "A," at T.16, 26, 52, 59, & 75.

[41] Ex. "A," at T.26-7, 38, 52, & 72.

[42] Ex. "A," at T.38 & 72.

[43] Ex. "A," at T.59-60.

came to help him unload Loggins from the patrol car.[44]   At this time, Loggins was still resisting and would not walk on his own.[45]  Officer Tilley did not assist in bringing Loggins into the jail; however, he arrived shortly after and entered.[46]

When the officers entered the jail, they laid Loggins on the ground on his back.[47] At that time, Sergeant Clark informed the officers the she would not book Loggins because he was bleeding.[48] The officers informed Sergeant Clark that he had previously been cleared by EMTs to be taken to jail.[49] At some point during this discussion, Corporal Merriman ordered Officer Tilley to retrieve his handcuffs from Loggins.[50]

Then, Officers Tilley and Jones, along with several corrections officers, attempted to switch out Loggins' handcuffs and replace them with jail handcuffs.[51]  Again, Loggins continued to resist–to the point that a corrections officer had to use a leg restraint so Loggins would not kick him.[52] Eventually, the men were able to switch the handcuffs.[53]  Officer Tilley and the other Grenada Police

---

[44] Ex. "A," at T.5, 60 & 72; Ex. "B," (MBI Report Part 2), at T.99 & 110; Ex. "D," (Officer Statements), at T.309.

[45] Ex. "A," at T.60 & 72; Ex. "B," at T.99 & 110.

[46] Ex. "A," at T.38-40.

[47] Ex. "A," at T.5, 73; Ex. "B," at T.99 & 110; Ex. "D," at T.311.

[48] Ex. "A," at T.76; Ex. "B," at T.101 & 104.

[49] Ex. "A," at T.76; Ex. "B," at T.105.

[50] Ex. "A," at T.42

[51] Ex. "A," at T.39, 57, & 73; Ex. "B," at T.99 & 110-11; Ex. "D," at T.309-10.

[52] Ex. "A," at T.65; Ex. "B," at T.110-11; Ex. "D," at T.310.

[53] Ex. "A," at T.57

Department Officers then left the Grenada County Jail at approximately 6:07 a.m.[54]  At that point, they did not believe that Loggins was in distress.[55]

After the GPD officers left, corrections officers took Loggins into a holding cell; however, Sergeant Clark told them to bring him back into the booking area.[56]  In the meantime, Sergeant Clark called to have an ambulance dispatched and was again informed that Loggins had previously been medically cleared at the scene.[57]  Sergeant Clark still requested an ambulance.[58]  Sergeant Clark then called her supervisors to inform them of the situation.[59]  At approximately 6:13 a.m., Sergeant Clark checked on Loggins and noticed his eyes were not open.[60]  It was at this point that Sergeant Clark checked for his pulse and movement of breathing.[61]  She then informed the corrections officers that Mr. Loggins was not breathing.[62]  They immediately removed Loggins' heavy, multi-layered clothing to prepare for CPR.[63]  Sergeant Clark again called for an ambulance ASAP.[64]  The ambulance arrived

---

[54] Ex. "D," at T. 313.

[55] Ex. "A," at T.11, 60, & 73.

[56] Ex. "D," at T.313; Ex. "B," at T.105.

[57] Ex. "D," at T.313; Ex. "B," at T.105.

[58]  Ex. "D," at T.313; Ex. "B," at T.105.

[59] Ex. "D," at T.310 & 313.

[60] Ex. "D," at T.313; Ex. "B," at T.105.

[61] Ex. "D," at T.313; Ex. "B," at T.105.

[62]  Ex. "D," at T.313; Ex. "B," at T.105.

[63] Ex. "D," at T.310 & 313; Ex. "B," at T.99, 105, & 110.

[64] Ex. "D," at T.313.

at approximately 6:18 a.m., and the same EMTs arrived and began CPR.[65] At around 6:35 a.m., the EMTs exited the facility with Loggins and took him to UMMC Grenada.[66]

### III. OFFICER TILLEY IS ENTITLED TO QUALIFIED IMMUNITY.

Defendant Officer Tilley is presumed to enjoy qualified immunity; abrogation of qualified immunity is the exception, not the rule.[67] Public officials, such as police officers like Officer Tilley acting within the scope of their official duties, are shielded by qualified immunity from claims of civil liability, including Section 1983 claims.[68] Qualified immunity is a viable defense unless the existence of a constitutional violation is "beyond debate."[69] When qualified immunity is claimed, the burden falls on the plaintiff to show it is not applicable.[70]

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[71] Thus, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[72] When evaluating a qualified immunity defense, courts conduct a "well-known" two-prong inquiry.[73] A plaintiff must allege a violation of a constitutional

---

[65] Ex. "D," at T.313.

[66] Ex. "D," at T.313.

[67] *Trevino v. City of Fort Worth,* 2017 WL 3704511, at *4 (N.D. Tex. Aug. 25, 2017); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).

[68] *Morris v. Dillard Dept. Stores, Inc*., 277 F.3d 743, 753 (5th Cir. 2001).

[69] *Ashcroft v. Al-Kidd*, 563 U.S. 731,741(2011).

[70] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[71] *Mullenix v. Luna*, 577 U.S. 7, 10 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

[72] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[73] *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001).

right and then must show that the right was clearly established in light of the specific context of the case in order to overcome a qualified immunity defense.[74] Furthermore, courts have the discretion to "address these two elements in either order, and need not proceed to the second where the first is resolved in the negative."[75]

In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not.[76] Importantly, if public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity.[77] "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."[78]

In applying the two-part test to analyze a claim of qualified immunity, the threshold question is "whether Plaintiff's allegations establish a constitutional violation."[79] If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[80] However, "if a violation could be made out, the next sequential step is to ask, whether that right was clearly established."[81] The "relevant, dispositive inquiry in

---

[74] *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014).

[75] *Id.* (citations omitted).

[76] *Elder v. Holloway,* 510 U.S. 510, 512 (1994).

[77] *Mullenix v. Luna,* 577 U.S. 7, 10 (2015); *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington,* 957 F. 2d 1268, 1273 (5th Cir. 1992).

[78] *Malley,* 475 U.S. at 341.

[79] *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

[80] *Saucier v. Katz*, 533 U.S. 194 (2001); *see also*, *Pearson v. Callahan*, 555 U.S. 223 (2009)(holding that "order of battle" outlined in *Saucier*, is not mandatory in every instance).

[81] *Saucier*, 533 U.S. at 201.

9

determining whether a right is clearly established is whether it would be clear to a reasonable [deputy] that his conduct was unlawful in the situation confronted."[82] Here, the Plaintiffs' claims against Officer Tilley fail both parts of this test.

### A. Plaintiffs Fail to Establish a Constitutional Violation.

Plaintiffs' federal claims arise under 42 U.S.C. § 1983 alleging (1) unreasonable use of force under the Fourth Amendment and (2) failure to provide adequate medical care under the Fourth or Fourteenth Amendment. Plaintiffs' claim that Officer Tilley violated his Fourth Amendment right to be free from unreasonable and excessive force for (1) uses of force prior to Loggins being handcuffed and (2) forcibly removing handcuffs at the Grenada County Jail. Plaintiffs also allege that Officer Tilley violated Loggins' Fourth or Fourteenth Amendment rights, either as an arrestee or pretrial detainee, by failing to provide Loggins with objectively reasonable medical attention and care.[83] All of these claims must fail.

### 1. Officer Tilley Did Not Violate Loggins' Fourth Amendment Rights.

Plaintiffs' claims of excessive force must fail because the undisputed evidence shows that Officer Tilley did not engage in an unreasonable use of force under the Fourth Amendment. Specifically, Plaintiffs allege that Officer Tilley used unreasonable and excessive force against "a passively resisting Mr. Loggins prior to being handcuffed, and the use of force against an unresisting and medically incapacitated Mr. Loggins when the handcuffs were forcibly removed from him at the jail."[84] But a review of the undisputed facts shows that this is not the case.

---

[82] *Id.* at 202.

[83] *Id.* at ¶¶ 82-85.

[84] **[Doc. 44]**, ¶ 79.

a.  **Prior to Handcuffing Loggins, Plaintiffs Do Not Allege that Officer Tilley Used *Any Force;* Therefore This Claim Must be Dismissed.**

Plaintiffs' Fourth Amendment claim for excessive force prior to handcuffing fails for two reasons. First, Plaintiffs have failed to plead it with the necessary specificity. Second, because they have failed to do so, it is impossible for Officer Tilley or this Court to perform the necessary objective reasonableness test.

As to the first reason, "[t]o defeat or overcome an official's qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights."[85] The Plaintiffs here have failed to do so. While the Plaintiffs make the claim that the "individual officers are liable to the plaintiffs for their violation of Mr. Loggins's clearly established constitution right to be free from uses of force which are unreasonable and excessive under the circumstances . . . [for] the use of force against a passively resisting Mr. Loggins prior to being handcuffed[]," they fail to support it with any specific factual allegations.[86] In fact, they fail to allege that Officer Tilley used *any force,* much less unreasonable and excessive force, against Loggins prior to him being handcuffed. Moreover, in their Third Amended Complaint, not once do they allege that Officer Tilley tased or even touched Loggins.[87] The most damning thing the Plaintiffs say about Officer Tilley is that at some point

---

[85] *Mohamed v. Irving Indep. Sch. Dist.*, 252 F.Supp. 3d 602, 622 (N.D. Tex. 2017).

[86] *Id.*

[87] *See* [**Doc. 44¶14-36**].

11

Loggins bit him.[88]  As such, the facts as alleged against Officer Tilley, if proved, would not show that his conduct violated Fourth Amendment law.

Moreover, as it is unclear from Plaintiffs' Third Amended Complaint what exactly, this unreasonable use of force claim consists of, it is impossible to conduct an objective reasonableness test.  To determine if force is excessive, courts balance the amount of force used against the need for force.[89]  This balancing test "requires careful attention to the facts and circumstances of each particular case."[90] As Plaintiffs have failed to specifically identify *any* force Officer Tilley used against Loggins, prior to his being handcuffed, Plaintiffs' unreasonable use of force claim fails on its face, and Officer Tilley is entitled to qualified immunity. [91]

> **b.**  **Plaintiffs Also Fail To State a Claim For Their Use of Force Claim At the Jail.**

Plaintiffs' second Fourth Amendment claim against Officer Tilley for excessive force, this time at the jail, also fails.  In order to prove a constitutional violation for use of excessive force, Plaintiffs must show "(1) an injury that  (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable."[92]  Plaintiffs have not, and cannot, do so.

Here, Plaintiffs allege that officers "dog-piled" Loggins so that Officer Tilley could remove

---

[88] *Id.* at ¶28.

[89] *Flores v. City of Palacios*, 381 F.3d 391, 398-99 (5th Cir. 2004).

[90] *Id.* (citing *Graham v. Connor*, 490 U.S. 386,  396 (1989)).

[91]  *Compare* **[Doc. 44]** at ¶¶ 20 & 28 (describing Officer Tilley's conduct) *with* ¶¶ 22-28; 35 (describing specific acts of force by other officers at the scene).

[92] *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

his handcuffs.[93]  Specifically, Plaintiffs claim that "Officer Tilley placed his knee and bore his weight on the prone Mr. Loggins's neck and head, and at one point shifted his position such that he sat on Mr. Loggins's head while struggling to remove his handcuffs[,]" which subjected a defenseless and medically compromised Mr. Loggins to unnecessary, unreasonable, and excessive force."[94]  Because of this, the Plaintiffs claim that the "dog-pile" and weight of several men pressed on Loggins' body caused injury and deprivation of oxygen, which "*caus[ed]* his asphyxia.'"[95]

In other words,  the weight and force of Officer Tilley and other Defendants caused Loggins to be deprived of oxygen, stop breathing, and die from lack of oxygen.[96]  This is simply not true, and there is no evidence supporting this conclusory statement.  Loggins' Autopsy Report, conducted on November 30, 2018, stated that "[t]here is no identifiable evidence of external or internal traumatic injury that would have caused [ Loggins'] death."[97]  Further, the Autopsy Report reported that the cause of death was "Methamphetamine Toxicity", and the manner of death was an "Accident."[98] The Toxicology Report agrees with this finding as Loggins tested positive for Methamphetamine, Amphetamine, Marijuana, and Naloxone.[99]

*Pratt v. Harris County* is instructive.[100] In *Pratt*, the decedent was also on drugs, possibly

---

[93] **[Doc. 44**, at ¶ 57].

[94] *Id.* at ¶¶ 58-59.

[95] *Id.* at ¶ 60 (emphasis added).

[96] **[Doc. 44]** at ¶ 60; *see also* ¶ 73 ("Mr. Loggins died as a result of asphyxia.").

[97] Ex. "E," (Autopsy Report), at T.243.

[98] Ex. "E," at T.245.

[99] Ex. "E," at T.242.

[100] 2015 U.S. Dist. LEXIS 4757, at *24 (S.D. Tex. Jan. 15, 2015).

13

mentally ill, had been tased by the police because of his erratic and resistant behavior, and died after being restrained.[101] His mother sued the officers involved for violations of the Fourth Amendment, "through their use of tasers, prone restraint, hog-tying, and other unreasonable physical force," and the deputies filed for qualified immunity.[102]

The Court, after citing the familiar standard, turned to the second element, that the injury "resulted directly and only from the use of force that was excessive to the need."[103] In doing so, it held that the plaintiff could not recover for the decedent's death.[104] This is because "[t]he autopsy report found that the cause of death was undetermined, because the ingestion of cocaine and ethanol could not be separated from the deputies' potential contributions to [the decedent's] asphyxiation."[105] That court explained that "[i]nsofar as Plaintiff asserts that Pratt's death is the injury of this claim, there is no evidence that it was caused directly and only by excessive force."[106] Ultimately, the court concluded that "Plaintiff has presented no evidence that Pratt's death resulted directly and only from an excessive use of force by [the Deputies]."[107]

The autopsy in the case at bar is much more definitive than the one in *Pratt*. Here, Loggins' autopsy clearly states that the cause of death was "methamphetamine toxicity" and the manner of

---

[101] *Id.* *3-13.

[102] *Id.* at *21-24.

[103] *Id.* at *23-24.

[104] *Id.* at *24.

[105] *Id.*

[106] *Id.* (citing *Graniczny v. City of El Paso, Tex.*, 809 F. Supp. 2d 597, 610 (W.D. Tex. 2011) ("The Officers cannot be held responsible for the unexpected, albeit tragic result, of their use of necessary force.").

[107] *Id.* at *23-*24.

death was an "accident."[108]  Accordingly, there is no support for the allegation that Loggins' manner of death was asphyxiation.  Because of this, there is "no evidence that [Loggins'] death resulted directly and only from an excessive use of force by [Officer Tilley]."[109]  Officer Tilley's alleged actions here did not cause the injuries claimed by Plaintiffs.  Plaintiffs cannot make a prima facie case for excessive force on this claim. Officer Tilley should be granted qualified immunity.

>    **2.  Officer Tilley Did Not Violate Loggins' Fourth or Fourteenth Amendment Right to Receive Adequate Medical Care.**

Officer Tilley did not violate Loggins' Fourth or Fourteenth Amendment right to adequate medical care because he did not act with deliberate indifference to Loggins' care.  Plaintiffs assert that Officer Tilley is liable under the Fourth Amendment for his failure to provide Loggins, an arrestee, with objectively reasonable medical attention and care.[110]  Alternatively, Plaintiffs allege that Officer Tilley is liable under the Fourteenth Amendment for his failure to provide Loggins, a pre trial detainee, with objectively reasonable medical care.[111]

Although there is a question as to whether Loggins was an arrestee or pretrial detainee at the time the alleged events occurred, this is irrelevant.  The Fifth Circuit has explained that "[a]fter the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee,

---

[108] Ex. "E" - Autopsy Report at pg. 4.

[109] *Pratt*, 2015 U.S. Dist. LEXIS 4757, at *23-*24.

[110] **[Doc. 44]** at ¶ 82.

[111] *Id.* at ¶ 83.

derives from the Fourteenth Amendment."[112] "Thus, an arrestee's complaint for such denial is evaluated under the same standards applicable to substantive due process claims of pretrial detainees."[113]

"'Pretrial detainees have a constitutional right . . . not to have their serious medical needs met with deliberate indifference.'"[114] "Deliberate indifference is an extremely high standard to meet."[115] To successfully make a deliberate indifference claim, plaintiffs must show that "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[116] As such, an officer "is not liable unless 'he knows of and disregards an excessive risk' to plaintiff's safety."[117] Deliberate indifference "'cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm.'"[118] Instead, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that clearly evince a wanton disregard for any serious medical needs.'"[119]

---

[112] *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir. 1996).

[113] *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 495, 505 fn.10 (W.D. La. 2001) (quoting *Nerren*, 86 F.3d at 472) (citing *Fields v. City of South Houston, Texas*, 922 F.2d 1183 (5th Cir.1991) (applying pretrial detainee standards to an arrestee's claim that arresting officer denied arrestee medical attention).

[114] *Kelson v. Clark*, 2021 U.S. App. LEXIS 18129, at *6 (5th Cir. June 17, 2021) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (other citations omitted)).

[115] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[116] *Kelson*, 2021 U.S. App. LEXIS 18129, at *7 (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (other citations omitted)).

[117] *Id.* (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019)).

[118] *Id.* (quoting *Thompson*, 245 F.3d at 459 (citing *Hare v. City of Corinth*, 74 F.3d 633, 649-50 (5th Cir. 2002)).

[119] *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Here, Officer Tilley did not treat Loggins with deliberate indifference to his medical needs. Captain Gammage dispatched for an ambulance and EMTs to be on stand-by prior to even making contact with Loggins.[120] Next, after Loggins was handcuffed, Sergeant Woodall called dispatch and told them to instruct the ambulance on where to meet the officers.[121] Officers then placed Loggins on the ground, so that he could be assessed by the EMTs.[122] Although Plaintiffs allege that the EMTs failed to examine Loggins properly, it is undisputed that officers at the scene, including Sergeant Woodall, requested a medical examination of Loggins at that time.[123] The EMTs then cleared Mr. Loggins, and officers took him to the Grenada County Jail.[124]

Once Loggins made it to the sally port at the Grenada County Jail, he was still resisting. In fact, Officer Jones had to get two correctional officers to help him carry Loggins into the jail.[125] Loggins was placed on the ground and continued the similar behavior of speaking incoherently and rolling around on the ground.[126] At that time, Sergeant Clark informed officers that she would not book Loggins because he was bleeding.[127] At all times, the officers stated that Loggins had already been examined and cleared by EMTs at the scene to be booked.[128]

---

[120] *See* **[Doc. 44, ¶15].**

[121] *Id.* at ¶38.

[122] *Id.* at ¶39.

[123] *Id.* at ¶39-42.

[124] *Id.* at ¶44.

[125] Ex. "A," at T.5, 60 & 72; Ex. "B," at T.99 & 110; Ex. "D," at T.309.

[126] Ex. "A," at T.60 & 72; Ex. "B," at T.99 & 110.

[127] Ex. "A," at T.76; Ex. "B," at T.101 & 104.

[128] Ex. "A," at T.76; Ex. "B," at T.105.

Officer Tilley was then ordered to get his handcuffs from Loggins.[129]  Again, Loggins resisted and kicked, to the point that Frank Sanders, a correctional officer, had to use leg irons to keep Loggins from kicking him.[130] After Officer Tilley received his handcuffs, he and the other Grenada Police Department officers left the jail.  As the officers were leaving, the correctional officers were moving Loggins into a holding cell.   It was approximately **six minutes** after Officer Tilley exited the jail that Sergeant Clark first noticed that Loggins was not breathing.[131]

Here, Officer Tilley, along with the other Grenada Police Department officers at the scene, did not "know[] of and disregard[] an excessive risk' to Loggins's safety."[132]  First, it is undisputed that Sergeant Clark informed the officers that she would not book Loggins because he was bleeding; however, this does show deliberate indifference on the part of Officer Tilley.  Again, at all times Officer Tilley and the other Grenada Police Department officers informed Sergeant Clark that Loggins had already been cleared by medical professionals, the EMTs at the scene, which fully supports that Officer Tilley's subjective knowledge was that Loggins _was not_ substantially at risk of serious medical harm.

Further, Plaintiffs claim that "the officers waved [Sergeant Clark] off and left the motionless and bleeding Mr. Loggins on the floor of the lobby of the Grenada County Jail."[133]  Officer Tilley maintains that this is not true, however, even taking these facts in a light most favorable to the

---

[129] Ex. "A," at T.42

[130] Ex. "A," at T.65; Ex. "B," at T.110-11; Ex. "D," at T.310.

[131] Ex. "D," at T.313.

[132] _Kelson_, 2021 U.S. App. LEXIS 18129, at *7(quoting  _Garza v. City of Donna_, 922 F.3d 626, 635 (5th Cir. 2019)).

[133] **[Doc. 44 at ¶ 62].**

18

Plaintiffs, this still would not pass the threshold to deliberate indifference on the part of Officer Tilley. Even if Loggins was lying motionless on the ground, this was activity he had exhibited at the scene well before EMTs medically cleared him to be taken to the Grenada County Jail. It is long-standing precedent that "'failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.'"[134] Thus, even if Officer Tilley observed this behavior, it is not evidence that Officer Tilley should have been aware of any substantial risk as it was no departure from Loggins' behavior earlier that night prior to being examined and cleared by EMTs.

Lastly, and perhaps most importantly, at all times that Officer Tilley was present, Loggins was coherent and actively resisting the Grenada Police Department Officers' and correctional officers' commands. It was not until almost six minutes after Officer Tilley had left the jail that Sergeant Clark even noticed Loggins was not breathing. Therefore, it is unreasonable to believe that Officer Tilley was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that [Officer Tilley] actually drew that inference."[135]

In sum, Plaintiffs cannot show that Officer Tilley (1) refused to treat Loggins, as Loggins was treated and medically cleared prior to entering the Grenada County Jail; (2) ignored Loggins' complaints, as there is no documented evidence of any complaints; (3) intentionally treated him incorrectly, as again, Loggins was medically cleared and exhibited consistent behavior while in Officer Tilley's custody, or (4) engaged in any similar conduct that clearly evinced a wanton

---

[134] *Domino*, 239 F.3d at 756 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

[135] *Kelson*, 2021 U.S. App. LEXIS 18129, at *7 (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (other citations omitted)).

19

disregard for any serious medical needs.[136]  Plaintiffs cannot show that Officer Tilley acted with deliberate indifference to Loggins' serious medical needs.  Therefore, Officer Tilley is entitled to qualified immunity.

> **B.      The Constitutional Violation Alleged is Not Clearly Established.**

Here, the Court has two options, it may address this prong first - as the Plaintiffs cannot demonstrate an "'existing precedent [that] place[s] the . . . constitutional question[s] *beyond debate*'"[137] or it may determine that it need not reach this analysis as Plaintiffs have failed to meet the first prong of stating any constitutional violation.  Either way, qualified immunity is appropriate here.

Here, the Plaintiffs' claims must fail because they cannot establish that the rights herein are clearly established.  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[138]  "Clearly established law must be particularized to the facts of a case. Thus, while a case need not be directly on point, precedent must still put the underlying question beyond debate."[139]  "District courts in this Circuit have been told that 'clearly established law comes from holdings, not dicta.'"[140]  Courts "are to pay close attention to the specific context of the case" and not "define clearly established law at a high

---

[136] *See Domino*, 239 F.3d at 756.

[137] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (en banc).

[138] *Mullenix v. Luna,* 577 U.S. 7, 10 (2015)(citation omitted).

[139] *Id.* (quotations and citation omitted).

[140] *Jamison*, 476 F. Supp. 3d at 416 (quoting *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (citations omitted)).

level of generality."[141]

Moreover, "[i]t is [the Plaintiffs'] burden to find a case in his favor that does not define the law at a high level of generality."[142]  To meet his high burden, Plaintiffs must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[143]

Here, Plaintiffs cannot do this.  The Plaintiffs cannot point this Court to robust authority which, prior to 2018,  held that 1) under the Fourth Amendment an officer can be liable for excessive force when no allegations are made in the complaint that he even touched the suspect; 2) under the Fourth Amendment an officer can be liable for excessive force when there is no evidence that the injury complained of was caused directly and only by excessive force and, in fact, there is direct evidence that it was caused by something else; and 3) under the Fourteenth Amendment that an officer can be deliberately indifferent to an arrestee's medical needs when the arrestee was examined and cleared by medical professionals minutes earlier, cleared, the officer left the scene and it was not until over five minutes later that the arrestee was found to be in distress. Based on this alone, the Plaintiffs' claims must fail.

## IV.    CONCLUSION

**NOW, THEREFORE** Defendant prays that upon consideration hereof, the Court enter its order as follows:

(A)     That this Court dismiss the federal law claims in the Plaintiffs' Third  Amended

---

[141] *Id.* (quoting *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019)).

[142] *Id.* (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)).

[143] *Id.* (quoting *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017)).

21

Complaint with prejudice; and

       (B)     That this Court award this Defendant his attorneys' fees, costs and expenses associated with the defense of the instant civil action pursuant to 42 U.S.C. §1988.

       **RESPECTFULLY SUBMITTED** this the 31st day of July, 2021.

**JACKS| GRIFFITH| LUCIANO, P.A.**

By:    /s/ ***Bethany A. Tarpley***
        Bethany A. Tarpley, MS Bar No. 104134
        Daniel J. Griffith, MS Bar No. 8366
        Attorneys for Defendant**s**

Of Counsel:

**JACKS| GRIFFITH| LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. 662-843-6171
FAX No. 662-843-6176
Email: btarpley@jlpalaw.com
       dgriffith@jlpalaw.co

**CERTIFICATE OF SERVICE**

       I, Bethany A. Tarpley, attorney of record for Defendants, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum of Authorities in Support of Motion for Summary Judgment* to be delivered by the ECF Filing System which gave notice to the following:

       Jacob B. Jordan, Esq.
       J. Rhea Tannehill, Jr., Esq.
       Tannehill, Carmean & McKenzie, PLLC
       Email: jacob@tannehillcareman.com
             jrt@tannehillcarmean.com
       **Attorneys for Plaintiffs**

Victor I. Fleitas, Esq.
Victor I. Fleitas, P.A.
Email: fleitasv@bellsouth.net
**Attorney for Plaintiffs**

Gregory Todd Butler, Esq.
Mallory Kaye Bland, Esq.
Phelps Dunbar, LLP
Email: todd.butler@phelps.com
         mallory.bland@phelps.com
**Attorney for Justin Gammage, Reggie Woodall, Edwin Merriman, Michael Jones, and City of Grenada**

Steven James Griffin, Esq.
Thomas R. Julian, Esq.
Daniel Coker Horton & Bell
Email: sgriffin@danielcoker.com
         tjulian@danielcoker.com
**Attorneys for Corrections Management Services, Inc., John Watson, and Jennifer Howell**

**DATED** this day 31st of July, 2021.

/s/ ***Bethany A. Tarpley***
Bethany A. Tarpley

23