# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**RIKA JONES, ESTATE OF ROBERT**                     **PLAINTIFFS**
**LOGGINS, ET AL.**

**VS.**                    **CIVIL ACTION NO. 4:20-CV-220-SA-JMV**

**JUSTIN GAMMAGE, ET AL.**                   **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF MUNICIPAL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

In November 2018, the Grenada Police Department responded to a disturbance call. Decedent Robert Loggins was found behaving erratically and was arrested. Loggins later died at the Grenada County Jail, with an autopsy revealing 600 ng/mL of methamphetamine in his system. Although Loggins' death is tragic, none of the defendants who bring this motion are liable under settled law. Municipal Defendants the City of Grenada, Justin Gammage, Reggie Woodall, Edwin Merriman, and Michael Jones should be dismissed under Rule 12(c) or, alternatively, under Rule 56.

This result follows from three settled principles. First, governmental entities like Grenada are protected by sovereign immunity and thus are not vicariously liable for the conduct of their employees.[1] Second, individual defendants like Gammage, Woodall, Merriman, and Jones are similarly protected by immunity doctrines applicable to law enforcement officers in their personal capacities.[2] Third, because the immunity doctrines that protect the City and the individual

---

[1] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *City of Clinton v. Tornes*, 252 So. 3d 34, 36-40 (Miss. 2018) (explaining that a municipality cannot be held vicariously liable under state law for the actions of its employees unless the plaintiff satisfies all requirements under the Mississippi Tort Claims Act).

[2] *Jordan v. Brumfield*, 687 F. App'x 408, 412 (5th Cir. 2017) ("Qualified immunity is a powerful defense that protects 'all but the plainly incompetent or those who knowingly violate the law.'") (quoted case omitted); *Cotton v. Paschall*,

defendants include immunity from the burdens of litigation – as opposed to merely immunity from liability – dismissal is required "at the earliest possible stage" possible.[3]  This brief will address each principle in detail.

## BACKGROUND

The events giving rise to this lawsuit were largely captured on video—by officers' body cams at the initial scene and by cameras at the Grenada County Jail.  Under the rule from *Scott v. Harris*,[4] this Court must rely on these audio and video recordings, not any contrary allegations included in Plaintiffs' complaint or elsewhere.[5]

On November 29, 2018, at approximately 5:39 a.m., the Grenada Police Department received a noise disturbance call about a man yelling behind the caller's house.  Initial 911 Call, Ex. A (conventionally filed). Captain Justin Gammage, Sergeant Reggie Woodall, Corporal Edwin Merriman, and Officers Michael Jones and Albert Tilley responded to the call.   When officers arrived on Govan Street, they began to search for the source of the disturbance.  *See generally* Woodall Body Cam, Ex. B (conventionally filed); Merriman Body Cam, Ex. C (conventionally filed).  Captain Gammage also called for medical assistance at the time.  Third Am. Compl., Doc. No. 44, at ¶15.

---

782 So. 2d 1215, 1217 (Miss. 2001) (explaining that, under Mississippi Code § 11-46-7, governmental employees cannot be personally liable for law "for acts or omissions within the course and scope of their employment").

[3] *Tornes*, 252 So. 3d at 36 (explaining "that, because MTCA immunity 'is an entitlement not to stand trial rather than a mere defense to liability,' this issue 'should be resolved at the earliest possible stage of litigation'") (quoted case omitted); *Emmett v. McGuire*, 2009 WL 10680004, *2 (N.D. Tex. 2009) ("[B]oth the Fifth Circuit and the Supreme Court direct district courts to resolve qualified immunity questions at the earliest stage of litigation possible because qualified immunity is immunity from suit not immunity from liability.").

[4] 550 U.S. 372, 381 (2007).

[5] *See also Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2001).  Recent decisions further underscore that courts must rely on video and audio recordings of police encounters.  In *Rich v. Palko*, 920 F.3d 288, 293 n.3 (5th Cir. 2019), the Fifth Circuit emphasized that a plaintiff is not permitted to contradict audio and video recordings. Similarly, in a case issued on the same day as *Rich*, the Fifth Circuit rejected a plaintiff's argument that there were genuine issues of material fact that prevented summary judgment, emphasizing instead that the facts must be reviewed "in the light depicted by the videotape[.]"  *See Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019).

PD.34916169.1

Officer Tilley was first to spot Loggins. Merriman Body Cam at 00:51, Ex. C. Loggins was lying on his stomach with his arms tucked beneath him in shoulder-height grass in the middle of a residential backyard on the other side of a wooden fence from Tilley's location. *Id.*; Woodall Body Cam at 11:34-12:47, Ex. B. Tilley engaged with Loggins, and Loggins eventually told Tilley his name. Merriman Body Cam at 00:51-2:09, Ex. C. Tilley reported Loggins' position and identity to the other officers. *Id.* Tilley asked Loggins several times to show his hands. *Id.* at 3:36-5:08. Loggins did not comply and instead asked, "Are y'all going to kill me?" Woodall Body Cam at 12:12-:15, Ex. B. Tilley reassured Loggins that "nobody's going to kill you. We're here to help." Merriman Body Cam at 3:54-4:00, Ex. C.

The other officers were able to reach Loggins first, and Captain Gammage repeatedly asked Loggins to show his hands. Woodall Body Cam at 11:24-:45, Ex. B. Loggins did not. *Id.* When Loggins failed to respond to verbal commands, Sergeant Woodall tased him. *Id.* at 11:44. The taser had an effect on Loggins, but he still refused to show his hands. *Id.* at 11:44-12:01. The officers attempted more verbal commands before Woodall resorted to engaging the taser a second time. *Id.* at 12:02. This time the taser had no effect. *Id.* Loggins was wearing a thick vest that likely prevented the taser from having an effect. *Id.* at 13:05; Watson MBI Interview Transcript, Ex. D. Verbal commands were attempted again without success, so Woodall engaged the taser a third time. Woodall Body Cam at 12:14-13:33, Ex. B. Still, the taser had no effect. *Id.* The taser was engaged several more times but Loggins never complied. *Id.* at 12:40-13:40. Loggins continued to speak incoherently, saying "my soul belongs to Jesus Christ, my savior" and yelling unintelligibly. *Id.* at 13:00-17:45.

Since Woodall's taser had no effect, Captain Gammage took Tilley's taser and drive stunned[6] Loggins on his right arm. *Id.* at 13:00-13:37. At this point, the officers went hands on with Loggins and attempted to wrestle his arms from under his body. *Id.* at 13:45. During the struggle, Loggins bit Officer Tilley. *Id.* at 12:40. The officers were eventually able to get Loggins' arms from underneath his body and handcuff him. *Id.* at 16:00.

Loggins refused to walk, so the officers carried Loggins out of the yard to the carport of the house. *Id.* at 16:50-17:39. EMTs John Watson and Jennifer Howell assessed him, and cleared him to be taken to jail. *Id.* at 19:07; Merriman Body Cam at 12:36-:38, Ex. C.

The officers picked Loggins up and carried him to the police car but set him down again so Watson could remove the taser prongs. Woodall Body Cam at 20:30-22:27, Ex. B. Watson observed that the prongs seemed to be stuck in Loggins jacket and not in his skin. Watson MBI Interview Transcript, Ex. D. Once the prongs were removed and Loggins was carried to the car, he began kicking, shouting, and resisting being put in the police car. Merriman Body Cam at 16:17-16:56, Ex. C; Woodall Body Cam 23:00-:27, Ex. B. The officers were able to get him inside, and Officer Jones drove Loggins to the Grenada County Jail. Third Am. Compl., Doc. No. 44, at ¶48.

The events that occurred at the jail are all depicted on the video filed at Doc. No. 2.

Officer Jones and jail personnel carried Loggins into the jail. Doc. No. 2 at 00:00-00:11. Officer Tilley walked in shortly thereafter and helped support Loggins. *Id.* at 00:05. They laid him on the floor, where he rolled back and forth. *Id.* at 00:11-5:34. Jail Sergeant Edna Clark

---

[6] A drive-stun is "a pain-compliance technique that is a lesser quantum of force than deploying the probes[.]" *See, e.g.,* Greg Meyer, *TASER basics: What every judge and jury should know* (Nov. 14, 2011), https://www.policeone.com/less-lethal/articles/4558608-TASER-basics-What-every-judge-and-jury-should-know/ (accessed 6/15/2021).

stated that the jail would not accept Loggins because he was bleeding, but she was informed that Loggins had been cleared by EMTs. 911 Calls from Jail at 1:15-1:44, Ex. E (conventionally filed).

While the jail was trying to figure out what to do, Corporal Merriman instructed Tilley to get his cuffs and leave. Third Am. Compl., Doc. No. 44, at ¶56. Tilley attempted to get his handcuffs, but Loggins began rolling around again. Doc. No. 2 at 3:48-4:14. Tilley, Jones, and several jail personnel surrounded Loggins and held him down while Tilley removed the handcuffs. *Id.* at 5:30-8:46. As soon as Tilley's handcuffs were removed and replaced with handcuffs from the jail, the officers left the building. *Id.* at 8:46-9:15.

Jail personnel carried Loggins to a hallway and then immediately brought him back to the front lobby. *Id.* at 8:59-9:29. It took approximately six minutes for Clark to check Loggins' pulse and call for an ambulance. *Id.* at 15:23; 911 Calls from Jail at 1:40-2:02, Ex. E. The same EMTs arrived and began CPR. Doc. No. 2 at 19:36. They then took Loggins to Grenada Medical Center, where he was pronounced deceased.

An autopsy was conducted on November 30, 2019, and it was determined that Loggins' death was by accident as a result of methamphetamine toxicity. Autopsy Report, Ex. F. The toxicology report shows that Loggins had 600 ng/mL of methamphetamine in his system at his time of death. Toxicology Report, Ex. G.

## STANDARD OF REVIEW

The federal rules offer a number of ways defendants can challenge a plaintiff's case, including a motion to dismiss under Rule 12(c) and a summary judgment motion under Rule 56. Municipal Defendants invoke both rules here.

A Rule 12(c) motion to dismiss is governed by the same standard as a Rule 12(b)(6) motion to dismiss.[7]  Under the standard, the Court asks whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face."[8]  In resolving this motion, the Court may consider the complaint, documents attached to the complaint, documents central to the claims that are referenced in the complaint, and matters of public record that may be judicially noticed.[9] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent dismissal.[10]

Under Rule 56, the central question is whether the record evidence provides a viable basis for relief as opposed to looking to the pleadings alone.[11]  This question is answered by determining whether there are genuine issues as to any material facts.[12]  To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial."[13]  A factual issue is "material only if its resolution could affect the outcome of the action[,]"[14] and "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment."[15]  "Rule 56 does not require that *any* discovery take place before summary judgment can be granted."[16]

---

[7] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *E.g.*, *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (April 12, 2017); *Joseph v. Bach & Wasserman, LLC*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[12] Fed. R. Civ. P. 56(c).

[13] *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N. A.*, 465 F.3d 211, 214 (5th Cir. 2006).

[14] *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).

[15] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

[16] *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (emphasis in original) (quoting *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005)).

## ARGUMENTS AND AUTHORITIES

This case involves claims brought under federal and state law against five different officers[17] as well as the City of Grenada. The events alleged in the complaint occurred at two different scenes: the initial scene where Loggins was arrested and at the jail. Not every officer was involved at the separate scenes.

Problematically, the complaint fails to separate each defendant and identify what each defendant supposedly did wrong. This "lumping technique" has long been held to violate Rule 8's pleading requirement.[18] Fundamental notions of fairness dictate that the plaintiff must clearly tell each defendant what claims are being brought and why.[19] Plaintiffs should not have grouped the "defendant officers" together, especially since there is video evidence showing the actions taken by the individual officers.

Notwithstanding this fundamental problem, the remainder of this brief will address each claim as well as the actions taken by each defendant. It also will show why dismissal is appropriate. Because immunity protections are involved, Municipal Defendants are entitled to a resolution of their defenses without being subjected to the burdens of discovery.[20]

### Federal Law

The governing legal standards are settled. Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution

---

[17] Undersigned counsel only represents the City, Gammage, Woodall, Merriman, and Jones. Officer Tilley is represented by separate counsel.

[18] *See, e.g., Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2011 WL 1233126, *2 (S.D. Fla. 2011).

[19] *See, e.g., Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1250 (11th Cir. 2003) ("[I]t is axiomatic that defendants remain entitled to know exactly what claims are being brought against them.").

[20] *Tornes*, 252 So. 3d at 36; *Emmett*, 2009 WL 10680004, at *2.

PD.34916169.1

occurred and (2) that a governmental policy or custom was the moving force behind the violation.[21] Alternatively, individual-capacity defendants enjoy qualified immunity, meaning that a plaintiff must show both (1) that a violation of the Constitution occurred and (2) that the individual-capacity defendants' acted objectively unreasonable under clearly established law.[22]

Plaintiffs' claims are deficient in their totality. Most fundamentally, there can be no liability against any of the Municipal Defendants because Plaintiffs cannot prove a constitutional violation. Moreover, even if Plaintiffs could make such a showing, there still would be no liability because they cannot establish a basis for *Monell* liability against Grenada or objectively unreasonable conduct under clearly established law against Gammage, Woodall, Merriman, or Jones. The analytical path towards dismissal is addressed in turn.

**Excessive Force**. To bring a § 1983 excessive force claim, a plaintiff must show that he suffered an injury that resulted from force excessive to the need, i.e. force that was "objectively unreasonable."[23] The Supreme Court has long reminded that not every use of force, even if it may later seem unnecessary in hindsight, violates the Constitution.[24]

<u>Gammage and Woodall</u>. At the initial scene, Loggins' indisputable resistance is significant.[25] The video evidence shows, and Plaintiffs do not dispute, that Loggins failed to comply with numerous verbal commands, refused to show his hands while keeping them tucked tightly underneath him while he could have been concealing a weapon, struggled with officers,

---

[21] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

[22] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).

[23] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

[24] *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.).

[25] *See, e.g., Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (explaining that courts must consider whether the arrestee actively resisted or attempted to evade the arrest).

PD.34916169.1

and even bit an officer.  *See generally* Woodall Body Cam, Ex. B; Third Am. Compl., Doc. No. 44.  It was obvious that Loggins was under the influence and was behaving erratically.  *Id.*

In an instructive case, the Fifth Circuit recently held that an officer did not use excessive force when tasing a suspect who displayed a confrontational manner and turned around to face the officer while one hand was handcuffed.[26]  It also was explained that a subsequent drive-stun was not excessive because the suspect continued his refusal to comply with the officer's commands.[27]

The same is true here.  Loggins repeatedly failed to follow commands, would not display his hands, and even assaulted an officer.[28]  And, as in *Cloud*, the use of the taser was not the "first method [used] to gain [the arrestee's] compliance."[29]  Multiple officers used verbal commands before resorting to the taser.  *See Generally* Woodall Body Cam, Ex. B.  And once the officers realized the taser was ineffective, they used physical maneuvers, including use of pressure points, to force Loggins to release his hands.[30]  *Id.*  The video shows only the use of force necessary to effectuate the arrest.[31]

---

[26] *Cloud v. Stone*, 993 F.3d 379, 384-87 (5th Cir. 2021).

[27] *Id.* at 386-87; *see also Clayton v. Zullo*, 2014 WL 790869, *8 (E.D. La. 2014) (holding officer's "split-second judgment about the amount of force that was necessary" was reasonable where officer tased suspect who refused to put down his cell phone and refused to comply with commands to put his hands behind his back).

[28] *See also Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013) ("[W]here a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their taser to subdue him.").

[29] *Cloud*, 993 F.3d at 385.

[30] *Id.* at 384-86.

[31] *Id.* at 384 (Courts "consider not only the need for force, but also the relationship between the need and the amount of force used.  Faced with an uncooperative arrestee, officers properly use measured and ascending actions that correspond to the arrestee's escalating verbal and physical resistance." (cleaned up)); *see also Williams v. City of Cleveland, Miss.*, 2012 WL 3614418, *9 (N.D. Miss. 2012) ("[W]here Williams fled the scene with drugs in hand, was non-compliant, was warned about being tased and ignored the warning, remained unfazed after being tased, and physically struggled with both individual Defendant officers, the Court is unable to say the force used was excessive.") (collecting cases).

PD.34916169.1

Other cases make the same point, *Poole v. City of Shreveport*[32] being an instructive example. There, the plaintiff was pulled over for a minor traffic offense and given a sobriety test.[33] After the plaintiff passed the test, one of the officers began to "verbally threaten and challenge him."[34] The plaintiff, in response, raised his hands and invited the officer to strike him.[35] The officers then attempted to place the plaintiff under arrest, but he "backed away" and questioned their actions.[36] In turn, "two officers twisted [the plaintiff] around and pressed him against the side of his truck."[37] While one of the officer's held the plaintiff's arm behind his back, the other officer "tasered [the plaintiff] repeatedly."[38] One of the officers then reached for the plaintiff's right arm, but the plaintiff verbally and physically resisted the officer's command for the plaintiff to give it to him, at which point the officer again tasered the plaintiff.[39] Thereafter, the plaintiff climbed on his truck, laid on his back, and screamed that the officers had broken his arm.[40] The officers again tried to detain the plaintiff, but he continued to resist by kicking one of the officers.[41] The plaintiff eventually was held in place by one officer, and the other officer flipped him to the ground, yanked his arms, and handcuffed him.[42] The end result was that the plaintiff suffered a dislocated shoulder and permanent disabilities to his left arm and hand.[43]

---

[32] 691 F.3d 624 (5th Cir. 2012)

[33] *Id.* at 625-27.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

10

In *Poole*, the *Graham* factors[44] were applied, and it was held that the officers' conduct was objectively reasonable under the circumstances. Officers Gammage and Woodall's conduct likewise was objectively reasonable, and, in fact, was much less harsh than the *Poole* officers' conduct that was held constitutional.

Merriman. Plaintiffs have not alleged that Merriman exerted any force on Loggins at the initial scene, and the video evidence confirms this to be true. *See generally* Merriman Body Cam, Ex. C. Merriman simply was not involved in the physical struggle. *Id.* And although Plaintiffs incorrectly claim Merriman participated in a "dog-pile," Third Am. Compl., Doc. No. 44, at ¶59, the video evidence shows that Merriman did not use any force against Loggins at the jail. Doc. No. 2 at 5:30-8:46. Merriman stood to the side while Loggins' handcuffs were removed. *Id.* Because Plaintiffs have failed to allege specific facts showing that Merriman used any force on Loggins at all, much less excessive force, he should have never been sued.[45]

Jones. At the initial scene, Plaintiffs do not allege that Jones used any force against Loggins. *See generally* Third Am. Compl., Doc. No. 44. And the video does not indicate otherwise. *See generally* Woodall Body Cam, Ex. B. Jones merely helped handcuff Loggins.[46] *Id.* Any claims of excessive force from Jones' interaction with Loggins at the initial scene must be dismissed.

At the jail, Plaintiffs claim that Jones "dog-piled" Loggins along with several other individuals. Third Am. Compl., Doc. No. 44, at ¶57. But what the video shows is Jones holding

---

[44] The *Graham* factors include: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

[45] *Ashcroft*, 556 U.S. at 678; *Foulston Siefkin*, 465 F.3d at 214.

[46] *E.g., Curran v. Aleshire*, 800 F.3d 656, 662 n.6 (5th Cir. 2015) ("Handcuffing . . . is a ubiquitous practice in performing an arrest, and we have repeatedly stated that handcuffing alone—without more—is not constitutionally excessive.").

Loggins' arm or shoulder down. Doc. No. 2 at 5:30-8:46. Plaintiffs cannot show that this use of force was excessive to the need, especially since Loggins continued to be noncompliant, and this occurred after Loggins had bit an officer. Furthermore, for an excessive-force claim, Plaintiffs must show that the injury resulted directly and only from the use of excessive force.[47] Plaintiffs claim that the "dogpile" caused Loggins to be deprived of oxygen, which caused asphyxia. Third Am. Compl., Doc. No. 44, at ¶60. But there is simply no evidence to support this statement. The autopsy concluded that Loggins' cause of death was "Methamphetamine Toxicity" and the manner of death was an "Accident." Autopsy Report, Ex. F. The report further noted that "[t]here is no identifiable evidence of external or internal traumatic injury that would have caused [his] death." *Id.* Because Plaintiffs cannot demonstrate that Jones' restraint of Loggins' arm contributed to his death, where the autopsy report clearly rebuts that conclusion, Jones is entitled to dismissal on this alternate ground as well.[48]

**Failure to Provide Medical Care.** When it is alleged that a pre-trial detainee like Loggins did not receive adequate medical care, the Fourteenth Amendment's Due Process Clause[49] is the relevant constitutional provision.[50] "Liability for failing to provide such care attaches if the plaintiff can show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted."[51] Each officer (1) "must have had actual

---

[47] *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (citation omitted).

[48] *See Pratt v. Harris Cty.*, 2015 WL 224945, *9 (S.D. Tex. 2015) (holding that "Plaintiff has presented no evidence that Pratt's death resulted directly and only from an excessive use of force by [the officers]" where autopsy report was inconclusive.

[49] Although Plaintiffs have brought this claim alternatively under the Fourth Amendment, precedent makes clear that the Fourteenth Amendment is the proper avenue, no matter if Loggins is characterized as a pretrial detainee or arrestee. *E.g., Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. June 17, 2021) ("After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment.") (citation omitted).

[50] *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. July 2, 2021) ("The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment.").

[51] *Id.*

12

knowledge of the substantial risk" of serious harm and (2) "respond[ed] with deliberate indifference" – that is, in an "objectively unreasonable" manner.[52] "Deliberate indifference is 'an extremely high standard to meet.'"[53] A show of negligence or even gross negligence does not suffice.[54] Instead, Plaintiffs must show that the officers "refused to treat [Loggins], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[55]

*Gammage and Woodall.* Gammage and Woodall did not act with deliberate indifference. Most obvious, Gammage called for medical assistance as soon as he arrived at the scene, and Sergeant Woodall was aware he did so. Third Am. Compl., Doc. No. 44, at ¶ 2. Once Loggins was handcuffed and brought out of the backyard, Woodall informed the EMTs of their location. *Id.* at ¶38. Loggins was evaluated by EMS personnel and was not taken to the jail until he had been cleared by medical professionals. *Id.* at ¶44. These undisputed facts fall far short of actual knowledge of a serious risk of harm or an objectively unreasonable response.[56]

The Fifth Circuit has found that much worse conduct did not equate to deliberate indifference. In *Tamez v. Manthey*,[57] for instance, the Court held that officers did not act with deliberate indifference when the detainee had maximally dilated pupils and a nurse suggested medical treatment was needed prior to going to the jail yet the officers did not seek immediate medical attention. And very recently, the Fifth Circuit held in *Cope v. Cogdill* that an officer did

---

[52] *Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. Apr. 22, 2021).

[53] *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

[54] *Kelson*, 1 F.4th at 417.

[55] *Id.* (citation omitted).

[56] *Timpa v. Dillard*, 2020 WL 3798875, *10-11 (N.D. Tex. 2020) ("[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.") (quoted case omitted).

[57] 589 F.3d 764 (5th Cir. 2009).

not act with deliberate indifference when he waited for backup to arrive before entering the cell of an inmate committing suicide by hanging.[58]

To be sure, the Fifth Circuit has declined to hold that officers must ensure every intoxicated detainee is taken to the hospital to receive medical treatment. The Court has explained that, "to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers . . . would be a startling step to take."[59] This is especially true here, where Gammage and Woodall <u>did ensure</u> that Loggins was assessed by medical personnel and cleared.[60] Third Am. Compl., Doc. No. 44, ¶¶15, 38.

Nor have Plaintiffs pled facts sufficient to show that Loggins suffered any serious injury that Gammage or Woodall were subjectively aware of when the EMTs cleared Loggins for transport to the jail. And to reiterate: "actual knowledge" is required. Liability cannot result even where an officer "should have" – but did not – appreciate a substantial risk of serious harm.[61] Plaintiffs vaguely allege that Loggins was highly intoxicated and suffered physical injuries, but they do not attempt to detail the injuries. Third Am. Compl., Doc. No. 44, at ¶44. Loggins was talking and putting up a fight during the entirety of his interaction with Gammage and Woodall. *See generally* Gammage Body Cam, Ex. B. There was nothing to suggest that Loggins was suffering from a serious medical issue as opposed to being intoxicated.[62] And, more importantly,

---

[58] 3 F.4th at 208. The Court did hold, however, that the officer acted with deliberate indifference by not calling for medical assistance.

[59] *Estate of Allison v. Wansley*, 524 F. App'x 963, 972 (5th Cir. 2013) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)).

[60] *See Marshall v. Russell*, 391 F. Supp. 3d 672, 690 (S.D. Tex. 2018) ("[A]n officer's obligation to provide medical care is ordinarily satisfied by calling an ambulance or permitting EMS access to the injured individual.") (collecting cases).

[61] *Petzold v. Rostollan*, 946 F.3d 242, 250 n.32 (5th Cir. 2019) ("[W]e only ask what Rostollan actually knew, not what he should have known.").

[62] *E.g.*, *Wagner v. Bay City, Tex.*, 227 F.3d 316, 325 (5th Cir. 2000).

PD.34916169.1

the EMTs told the officers that Loggins was fit to be taken to jail.  Third Am. Compl., Doc. No. 44, at ¶44.  That the EMTs allegedly performed a negligent evaluation does not render the officers' conduct constitutionally inadequate.  *See id.* at ¶¶43-45.

*Roberts v. Lessard*[63] underscores the point.  The defendant-officers "were aware of [the plaintiff's] stroke symptoms," having "observed him sweating, slurring his speech, and having trouble controlling his movement."[64]  Nonetheless, it was held that officers were not deliberately indifferent because they did not "actually dr[a]w the inference that [the plaintiff] was suffering from a medical condition that presented a serious risk of harm" as opposed to being intoxicated from synthetic marijuana.[65]  This result was reached even though the plaintiff had been given a drug test that came back negative.[66]  It was concluded that the officers were shielded by pre-test statements from EMTs "that [the plaintiff] may be intoxicated[.]"[67]

The same result follows here.  Gammage and Woodall <u>did seek</u> medical attention for Loggins,[68] and they were entitled to rely on the advice of the medical professionals.[69]  Plaintiffs cannot satisfy either of the prongs of the deliberate indifference analysis.

*Merriman and Jones*.  At the initial scene, Merriman and Jones' conduct is in accord with that of Gammage and Woodall.  They both knew an ambulance had been called, and that Loggins had been cleared by the EMTs.  As explained, there was no deliberate indifference.

---

[63] 841 F. App'x 691 (5th Cir. Jan. 20, 2021).

[64] *Id*. at 694.

[65] *Id.*

[66] *Id.* at 692.

[67] *Id.* at 692, 694.

[68] Neither Gammage nor Woodall were present at the jail.

[69] *See, e.g., Bullock v. SMCI Medical Dep't*, 2009 WL 2407737, *6 (S.D. Miss. 2009) (collecting cases holding that law enforcement officials are entitled to rely on judgments made by medical professionals).

At the jail, Plaintiffs claim Merriman and Jones "stood next to [Loggins], who was visibly injured and having difficulty breathing in his prone position, but they nonetheless failed to provide or render any medical assistance to him." Third Am. Compl., Doc. No. 44, ¶50. But it has not been alleged that Loggins ever stated that he could not breathe. Evidence shows that he was rolling around, moving, talking, and behaving similarly to the earlier encounter. *See* Jerome Johnson MBI Interview Transcript, Ex. H; Doc. No. 2 at 0:11-5:34.

To be sure, the officers were not subjectively aware of any serious medical issue. At most, the officers knew that Loggins was intoxicated and acting erratically. There is no evidence that they knew he was struggling to breathe.[70] Such absence of knowledge triggers the analysis of cases like *Roberts*.[71]

The lack of subjective awareness defeats any claims against them, but the officers also did not respond in an objectively unreasonable manner. Again, Loggins had been checked by medical personnel and cleared. Merriman Body Cam at 12:36-:38, Ex. C; Third Am. Compl., Doc. No. 44, ¶44. That the officers did not take Loggins to the hospital or have him further checked out when he was only acting as erratically as he had been acting when he was cleared cannot be objectively unreasonable. Significantly, "when considering whether the care evinces deliberate indifference to serious medical needs[,]" courts "look at the totality" of the events in question.[72]

**Qualified Immunity**. Even if Loggins could demonstrate a constitutional violation as to any of his federal claims, Officers Gammage, Jones, Merriman, and Woodall are entitled to

---

[70] *E.g., Aguirre*, 995 F.3d at 421 ("It may well have been objectively unreasonable for [the officers] to have been ignorant of the serious threat to Aguirre's health[, b]ut gross negligence on the part of the [o]fficers is not sufficient to establish the kind of subjective, deliberate indifference that must be demonstrated to establish a Due Process violation.").

[71] 841 F. App'x at 694 (holding that a law enforcement officer does not possess the subjective awareness required under the deliberate indifference standard by misjudging the needs of an intoxicated arrestee).

[72] *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

dismissal on qualified immunity grounds. Indeed, when qualified immunity is asserted, "it is not enough for Plaintiff[s] to adequately demonstrate constitutional violations." [73]

Officers are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."[74] "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful.[75] In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."[76] This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."[77]

*Framework.* Plaintiffs shoulder the burden of defeating qualified immunity.[78] To do so, they have two options: (1) proffer a precedential case that "squarely governs" the conduct at issue, i.e. "the analogous-case requirement" or (2) demonstrate the conduct at issue is an "obvious" case of unconstitutional behavior, i.e. the "obvious" exception.[79]

This case certainly does not implicate the very rare "obviousness" exception, for "[t]he standard for obviousness is sky high[.]"[80] Both Plaintiffs' excessive force and denial of medical care claims contain a "reasonableness" analysis, and, in such circumstances, the Supreme Court has warned that proffering an analogous case is "especially important[.]"[81] Unless <u>every</u> single

---

[73] *Franco v. Kluge*, 2015 WL 1637688, *4 (W.D. Tex. 2015).

[74] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

[75] *Id.* (citation omitted).

[76] *Id.*

[77] *Id.* (citation omitted).

[78] *See Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020).

[79] *Cope*, 3 F. 4th at 204-12.

[80] *See Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020).

[81] *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

17

reasonable officer on the street would know "in the blink of an eye" that his or her conduct is unconstitutional because of the authoritative precedent, then qualified immunity must be granted.[82] This requires a high "degree of specificity."[83] The Supreme Court has "repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."[84] This principle reflects a "manifestation of the law's general concern about retroactive punishment or liability."[85]

*Application of the Qualified Immunity Framework.* Applying these standards here, Loggins has no evidence to suggest that the actions of Officers Gammage, Jones, Merriman, and Woodall were objectively unreasonable under clearly established law as of November 2018. A fundamental requirement is that the reasonableness of each officer's actions must be analyzed separately. Indeed, the Fifth Circuit very recently explained that "[o]ur precedent makes clear that 'we examine each individual's entitlement to qualified immunity separately.'"[86]

With respect to excessive force, there is no factually analogous case from either the Supreme Court or the Fifth Circuit that was decided before the incident took place, nor was there a "robust consensus of persuasive authority" that "clearly and unambiguously" prohibited each officers' conduct.[87] Without this "controlling authority," it cannot be said that "every reasonable

---

[82] *See Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting Supreme Court precedent).

[83] *Wesby*, 133 S. Ct. at 590 (citation omitted).

[84] *Id*. (citation omitted).

[85] *Wesby v. District of Columbia*, 816 F.3d 96, 110 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (citing Supreme Court precedent).

[86] *Marie Ramirez v. Guadarrama*, 844 F. App'x 710, 716 n.4 (5th Cir. 2021) (collecting cases) (emphasis added).

[87] *See Morgan*, 659 F.3d at 371-372.

official would know that what [the officers] did violated the law."[88]  Gammage and Woodall used a taser only after repeated attempts were made to get Loggins to respond to verbal commands.  *See generally* Woodall Body Cam, Ex. B.  Also, the officers reasonably believed that the taser had no effect on Loggins.  *Id.*  At the jail, the only officer who applied any "force" was Officer Jones, who merely held down Loggins' arm.  Doc. No. 2 at 5:30-8:46.  It cannot be said that holding down a detainee's arm to prevent him from rolling while another officer removes handcuffs was "unreasonable," much less "clearly established."

With respect to his denial of medical care claim, it is undisputed that, at the initial scene, Captain Gammage initially called for EMT assistance, Loggins was cleared by the EMTs, and each of the officers knew he was cleared.  *See generally* Third Am. Compl., Doc. No. 44.  At the jail, the video shows the officers leaving as soon as Tilley's cuffs were retrieved.  Doc. No. 2 at 8:46-9:15.  It cannot be said that it was clearly established that the officers were deliberately indifferent to any serious medical need.

In sum, the Fifth Circuit has reiterated that "[t]he qualified-immunity doctrine makes" obtaining "money damages from the personal pocket of a law enforcement officer" "difficult in every case."[89]  In that same opinion, the Fifth Circuit explained that qualified immunity presented a "heavy burden" for plaintiffs and that the denial of qualified immunity is an "extraordinary remedy."[90]  Since Loggins has no evidence that Officers Gammage, Jones, Merriman, and Woodall acted objectively unreasonable under clearly establish law at any point during the incident, the Officers are entitled to qualified immunity.

---

[88] *Id.* (reversing the district court's denial of qualified immunity because no controlling authority prohibited the officials' conduct).

[89] *See Morrow*, 917 F.3d at 874.

[90] *Id.* at 874-876.

PD.34916169.1

**Municipal Liability.** Failure to demonstrate a constitutional violation likewise defeats Plaintiffs' claims against the City,[91] but there is no municipal policy or custom for which the City of Grenada could be held liable anyway. To be sure, even if Plaintiffs could demonstrate a constitutional violation, that still would not be enough to prevent the City of Grenada's dismissal, since municipalities are not vicariously responsible for the actions or inactions of their employees.[92] There instead must be "something more" to impose liability on the municipality, i.e. a demonstration that the constitutional violation occurred because of a municipal policy or custom.[93] Plaintiffs have not plausibly pled, and certainly cannot prove, a basis for *Monell* liability in this case.[94]

Plaintiffs appear to seek to hold the City liable only for the alleged excessive force based on the use of the taser and not for the alleged use of force at the jail. *See* Third Am. Compl., Doc. No. 44, ¶¶32-34, 80. But such a theory is wholly incompatible with Section 1983. Municipal liability cannot be imposed "under a respondeat superior theory of liability."[95] A city is responsible only for its own policymaking conduct, not the conduct of its employees.[96]

In attempt to get around the no-vicarious-liability rule, Plaintiffs theorize that the City failed to "create or implement policies or to train its officers to refrain from the excessive and unreasonable use of force and deployment of the TASER under circumstances where the

---

[91] Municipal Defendants have joined Officer Tilley's motion to dismiss. Because Plaintiffs have not demonstrated that any Grenada police officer violated Loggins' constitutional rights, the City cannot be held liable. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing.").

[92] *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[93] *Id.*

[94] *See, e.g., Thomas v. State*, 2018 WL 1308275, *20-21 (N.D. Tex. 2018) (granting motion to dismiss on municipal liability claim); *McKinley v. Yarber*, 2015 WL 6554772, *3 n.2 (S.D. Miss. 2015) (same).

[95] *See Longino v. Hinds Cty., Miss.*, 2014 WL 4545943, *6 (S.D. Miss. 2014).

[96] *Id.*

PD.34916169.1

manufacturer expressly warned against its use." But for failure-to-train liability to attach, a municipal policymaker must have been deliberately indifferent, <u>and</u> the deliberate indifference must have "actually caused" Loggins' constitutional rights to have been violated.[97] Plaintiffs' theory fails under both requirements.

*Policymaker Deliberate Indifference.* For starters, Plaintiffs have not identified who they believe the final policymaker even is. Certainly Gammage, Jones, Merriman, Woodall, and Tilley are not policymakers, for they are mere members of the police force.[98] Policymakers are defined by state law,[99] and, in Mississippi, the city council is the final policymaker.[100] Plaintiffs' municipal liability theory is a non-starter for the simple reasons that the complaint does not say anything the council supposedly did wrong.

But there of course is no deliberate indifference in any event. Deliberate indifference is "an extremely high standard" in the context of individuals,[101] but the standard is even more "stringent" when it comes to a governmental entity.[102] To put the standard in context, the Supreme Court has <u>never</u> found governmental liability based on a failure-to-train theory.[103] Perhaps that is because, as Judge Easterbrook recently reminded, "the Constitution does not require training" or

---

[97] *See Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020).

[98] *See Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 166 (5th Cir. 2016) (discussing what it takes to be a final policymaker).

[99] *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) ("[T]he identity of the policymaker is a question of law, not of fact – specifically, a question of state law.").

[100] *See Riggins v. City of Indianola*, 196 F. Supp. 3d 681, 691-92 (N.D. Miss. 2016).

[101] *Domino*, 239 F.3d at 756.

[102] *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *id.* (A "municipality's culpability for a deprivation of rights is at its <u>most tenuous</u> where a claim turns on a failure to train[.]") (emphasis added).

[103] *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018).

PD.34916169.1

"require every municipality to implement current understandings of best practices[.]"[104] Quite differently, "[t]he duty is to avoid unconstitutional policies."[105]

There is no argument here that the City's written policies are unconstitutional or that the officers were not trained on the policies in place. Plaintiffs' position instead is that the City is liable for not training on the TASER manufacturer's warnings. But this theory of liability fails because there is no constitutional requirement that a city regurgitate the TASER manufacturer's guidelines.[106] All that is required is that a city not have an unconstitutional policy, for best practices are not the standard.[107]

It is settled that a pattern of similar incidents is "ordinarily necessary" to succeed in a failure-to-train case.[108] Underscoring this rule is *Sanders-Burns v. City of Plano*, where no deliberate indifference could be found since the plaintiff "fail[ed] to allege another death similar to the one suffered by her son[.]"[109] Plaintiffs have pled no facts alleging any prior incidents that would satisfy the requirement.[110]

Significantly, Officers Gammage, Woodall, Merriman, Jones, and Tilley were all certified under Mississippi law. Training Certificates, Ex. I. The Fifth Circuit "has held that[,] if the

---

[104] *J.K.J. v. Polk Cty.*, 960 F.3d 367, 386 (7th Cir. 2020) (Easterbrook, J., dissenting in part).

[105] *Id.* at 387. Notably, the Fifth Circuit has recognized that having no policy does not equal an unconstitutional policy. *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985).

[106] *E.g., Khansari v. City of Houston*, 2015 WL 6550832, *13-17 (S.D. Tex. 2015) (rejecting plaintiff's failure-to-train theory of liability based on the City's failure to adopt Taser manufacturer's recommendations).

[107] *J.K.J.*, 960 F.3d at 386-87 (Easterbrook, J., dissenting in part).

[108] *Bd. of Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

[109] 594 F.3d 366, 382 (5th Cir. 2010).

[110] Plaintiffs have not invoked the extremely rare single incident exception of municipal liability. Even if they had, it would woefully fail in this case. The exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena*, 879 F.3d at 624. It is undeniable that training was provided here. What's more is that, even in situations where no training is provided, a plaintiff still must show that the specific injury in question was the "highly predictable consequence" of the failure to train. *Hutcheson v. Dallas Cty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). Plaintiffs have not attempted to set forth facts supporting that standard, and the evidence would not support it anyway.

training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers."[111]  And courts have long held that Mississippi's police academy includes sufficient training to defeat a failure-to-train theory.[112]  Further, Gammage and Woodall both were certified taser instructors.  Training Certificates, Ex. I.  Plaintiffs cannot prevail on a failure to train theory where, as here, the officers were all trained.

But there is still another obstacle to Plaintiffs' attempt to hold the City responsible.  Even if they had adequately alleged that the City failed to train its officers on proper use of a taser, there has to be sufficient causation proof.[113]  The Supreme Court has ordered courts to apply a "rigorous" causation standard,[114] and application of that standard presents a question of law.[115]  Plaintiffs allege that Loggins' death was caused by asphyxia when officers and jail personnel exchanged handcuffs—not that the use of the taser caused his death.  Third Am. Compl., Doc. No. 44, ¶73.  Plaintiffs, therefore, have not pled facts showing that the alleged inadequate training "actually caused" Loggins' death.

## State Law

Plaintiffs advance the following state-law claims: negligence/negligence per se (Count 6) and assault and battery (Count 7).  "The Mississippi Tort Claims Act (MTCA) provides the

---

[111] *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009).

[112] *Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010) (rejecting denial-of-medical-care claim based on failure-to-train, where "both Officers attended and graduated from the Mississippi law enforcement academy and [were] certified law enforcement officers"); *see also O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009) (explaining that, "if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers'") (quoted case omitted).

[113] *Bd. of Bryan Cty. Comm'rs*, 520 U.S. at 415.

[114] *Id.*

[115] *Ratliff v. Aransas Cty., Tex.*, 948 F. 3d 281, 285 (5th Cir. 2020).

exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit."[116] Here, Plaintiffs' state law claims fail for both procedural and substantive reasons.

Procedural Problems

**Plaintiffs' claims are barred by the statute of limitations.** The MTCA imposes a one-year statute of limitations.[117] The claim in this case accrued on November 29, 2018, meaning Plaintiffs had until November 29, 2019 to file suit, plus any applicable tolling period.[118] Plaintiffs did not file suit until December 31, 2020, more than two years after the incident. Doc. No. 1.

It appears that Plaintiffs are attempting to take advantage of the MTCA's minor's savings statute, since the state law claims seem to be brought only on behalf of R.D.L., a minor child. But the minor's savings statute does not apply. Mississippi courts have held the minor's savings clause inapplicable when the "person who is subject to infancy or unsoundness of mind does in fact have a guardian or conservator appointed to them" because "the action may be brought in the name of that guardian or conservator without the consideration of any savings clause."[119] Relatedly, "[w]here a guardian or conservator has been court appointed for a ward, there is no logical or equitable reason to prevent the running of the statute of limitations inasmuch as that guardian or conservator is fully authorized to employ attorneys and bring actions on [the minor's] behalf."[120]

On January 9, 2019, the Grenada County Chancery Court entered an order appointing Rika Jones as administratrix of Loggins' estate and fully authorized her to employ counsel to pursue

---

[116] *C.W. and J.A. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1138 (Miss. 1999).

[117] Miss. Code § 11-46-11(3)(a).

[118] The notice of claims tolling period does not apply because the notice of claim also was sent well after the statute of limitations had expired.

[119] *Irby by and through Collins v. Madakasira*, 252 So.3d 614, 620 (Miss. Ct. App. 2018) (quoting *U.S.F&G Co. v. Conservatorship of Melson*, 809 So.2d 647, 653-54 (Miss. 2002)).

[120] *Id.*

24

this wrongful death action on behalf of R.D.L. Chancery Court Order, Ex. J. At that point, Jones "stepped into the shoes of" R.D.L., cutting off the minor's savings clause. Any action must have been filed by January 9, 2020 at the latest. Plaintiffs failed to do so.

**Plaintiffs failed to provide the requisite notice under the MTCA.** Under Mississippi Code § 11-46-11(1), a notice of claim "must" be filed "at least ninety (90) days before instituting suit." It is undisputed in this case that the notice of claim was delivered to the City Clerk's office on December 28, 2020.[121] The complaint was filed just three days later on December 31, 2020. Doc. No. 1.

The Mississippi Supreme Court has made clear that the notice requirement is "a 'hard-edged, mandatory rule which the Court strictly enforces.'"[122] Substantial compliance with the 90-day requirement does not suffice.[123] "No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires[.]"[124] Practitioners have been warned that, "[s]ince the MTCA's passage in 1993, a considerable amount of time has passed for the legal profession to become aware of the ninety-day notice requirement in section 11-46-11(1)."[125]

Following the mandate of Mississippi's highest court, federal district courts applying state law have explained that deficient notice under MTCA "cannot be cured" by subsequent acts.[126] Accordingly, serving a notice of claim mere days before filing the complaint and then amending

---

[121] *See* Miss. Code § 11-46-11(3)(d)(1) ("[S]ervice of notice of claim . . . is effective upon delivery[.]").

[122] *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006) (holding that plaintiff had not complied with the MTCA's notice requirement where she sent her notice of claim four months after filing suit) (quoting *Ivy v. GMAC*, 612 So. 2d 1108, 1116 (Miss. 1992)).

[123] *See Mathews v. City of Booneville*, 2020 WL 2615912, *8 (N.D. Miss. May 22, 2020).

[124] Miss. Code § 11-46-11(3)(b).

[125] *Univ. of Miss. Med. Ctr.*, 928 So. 2d at 820.

[126] *Wheeler v. Williams*, 2018 WL 6204444, *7 (N.D. Miss. 2018) (quoting *Pickett v. Panola Cty., Miss.*, 2015 WL 416967, *7 (N.D. Miss. 2015)).

PD.34916169.1

the complaint 90 days later does not work. The statute is clear: "no action whatsoever" may be maintained until the notice requirement is complied with.[127]

<u>Substantive Problems</u>

**Plaintiffs' state-law theory is inconsistent and self-defeating.** Plaintiffs appear to misunderstand the MTCA. Although the MTCA is the statutory vehicle for "any tort claim filed against a governmental entity <u>or</u> its employee[,]"[128] that does not mean that <u>both</u> the governmental entity and governmental employees can be liable. Individuals, on the one hand, can never be personally liable "for acts or omissions within the course and scope of their employment."[129] On the other hand, municipalities may be liable for an individual's acts or omissions but <u>only</u> if no exemption applies and <u>only</u> if a plaintiff can establish all of the substantive elements of the state-law claim being pursued.[130] This means that plaintiffs must "pick a horse" or, as Chief Judge Jordan recently put it, that plaintiffs cannot "have the best of both worlds[.]"[131]

The complaint is deficient for the simple reason that Plaintiffs state-law theory is incoherent. Although they allege at paragraphs two through five that the officers acted "within the course and scope" of their duties, they later bring claims in counts six and seven that are, as a

---

[127] Miss. Code § 11-46-11(3)(b).

[128] *Duncan v. Chamblee*, 757 So. 2d 946, 949 (Miss. 1999) (emphasis added)

[129] *Cotton v. Paschall*, 782 So. 2d 1215, 1217 (Miss. 2001) (citing Miss. Code § 11-46-7).

[130] *See Grimes v. Pearl River Valley Water Supply*, 930 F.2d 441, 443 (5th Cir. 1991).

[131] *See Hawkins v. City of Lexington*, Case No. 3:19-cv-00606-DPJ-FKB at Doc. No., pp.12-13 (S.D. Miss. July 9, 2021) ("So either the officers acted within the course and scope of their employment – in which case there are no individual-capacity claims – or they acted outside the course and scope of their employment, in which case the City of Lexington maintains sovereign immunity.").

PD.34916169.1

matter of law, outside the course and scope of employment.[132]  Plaintiffs cannot have it both ways,[133] and this Court is under no obligation to try and reconcile Plaintiffs' deficient pleading.[134]

Nonetheless, if this Court chooses to dig deeper, then the foundational question is whether the officers were acting inside or outside the course and scope of their employment.[135]  If this Court determines that the officers acted inside the course and scope, then the individual-capacity claims against Gammage, Woodall, Merriman, and Jones automatically must be dismissed.[136]  If, however, this Court determines that the officers acted outside the course and scope of their employment, then Grenada automatically must be dismissed.[137]  Municipal Defendants will first address additional grounds to dismiss the City and then discuss additional grounds to dismiss the individual officers.

**If the officers acted within the course and scope, the City nonetheless remains immune from liability**.  Under the MTCA, "the state is free from any liabilities unless it [has] carve[d out] an exception[.]"[138] And "[c]ities are considered political subdivisions [of the state that are] covered under the MTCA."[139]  When the MTCA applies, two questions arise: (1) whether an MTCA exception bars the claim at issue and (2) whether all requisite elements of the claim have been satisfied even if no exemption applies.  These question are addressed in turn.

---

[132] *See Lewis v. Marion County*, 2013 WL 3828522, *1 (S.D. Miss. July 23, 2013) (holding that assault and battery are outside scope of employment).  Similarly, Plaintiffs' negligence per se claim in count six is premised on violations of criminal statutes, and criminal acts fall outside the scope of employment under Mississippi Code § 11–46–5(2).

[133] *See Hawkins*, Case No. 3:19-cv-00606-DPJ-FKB at Doc. No., pp.12-13 ("So either the officers acted within the course and scope of their employment – in which case there are no individual-capacity claims – or they acted outside the course and scope of their employment, in which case the City of Lexington maintains sovereign immunity.").

[134] *Cf. Cambell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[T]he court is not required to conjure up unplead allegations or construe elaborately arcane scripts to save the complaint.").

[135] *See Hawkins*, Case No. 3:19-cv-00606-DPJ-FKB at Doc. No., pp.12-13

[136] *Cotton*, 782 So. 2d at 1217

[137] *Id.*

[138] *Oliver v. Noxubee Cty. Tax Dept.*, 200 F.3d 815, 815 (5th Cir. 1999) (quoted case omitted).

[139] *L&L Construction Servs., L.L.C. v. Falgout*, 2020 WL 3259536, *2 (S.D. Miss. June 16, 2020).

PD.34916169.1

*Exemptions.* An MTCA "exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation."[140] Immunity "is a question of law[,]" meaning that it is properly addressed by motion.[141] At least two exemptions apply here.

<u>Police-Protection Exemption.</u> Under Mississippi Code § 11-46-9(1)(c), there is immunity "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." This exemption applies for two separate reasons: (1) Loggins was engaged in criminal conduct and (2) the officers' conduct does not amount to "reckless disregard."

To begin, it is undisputed that the officers were called to the scene because Loggins' was trespassing and causing a disruption. Such behavior implicates various criminal statutes, including: trespassing;[142] noise disturbance;[143] breach of the peace;[144] and failure to comply/disorderly conduct.[145] Plus, Loggins engaged in criminal activity at the time he ingested the illegal substance that ultimately led to his death from methamphetamine toxicity.[146] Autopsy Report, Ex. F. There are thus at least five criminal violations that trigger this exemption.

---

[140] *McElroy v. City of Brandon*, 198 So. 3d 373, 378 (Miss. Ct. App. 2015).

[141] *Id*.

[142] Miss. Code § 97-17-93.

[143] Miss. Code § 97-35-9.

[144] Miss. Code § 97-35-15.

[145] Miss. Code § 97-35-7.

[146] *See Irwin-Giles v. Panola Cty.*, 253 So. 3d 922, 930 (Miss. Ct. App. 2021) ("[W]e hold that a claim is barred under section 11-46-9(1)(c) if there is a causal 'nexus between the criminal activity of the injured party and the injury suffered by him.'") (cleaned up).

PD.34916169.1

What's more is that, "in the absence of criminal activity on the part of the victim, the police protection exemption *still* applies unless the act or omission complained of evinces a 'reckless disregard of the safety and well-being' of others[.]"[147]  "In the context of section 11-46-9(1)(c), 'reckless disregard' encompasses willful and wanton action."[148]  The Mississippi Supreme Court has held that reckless disregard presents a question of law[149] and relatedly that, by imposing a reckless disregard standard, "the Legislature set an extremely high bar for plaintiffs" to meet.[150]

There simply is no evidence that the officers acted in a manner amounting to a willingness to harm Loggins.  Quite to the contrary, the officers pleaded with Loggins to show his hands prior to being tased.  *See generally* Gammage Body Cam, Ex. B.  Loggins was only tased after failing to comply with officers commands.  *Id.*  And officers called for medical assistance for Loggins. *Id.*  As a result, Plaintiffs cannot establish conduct that rises to the requisite level of "reckless disregard."

Inmate Exemption.  Mississippi Code § 11-46-9(1)(m) provides immunity from the claims "[o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution[.]"  "Inmate" has been defined broadly to include pre-trial detainees and "civilian detainees in the process of being released."[151] At the time of Loggins' death at the jail, he was a pre-trial detainee.

---

[147] *Chapman v. City of Quitman*, 954 So. 2d 468, 474 (Miss. 2007) (citation omitted) (emphasis original).

[148] *Titus v. Williams,* 844 So. 2d 459, 468 (Miss. 2003) (citation omitted).

[149] *See City of Vicksburg v. Williams*, 294 So. 3d 599, 602 (Miss. 2020) (reversing trial court's reckless disregard finding, reasoning "[w]hile the circuit court described the officers' actions as a reckless disregard, the record does not support such a finding").

[150] *City of Jackson v. Presley*, 40 So. 3d 520, 523 (Miss. 2010) (emphasis added).

[151] *Hinds Cty. v. Burton*, 187 So. 3d 1016, 1-24 (Miss. 2016).

*Substantive Standards*. Plaintiffs advance claims for negligence/negligence per se and assault and battery through counts six and seven of the operative complaint. The elements of these claims are addressed in turn.

Negligence/Negligence Per Se. Again, the individual officers cannot be liable for negligence or negligence per se because they were acting in the course and scope of their employment as law enforcement officers throughout their dealings with Loggins.[152] And again, the City cannot be liable for negligence per se because each of the statutes cited are criminal statutes, and the City cannot be held liable for any action constituting a criminal act.[153] *See* Third Am. Compl., Doc. No. 44, ¶102 (citing Miss. Code § 47-1-27 (Maltreatment Forbidden) and Miss. Code § 97-3-7 (Simple and/or Aggravated Assault)).

Nevertheless, to succeed on their claim for negligence, Plaintiffs must prove that the City breached a duty owed and that breach was the proximate cause of the injury.[154] Plaintiffs' central theory of liability is that the City failed to provide Loggins with medical care. But, as already addressed, no such duty could have been breached where it is undeniable that medical care was provided, and Loggins was cleared by medical professionals.

Assault/Battery. Again, the individual officers cannot be liable for assault or battery because they were acting in the course and scope of their employment as law enforcement officers throughout their dealings with Loggins.[155] And again, the City cannot be liable for such actions because they go beyond the course and scope of employment.[156]

---

[152] *See Cotton v. Paschall*, 782 So. 2d 1215, 1217 (Miss. 2001) (citing Miss. Code § 11-46-7) (Individual defendants can never be personally liable under Mississippi law "for acts or omissions within the course and scope of their employment.").

[153] Miss. Code § 11-46-7(2).

[154] *See Miss. Dep't of Human Servs. v. S.W.*, 111 So. 3d 630, 653 (Miss. Ct. App. 2012).

[155] *See Cotton*, 782 So. 2d at 1217.

[156] *See Lewis*, 2013 WL 3828522 at *1.

Nevertheless, the essential elements of assault and battery are missing.  A police officer in making an arrest "may exert such physical force as is necessary to effect the arrest by overcoming the resistance he encounters, but he cannot take the life of the accused or inflict upon him great bodily harm except to save his own life or to prevent a like harm to himself."[157]  As explained above and can be seen in the videos of the incident, the officers used only the force necessary to effectuate the arrest and protect themselves from harm.  The officers gave Loggins many chances to comply with orders, but Loggins – in his drug induced state – continued to defy them.

## CONCLUSION

In sum, there are numerous reasons why Municipal Defendants must be dismissed from this case, including:  (1) lack of a constitutional violation, (2) qualified immunity, (3) no municipal liability, and (4) failure to overcome the requirements of the MTCA.

DATED: August 19, 2021

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:     */s/ G. Todd Butler*
        G. Todd Butler (MB # 102907)
        Mallory K. Bland (MB # 105665)
        PHELPS DUNBAR, LLP
        4270 I-55 North
        Jackson, Mississippi 39211-6391
        Telephone:  (601) 352-2300
        Email: butlert@phelps.com
            blandm@phelps.com

        ***ATTORNEYS FOR MUNICIPAL DEFENDANTS***

---

[157] *Holland v. Martin*, 56 So. 2d 398, 400 (1952).

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 19, 2021, I had a copy of this document electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ G. Todd Butler*
G. TODD BUTLER

PD.34916169.1