IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

RIKA JONES, As Administratrix of the Estate of
ROBERT LOGGINS; RIKA JONES, Individually
and on Behalf of the Wrongful Death Beneficiaries
of ROBERT LOGGINS, Deceased; and RIKA JONES,
As Mother and Next Friend of R.D.L, a Minor.                    PLAINTIFFS

VERSUS                                          No. 4:20cv220-SA-JMV

JUSTIN GAMMAGE, REGGIE WOODALL,
EDWIN MERRIMAN, MICHAEL JONES, and
ALBERT DEANE TILLEY, In Their Individual Capacities;
CITY OF GRENADA; MOBILE MEDIC AMBULANCE
SERVICE, INC. D/B/A AMR and AMERICAN MEDICAL
RESPONSE; JOHN WATSON; JENNIFER HOWELL;
AND CORRECTIONS MANAGEMENT SERVICES, INC.          DEFENDANTS

---

## FOURTH AMENDED COMPLAINT

---

*Jury Trial Demanded*

This is a civil action to recover damages for violations of Robert Loggins' Fourth Amendment right to be from unreasonable and excessive force, and Fourth or Fourteenth Amendment right to reasonable medical attention, made actionable pursuant to 42 U.S.C. § 1983; and for violations of Mississippi law through acts and omissions constituting negligence, gross negligence, negligence per se, assault, and battery. The following averments support this civil action:

## I. PARTIES

1.      Plaintiff Rika Jones is an adult resident citizen of Lafayette County, Mississippi. Ms. Jones brings this suit as the Administratrix of the Estate of Robert Loggins; individually and on behalf of the wrongful death beneficiaries of Robert Loggins, deceased; and as the mother and next friend of R.D.L., a minor. R.D.L. is the natural son of Robert Loggins, deceased.

2.      Defendant Justin Gammage is an adult resident citizen of Mississippi. At all times

relevant to this civil action, Defendant Gammage acted under color of law and within the course and scope of his duty as a Captain for the Grenada Police Department. Defendant Gammage may be served with the complaint and summons at 15 North Main Street, Grenada, Mississippi 38901 or wherever he may be found.

3.     Defendant Reggie Woodall is an adult resident citizen of Mississippi. At all times relevant to this civil action, Defendant Woodall acted under color of law and within the course and scope of his duty as a Sergeant for the Grenada Police Department. Defendant Woodall may be served with the complaint and summons at 15 North Main Street, Grenada, Mississippi 38901 or wherever he may be found.

4.     Defendant Edwin Merriman is an adult resident citizen of Mississippi. At all times relevant to this civil action, Defendant Merriman acted under color of law and within the course and scope of his duty as a Corporal for the Grenada Police Department. Defendant Merriman may be served with the complaint and summons at 15 North Main Street, Grenada, Mississippi 38901 or wherever he may be found.

5.     Defendant Michael Jones is an adult resident citizen of Mississippi. At all times relevant to this civil action, Defendant Jones acted under color of law and within the course and scope of his duty as a Patrolman for the Grenada Police Department. Defendant Jones may be served with the complaint and summons at 15 North Main Street, Grenada, Mississippi 38901 or wherever he may be found.

6.     Defendant Albert Deane Tilley is an adult resident citizen of Mississippi. At all times relevant to this civil action, Defendant Jones acted under color of law and within the course and scope of his duty as a Patrolman for the Grenada Police Department. The Defendant may be served with the complaint and summons at 15 North Main Street, Grenada, Mississippi 38901 or wherever he may be found.

7.     Defendant City of Grenada is a municipal corporation chartered pursuant to the

laws of Mississippi. The City of Grenada may be served with process by service upon its City Clerk, Ms. Diane Spencer, Post Office Box 310, Grenada, Mississippi 38902.

8.     Defendant Mobile Medic Ambulance Service, Inc., is a foreign for-profit corporation licensed to do business in the State of Mississippi, with its principle place of business at 6363 South Fiddlers Green Circle, Suite 1400 Greenwood Village, Colorado 80111. At all relevant times, Mobile Medic Ambulance Service, Inc. was doing business as AMR and American Medical Response (hereinafter "AMR"). AMR may be served with process by service of a complaint and summons upon its registered agent.

9.     John Watson is an adult resident of Grenada County, Mississippi. At all times relevant to this action, Defendant Watson was acting within the course and scope of his employment with AMR. He may be served with process through AMR or wherever he may be found.

10.     Jennifer Howell is an adult resident citizen of Grenada County, Mississippi. At all times relevant to this action, Defendant Howell was acting within the course and scope of her employment with AMR. She may be served with process through AMR or wherever she may be found.

11.     Defendant Corrections Management Services, Inc. (hereinafter "CMS") is a private, for-profit domestic corporation with its principle place of business at 34 Hargett Drive, Charleston, Mississippi 38921. At all times relevant to this civil action the Defendant CMS administered and managed the Grenada County Jail and its employees. CMS may be served with process by service upon its registered agent, Edward M. Hargett, at its principle place of business.

## II. JURISDICTION & VENUE

12.     This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331, 1343 as this action arises under the Constitution and laws of the United States of America. This Court has supplemental jurisdiction over additional claims pursuant to 28 U.S.C. §

1367.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as the events and omissions giving rise to Plaintiffs' claims occurred within Grenada County, Mississippi, which is located within the Northern District of the United States District Court, Greenville Division.

### III. FACTS

14.     In the early morning hours of November 29, 2018, officers from the Grenada Police Department responded to a disturbance call regarding an individual yelling for help in a residential back yard in Grenada, Mississippi.

15.     Believing that someone might be in need of medical assistance, Captain Gammage called for an ambulance to come to the scene of the disturbance.

16.     Upon arriving at the scene of the alleged disturbance, the responding officers, Justin Gammage, Reggie Woodall, Michael Jones, Edwin Merriman, and Albert Tilley, canvassed the area.

17.     While canvassing the area, the officers heard yelling and cries for help coming from the yard behind a house.

18.     The responding officers then walked towards the direction of the yelling.  Upon arriving at the source of the yelling, the officers observed a black male lying face down on the ground in tall vegetation yelling and speaking incoherently, with his arms tucked under his body.

19.     Based on prior contact, one of the officers identified the individual on the ground as Robert Loggins.

20.     One officer radioed to the other officers that "He's on something" in reference to Mr. Loggins. Officer Tilley began calling Mr. Loggins by name and asked him to get up from the ground and to show his hands. Upon information and belief, Officer Tilley then stated, "Nobody's going to kill you. We're here to help." Minutes passed before Captain Gammage and Sergeant Woodall also told Mr. Loggins to show his hands.

4

21.     Mr. Loggins, obviously unable to comprehend and respond to verbal commands, remained on the ground with his arms under his body. Captain Gammage told Officer Tilley to give him his taser, and Officer Tilley provided it to him.

22.     Sergeant Woodall and Captain Gammage deployed their TASERs without warning on Mr. Loggins while he was lying face-down on the ground yelling incoherently, despite the fact that Mr. Loggins posed no immediate threat to the officers' safety and any resistance he offered to the officers' orders was unknowing and passive at most.

23.     Sergeant Woodall observed Mr. Loggins' body lock-up in response to the deployment of the TASER.

24.     However, the deployment of the TASER did not cause the distressed Mr. Loggins to take his arms from under his body and show his hands to the officers.

25.     Sergeant Woodall deployed his TASER against Mr. Loggins again without achieving the result of compelling Mr. Loggins through the infliction of pain to show the officers his hands.

26.     Captain Gammage ordered the officers to go "hands on" with Mr. Loggins so that his arms could be forced from underneath him.

27.     Robert Loggins stated, "My soul belongs to Jesus Christ, my savior, my protector." One of the officers responded, "Your ass belongs to us now," and resumed tasing Mr. Loggins on drive-stun mode. The officer then stated, "Do it the old-fashioned way then. Sho sho gonna hate it." Defendant Jones stated, "Give me a baton. Give me a baton."

28.     Then, Captain Gammage and Sergeant Woodall deployed their TASERs several times on drive-stun mode against Mr. Loggins. During this period, Officer Tilley alleged that Mr. Loggins bit his hand.

29.     Altogether, records from the Grenada Police Department and Defendant Tilley demonstrate that these officers deployed a TASER against Mr. Loggins a minimum of nine times

for a duration of five seconds per deployment.

30.     The amount of times the individual defendant officers deployed the TASER against Mr. Loggins violated the express warnings issued by the manufacturer which prohibited the use of the TASER against an individual manifesting signs of impairment identical to Mr. Loggins, and prohibited its use as many times as the individual defendant officers used it against Mr. Loggins.

31.     Mr. Loggins constituted a susceptible individual as defined by the manufacturer warnings, which warns that the use of the taser against him can contribute to serious medical consequences. The use of the TASER against Mr. Loggins while he manifested signs of impairment readily ascertained by the individual defendant officers thus violated dire warnings and restrictions by the manufacturer deployed against Mr. Loggins and constituted an unreasonable use of force and the gratuitous infliction of pain. Officers Jones and Tilley failed to intervene to stop these unconstitutional acts.

32.     The City of Grenada failed to implement policies and training consistent with the manufacturer's warnings which would restrain its officers' use of the TASER in an unreasonable and excessive manner against an individual such as Mr. Loggins who due to their degree of impairment was incapable of modifying their behavior to comply with the requests of law enforcement officers.

33.     The failure of the City of Grenada to create or implement policies or to train its officers to refrain from the excessive and unreasonable use of force, including but not limited to the use of impact weapons, maximal prone restraint, pressure to an arrestee's head, neck, or torso, and deployment of the TASER under circumstances where the manufacturer expressly warned against its use, caused in whole or in part the excessive and unreasonable use of force against Mr. Loggins, which amounted to a gratuitous infliction of pain, both at the scene of his arrest and at the jail.

34.     Upon information and belief, the Defendant Grenada has not disciplined any of the individual defendants for unconstitutional misconduct, excessive force, or violation of any policy. The Defendant Grenada condoned and/or ratified the unconstitutional conduct of the individual defendants or others.

35.     The officers also made use of pressure points and strikes to Mr. Loggins' body with a fist by Captain Gammage and multiple strikes with a flashlight by Sergeant Woodall.

36.     The officers succeeded in forcing Mr. Loggins' arms from underneath his body and handcuffed him behind his back. Officers physically carried Mr. Loggins with his feet dragging on the ground some distance to the carport of a home.

37.     Mr. Loggins remained handcuffed behind his back at all subsequent times relevant to this civil action.

38.     Upon arriving at the carport, Sergeant Woodall told dispatch to instruct the ambulance where to meet them.

39.     Officers placed Mr. Loggins on the ground of the carport so that he could be assessed by the emergency responders, John Watson, EMT, and Jennifer Howell, Paramedic.

40.     John Watson and Jennifer Howell were employed by the Defendant AMR and at all times relevant to this civil action acted as its agents and employees and within the course and scope of their employment.

41.     Mr. Loggins appeared to the officers and EMTs to be under the influence of drugs as he mumbled incoherently, to be speaking in tongues, and to be behaving irrationally and divorced from reality.

42.     Mr. Loggins also showed signs of physical injuries from his prolonged physical struggle with the officers, and the EMTs knew that officers had just subjected Mr. Loggins to multiple TASER strikes and physical blows in the back yard.

43.     However, despite Sergeant Woodall's request that the EMTs assess Mr. Loggins,

neither of them took a history from Mr. Loggins or checked his vital signs to determine whether or not he needed medical attention and transport to the emergency room or could be transported to the jail.

44.     Despite failing to perform even a rudimentary assessment of Mr. Loggins, the EMTs cleared him to be transported to the jail in the face of obvious signs of an acute, life-threatening health emergency including, signs of drug use, and physical injuries due to a prolonged physical struggle involving multiple TASER strikes and physical blows.

45.     The applicable standard of care required, *inter alia*, that Defendant AMR (1) recognize that Mr. Loggins was not oriented to person, place, time, and self; (2) check his vitals, including, at minimum, his respiration rate and pulse, and to check for hyperthermia by touching his forehead; (3) recognize the obvious signs of an acute, life-threatening health emergency; (4) recognize the prior use of drugs and physical struggle, including the use of TASERs; and (5) ensure immediate transport to a hospital. AMR negligently, grossly negligently, and recklessly breached this standard of care by, *inter alia*, failing to check Mr. Loggins' vitals and by failing to ensure his immediate transport to a hospital in light of obvious signs of an acute, life-threatening health emergency coupled with knowledge of drug use, TASER deployment, and a physical struggle with law enforcement.

46.     After the EMTs cleared Mr. Loggins or otherwise failed to ensure his transport to the hospital, the officers picked-up Mr. Loggins in order to put him in a patrol car for transportation to the jail.

47.     When the officers picked-up Mr. Loggins, EMT John Watson removed TASER prongs still connected to Mr. Loggins clothing and body.

48.     The officers carried Mr. Loggins to the patrol car but struggled to place him in the back before managing to lay him across the back seat. Once Mr. Loggins was secured in Officer Jones' patrol vehicle, Sergeant Woodall told Officer Jones, "Drive fast and move hard."  Corporal

Merriman stated, "Yep."

49.     Upon arriving at the sally-port of the Grenada County Jail, Officer Jones and jail personnel carried Mr. Loggins to the lobby and laid him on his stomach with his hands cuffed behind his back in front of the booking area.

50.     Corporal Merriman, Officer Jones, and Officer Tilley stood next to Robert Loggins, who was visibly injured and having difficulty breathing in his prone position, but they nonetheless failed to provide or render any medical assistance to him.

51.     Upon Mr. Loggins' arrival at the jail, jail personnel called on the incoming shift sergeant, Edna Clark, to address a dispute over whether Mr. Loggins would be accepted at the jail or sent back with the officers for transport to the hospital.

52.     Mr. Loggins appeared mentally incoherent and out-of-sorts.  His eyes were rolled to the back of his head at one point.  He had visible cuts and abrasions over his body, and at one point was noted to have been bleeding from his mouth.  As Mr. Loggins lay face down on the floor, he rocked his body from side to side in failed attempts to turn over on his back to allow him to breathe.

53.     Sergeant Clark told the officers that she would not accept Mr. Loggins into the jail due to his obvious need for medical attention.  Sergeant Clark told the officers to take Mr. Loggins to the hospital immediately.

54.     The officers refused to take Mr. Loggins to the hospital and insisted that he was going to remain at the jail.

55.     During this time a visibly injured Mr. Loggins continued to rock side-to-side, facedown, while visibly struggling to breathe with his arms handcuffed behind his back.

56.     The argument between Sergeant Clark and the officer went back and forth for several minutes until Corporal Merriman told Officer Tilley to get his handcuffs from Mr. Loggins and leave.

57.     At that time, Officer Tilley, joined by Officer Jones and several jailers dog-piled Mr. Loggins by placing their body weight on his torso, limbs, and his leg-irons to pin him to the floor and further restrain him, so that Officer Tilley could retrieve his handcuffs and leave the jail.

58.     Officer Tilley placed his knee and bore his weight on the prone Mr. Loggins' neck and head, and at one point shifted his position such that he sat on Mr. Loggins' head while struggling to remove his handcuffs, in part because his keys did not work.

59.     These defendants, Officer Jones, Officer Tilley, and the jailers, all of whom participated in the dog-pile for over three minutes, subjected a defenseless and medically compromised Mr. Loggins to unnecessary, unreasonable, and excessive force.

60.     During the dog-pile that lasted over three minutes, the weight and force of several grown men pressed down on Mr. Loggins' body, neck, head, arms, and legs.  Mr. Loggins suffered injury and was further deprived of oxygen, causing his asphyxia. This altercation rendered Mr. Loggins motionless and unresponsive. Corporal Merriman, as the ranking officer on the scene, supervised Officers Jones and Tilley. Corporal Merriman observed all of the unconstitutional actions of Officers Jones and Tilley actions at the jail without intervening to prevent, which is evident in the jail video. Corporal Merriman told MBI that he too has "been known to use my knee to restrain them."

61.     Video footage of Mr. Loggins' arrival to, departure from, and maltreatment in the Grenada County Jail, attached hereto as Exhibit A and adopted herein by reference, has been filed through notice of conventional filing [Docket #2].

62.     After Officer Tilley retrieved his handcuffs, Sergeant Clark again told the officers to take Mr. Loggins to the hospital, but the officers waved her off and left the motionless and bleeding Mr. Loggins on the floor of the lobby of the Grenada County Jail.

63.     At that point, jailers began to drag Mr. Loggins towards the back of the jail. However, noticing that Mr. Loggins was limp and unresponsive, the jailers reversed course and

set Mr. Loggins back on the floor of the lobby.

64.     For several minutes thereafter, Mr. Loggins' motionless body lay on the floor of the lobby of the Grenada County Jail while jailers observed him and stood around taking no action to render or provide medical attention to Mr. Loggins.

65.     After several minutes, during which Mr. Loggins lay unconscious on the floor of the lobby, Sergeant Clark called for an ambulance but was told by the dispatcher that Mr. Loggins had already been "cleared" by the EMTs.

66.     Sergeant Clark then went to Mr. Loggins' motionless body and checked his pulse, breathing, and eyes.  Ms. Clark observed that Mr. Loggins had no pulse, was not breathing, and his eyes were lifeless.

67.     Jailers then started to cut off Mr. Loggins' shirt and Sergeant Clark called dispatch again for medical assistance for Mr. Loggins.

68.     The jailers interacting with Mr. Loggins at the Grenada County Jail were employees and agents of Defendant CMS and at all times relevant to this civil action acted as its agents and employees and within the course and scope of their employment.

69.     Defendant CMS negligently, grossly negligently, and recklessly breached its duty to provide medical care for Mr. Loggins by failing to provide or seek any medical attention for Mr. Loggins despite obvious and serious signs of medical distress.

70.     Defendant CMS' failure to provide adequate medical care to Mr. Loggins while he was in obvious medical distress also constitutes negligence *per se* pursuant to Mississippi Code §47-1-27, which mandates that jails must provide adequate medical care to arrestees.

71.     In response to Sergeant Clark's call, John Watson and Jennifer Howell were dispatched to respond to the call for emergency medical assistance and rendered medical assistance to Mr. Loggins at the jail for approximately sixteen minutes before transporting him to the hospital.

72.     A lifeless Mr. Loggins arrived at the hospital, where he was pronounced dead.

11

73. Mr. Loggins died as a result of asphyxia. Defendants' use of unreasonable and excessive force as well as their repeated failures to render or provide him with adequate medical attention also proximately caused his death.

74. At all times relevant to this civil action, the individual defendant officers acted under color of state law.

75. The individual defendant officers committed the aforementioned acts and omissions in an objectively unreasonable manner, with with deliberate indifference and reckless disregard to Mr. Loggins' safety and federally protected rights.

76. Defendant AMR and Defendant CMS are at all times relevant to this civil action liable for the acts and omissions of its employees and agents through the doctrine of *respondeat superior*.

77. As a result of the Defendants' acts and omissions, the Decedent Robert Loggins suffered extreme physical pain and suffering, emotional distress and loss of enjoyment of life. Plaintiffs have lost the lifelong love, companionship, and support of their husband and father, and have suffered emotional distress and mental anguish.

## IV. CAUSES OF ACTION

## COUNT ONE – FOURTH AMENDMENT

78. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further allege as follows:

79. The individual defendant officers are liable to the plaintiffs for their violation of Mr. Loggins' clearly established constitutional right to be free from uses of force which are unreasonable and excessive under the circumstances, including but not limited to the use of force against a passively resisting Mr. Loggins prior to being handcuffed, and the use of force against an unresisting and medically incapacitated Mr. Loggins when the handcuffs were forcibly removed from him at the jail. Said violations by the individual defendants were the proximate cause of Mr.

Loggins' suffering and death.

80.    This claim is asserted against Defendants Gammage and Woodall for their excessive force exhibited at the scene of Mr. Loggins' arrest. They were not present at the jail.

81.    This claim is asserted against Defendant Merriman for his actions and inactions at the jail under supervisory and bystander failure to intervene theories of liability for excessive force.

82.    These claims are asserted against Defendant Jones under bystander failure to intervene at the scene of Mr. Loggins' arrest, and direct participation and/or failure to intervene theories of liability for his actions and, in the alternative, inactions at the at the jail as alleged herein.

83.    Plaintiffs do not allege unconstitutional conduct against Defendant Merriman prior to Mr. Loggins' arrest.

84.    This claim is asserted against Defendant Tilley pursuant to a bystander theory of liability at the scene of Mr. Loggins' arrest and direct use of force at the jail.

### COUNT TWO – FOURTH OR FOURTEENTH AMENDMENT

85.    Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

86.    At the time that Mr. Loggins was transported to the Grenada County Jail and dropped off in the booking area by officers for the City of Grenada, Mr. Loggins was an arrestee whose right to adequate and reasonable medical care from the defendants arose from the Fourth Amendment and required the defendants to provide him with objectively reasonable medical attention and care.

87.    Alternatively, at the time that Mr. Loggins was transported to the Grenada County Jail and dropped off in the booking area by officers for the City of Grenada, Mr. Loggins was a pretrial detainee whose right to adequate and reasonable medical care from the defendants arose from the Fourteenth Amendment and required the defendants to provide him with objectively

13

reasonable medical attention and care.

88.     Alternatively, at the time that Mr. Loggins was transported to the Grenada County Jail and dropped off in the booking area by officers for the City of Grenada, Mr. Loggins was a pretrial detainee whose right to adequate and reasonable medical care from the defendants arose from the Fourteenth Amendment and required the defendants to not act with deliberate indifference to Mr. Logins' known need for medical attention and care. Mr. Loggins exhibited bleeding from his mouth, eyes rolled in the back of his head, labored breathing, drug intoxication, incoherent speech, and unconsciousness, among other conditions, all of which Defendants Jones, Tilley, and Merriman observed and responded to with deliberate indifference.

89.     The individual defendant officers are liable to the plaintiffs for their violation of Mr. Loggins' clearly established constitutional right to reasonable medical care and attention at the Grenada County Jail.  The individual defendants violated Mr. Loggins' clearly established right to adequate medical care by denying him necessary emergency medical care despite having objective and subjective indicia and awareness of a serious risk of harm to Mr. Loggins' health and safety from the denial of said medical care. Said violations by the individual defendants were the proximate cause of Mr. Loggins' suffering and death. This claim is not asserted against individual Defendants Gammage and Woodall as they were not present at the jail.

**COUNT THREE - NEGLIGENCE AND MEDICAL MALPRACTICE**

90.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

91.     Plaintiffs have met all administrative prerequisites to bringing these claims against AMR, John Watson, EMT, and Jennifer Howell, Paramedic, for the negligence of its employees and agents.

92.     AMR owed a duty to properly train and supervise their employees, including Jennifer Howell and John Watson. AMR and its employees furthermore owed a duty to conform

their conduct to the applicable standard of care as set forth, *supra*, for the protection of Robert Loggins against an unreasonable risk of injury.

93.     AMR, through the acts and omissions of its employees and agents, John Watson, EMT, and Jennifer Howell, Paramedic, breached these duties and the standard of care as set forth, *supra*. AMR furthermore breached these duties by failing to properly train and supervise Jennifer Howell and John Watson.  The breach of one or more of these duties constitutes willful, wanton, or reckless disregard for the safety of Mr. Loggins.

94.     The breach of these duties and of the applicable standard of care directly and proximately caused the harms and damages alleged herein.

### COUNT FOUR – NEGLIGENCE AND NEGLIGENCE PER SE

95.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

96.     The Defendant CMS, through the acts and omissions of its employees and agents negligently, grossly negligently, and recklessly breached its duty to provide reasonable medical care for Mr. Loggins by failing to provide or seek any medical attention for Mr. Loggins despite obvious and serious signs of medical distress. Defendant CMS furthermore owed a duty to train and supervise its employees in such a manner as to protect from harm individuals like Robert Loggins and to ensure reasonable medical treatment.

97.     The Defendant CMS' failure to provide adequate medical care to Mr. Loggins while he was in obvious medical distress also constitutes negligence *per se* pursuant to Mississippi Code §47-1-27, *inter alia*, due to their violation of statutes in full force and effect, the purpose of which is to protect from harm the class of persons of which Mr. Loggins was a member on the day of his death.

98.     The acts and omissions of the Defendant CMS amounted to gross negligence that evidenced a willful, wanton or reckless disregard for the safety of Mr. Loggins.

99.     The actions, omissions, violations of law, and breach of one or more duties of the Defendant CMS were the proximate cause of Mr. Loggins' suffering and death.

## COUNT FIVE – ASSAULT AND BATTERY

100.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

101.     CMS is liable to R.D.L. for the torts of assault and battery arising from the exertion of force against the helpless, prone, and handcuffed Robert Loggins.

102.     Employees and agents of CMS committed acts intending to cause a harmful or offensive contact with the person of Robert Loggins and placed him in such imminent apprehension.

103.     The actions of the CMS employees and agents constituting battery consisted of the harmful placement of the body weight of multiple jailers on the person of a defenseless and medically incapacitated Robert Loggins.

## COUNT SIX – NEGLIGENCE AND NEGLIGENCE PER SE

104.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

105.     The Defendant, City of Grenada, through the acts and omissions of its employees Captain Gammage, Sergeant Woodall, Corporal Merriman, Officer Tilley, and Officer Jones, acting within the course and scope of their employment, owed a duty to do what a reasonable, prudent person and/or law enforcement officer would have done under the circumstances. The Defendant breached this and other duties by failing to render medical care to Mr. Loggins which proximately caused Robert Loggins' injuries.

106.     These Defendants further violated various provisions of the Mississippi Code, including, *inter alia*: Miss. Code § 47-1-27 (Maltreatment Forbidden) and Miss. Code § 97-3-7 (Simple and/or Aggravated Assault). These statutory violations are a proximate cause of the

injuries Robert Loggins sustained, and constitute negligence *per se*. These statutes were at all relevant times in full force and effect, the purpose of which is to protect from harm the class of persons of which Mr. Loggins was a member on the day of his injuries.

107.     Robert Loggins was not engaged in criminal activity at the time of his injuries, and these Defendants' actions and omissions constituted a reckless disregard for the safety and well-being of Robert Loggins.

108.     In the alternative, should it be determined the Defendant Officers were not acting within the course and scope of their employment with the Defendant City of Grenada with respect to their acts and omissions, Plaintiff R.D.L. brings this claim against the Defendant Officers, Captain Gammage, Sergeant Woodall, Corporal Merriman, Officer Tilley, and Officer Jones, individually.

109.     Plaintiffs have met all administrative prerequisites of bringing these claims against these Defendants on behalf of R.D.L.

**COUNT SEVEN – ASSAULT AND BATTERY**

110.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

111.     The Defendants, Captain Gammage, Sergeant Woodall, Corporal Merriman, Officer Tilley, and Officer Jones are liable to R.D.L. for the torts of assault and battery arising from the exertion of force used against Robert Loggins at the scene of his arrest and at the Grenada County Jail.

112.     These Defendants furthermore committed acts intending to cause a harmful or offensive contact with the person of Robert Loggins and placed him in imminent apprehension of such offensive contact.

113.     The actions of these defendants constituting assault and battery consisted of, *inter alia*, the use of tasers, physical beating with a flashlight, verbal abuse, and suffocating Mr. Loggins

at the Grenada County Jail.

114.    Robert Loggins was not engaged in criminal activity at the time of his injuries, and these Defendants' actions and omissions constituted a reckless disregard for the safety and well-being of Robert Loggins.

115.    Plaintiffs have met all administrative prerequisites of bringing these claims against these Defendants on behalf of R.D.L.

**COUNT EIGHT  - FOURTH AND FOURTEENTH AMENDMENT, CITY OF GRENADA**

116.    The Defendant City of Grenada is liable to plaintiffs for the following violations of Mr. Loggins' constitutional rights:

a.    The defendant City of Grenada maintained a practice or custom of its officers unconstitutionally excessive use of force through the use of the TASER and/or impact weapons, as demonstrated during the arrest of and death of Mr. Loggins and other arrestees or detainees. Defendant Woodall and other defendants misrepresented his use of an impact weapon on Mr. Loggins to MBI investigators, and Defendant Woodall stated that impact weapons was against written policy;

b.    The Defendant City of Grenada maintained a practice or custom of unconstitutionally deficient training for its officers regarding use of a TASER and impact weapons as demonstrated in part by its use of city-authorized training that was beneath state standards;

c.    The Defendant City of Grenada maintained a custom or practice of its officers unconstitutionally applying excessive force to the neck, head, or back of arrestees, and the placement of arrestees in the maximal prone position as demonstrated by the arrest and death of Mr. Loggins and others, all of which were in violation of published DOJ guidelines dating as far back as 1995. Defendant Merriman told MBI that "I have been known to use my knee in restraining them.";

18

d. The Defendant City of Grenada maintained a practice or custom of unconstitutionally deficient training for its officers regarding the application of force to the neck, head, or back of arrestees as demonstrated in part by its use of city-authorized training that was beneath state standards;

e. The Defendant City of Grenada formal and informal practices and customs of its officers unconstitutionally denying any or adequate medical care to arrestees, as is demonstrated by the failure of three officers to provide medical care to Mr. Loggins and others. Mr. Loggins exhibited bleeding from his mouth, eyes rolled in the back of his head, labored breathing, drug intoxication, incoherent speech, and unconsciousness, all of which Defendants Jones, Tilley, and Merriman observed and failed to address;

f. The Defendant City of Grenada maintained a practice or custom of unconstitutionally deficient training for its officers regarding how to provide adequate medical care as demonstrated in part by its use of city-authorized training that was beneath state standards;

g. The Defendant City of Grenada, which upon information and belief has not disciplined any of these individual defendant officers for their unconstitutional acts and omissions towards Robert Loggins, maintained a practice or custom of unconstitutionally failing to discipline its officers for unconstitutional conduct;

h. The Defendant City of Grenada maintained a practice or custom of unconstitutionally condoning and/or ratifying its officers' unconstitutional conduct;

The foregoing unconstitutional practices, customs, and/or policies were the moving force behind the constitutional violations that resulted in Mr. Loggins injuries and death.

## V. DAMAGES

117. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

118.    As a direct and proximate result of the actions and omissions of the defendants, Mr. Loggins and plaintiffs suffered damages including, but not limited to, medical and funeral expenses, physical injuries, pain and suffering, mental anguish, past and future lost wages and loss of life.

119.    Plaintiffs, as the wrongful death beneficiaries of Mr. Loggins, are legally entitled under the Mississippi Wrongful Death Statute, Miss. Code Ann. § 11-7-13, to recover in this action all damages for all wrongful death beneficiaries of Mr. Loggins whose death was legally and proximately caused by the acts and omissions of these defendants.

120.    As a result of the aforementioned acts and or omissions, the defendants are liable for all elements of damages arising from the violation of Mr. Loggins and his wrongful death, including but not limited to the following:

a.  damages for the physical and mental pain and suffering of Mr. Loggins prior to his death;

b.  damages for the mental anguish suffered by Mr. Loggins prior to his death;

c. damages for the losses of financial support and maintenance which Mr. Loggins provided and would have continued to provide to the plaintiffs and the wrongful death beneficiaries;

d. damages for the loss of love, companionship, society, advice the plaintiffs and wrongful death beneficiaries suffered and will suffer in the future;

e.  damages for the funeral expenses resulting from the death of Mr. Loggins;

f.  damages for the value of life of Mr. Loggins;

g.  damages for all other losses, both economic and intrinsic and tangible and intangible arising from the death of Mr. Loggins;

h.  lost wages and wage earning capacity of Mr. Loggins;

i.  past medical expenses of Mr. Loggins;

j.  extreme mental anguish and emotional distress of Mr. Loggins;

k.  mental anguish, emotional distress, and mental pain and suffering of the wrongful death beneficiaries;

l.  reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

m.  punitive damages on all state and federal claims; and

n.  pre- and post-judgment interest.

## VI. AD DAMNUM

WHEREFORE, PREMISES CONSIDERED, Plaintiffs seek judgment against these defendants, jointly and severally, in an amount to be determined by the trier of fact.

It is respectfully submitted, this the 3rd day of March, 2022.

> RIKA JONES, As Administratrix of the Estate of
> ROBERT LOGGINS; RIKA JONES, Individually
> and on Behalf of the Wrongful Death Beneficiaries
> of ROBERT LOGGINS, Deceased; and RIKA JONES,
> As Mother and Next Friend of R.D.L, a Minor
>
> By and through their counsel,
>
> /s/ *Jacob B. Jordan*
> Jacob B. Jordan, MSB #104230
> J. Rhea Tannehill, Jr., MSB #10449
> TANNEHILL, CARMEAN & McKENZIE, PLLC
> 829 North Lamar Blvd. Suite #1
> Oxford, Mississippi 38655
> Telephone:  (662)236-9996
> Facsimile:  (662)234-3949
> E-mail: jacob@tannehillcarmean.com
> jrt@tannehillcarmean.
>
> Victor I. Fleitas, MSB #10259
> fleitasv@bellsouth.net
> VICTOR I. FLEITAS, P.A.
> 452 North Spring Street
> Tupelo, Mississippi 38804
> (662) 840-0270 / Telephone
> (662) 840-1047 / Facsimile
>
> *Attorneys for Plaintiffs*

<u>CERTIFICATE OF CONSULTATION</u>

Pursuant to Mississippi Code § 11-1-58, I declare as counsel for the Plaintiffs that I have reviewed the facts of the case and have consulted with at least one (1) expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence and who I reasonably believe is knowledgeable in the relevant issues involved in the particular action. I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

I declare under penalty of perjury that the above and foregoing certificate of consultation is true and correct.

Executed on December 31, 2020,  January 27, 2021, March 24, 2021, and June, 2021.

/s/ *Jacob B. Jordan*

JACOB B. JORDAN
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Jacob B. Jordan, counsel for Plaintiff, hereby certify that I have this day served the above and foregoing to the following counsel for Defendants pursuant to the Federal Rules of Civil Procedure.

> Steven J. Griffin, Esq.
> Daniel Coker Horton & Bell, P.A.
> Post Office Box 1084
> Jackson, Mississippi 39215-1084
> sgriffin@danielcoker.com
> *Attorney for Corrections Management Services, Inc.*
>
> Thomas R. Julian, Esq.
> Daniel Coker Horton & Bell, P.A.
> Post Office Box 1084
> Jackson, Mississippi 39215-1084
> Tjulian@danielcoker.com
> *Attorney for Mobile Medical Ambulance Service, Inc. D/B/A AMR and American Medical Response, John Watson, and Jennifer Howell*
>
> G. Todd Butler, Esq.
> Phelps Dunbar, LLP
> 4270 I-55 North
> Jackson, Mississippi 39211-6391
> Todd.Butler@phelps.com
> *Attorney for Justin Gammage, Edwin Merriman, Reggie Woodall, Michael Jones, and City of Grenada*
>
> Mallory Kaye Bland, Esq.
> Phelps Dunbar, LLP
> 4270 I-55 North
> Jackson, Mississippi 39211-6391
> Mallory.bland@phelps.com
> *Attorney for Justin Gammage, Edwin Merriman, Reggie Woodall, Michael Jones, and City of Grenada*
>
> Daniel J. Griffith, Esq.
> Jacks| Griffith| Luciano, P.A.
> P.O. Box 1209
> 150 North Sharpe Avenue
> Cleveland, Mississippi 38732-1209
> dgriffith@jlpalaw.com
> *Attorney for Albert Deane Tilley*
>
> Bethany A. Tarpley, Esq.
> Jacks| Griffith| Luciano, P.A.
> P.O. Box 1209

23

150 North Sharpe Avenue
Cleveland, Mississippi 38732-1209
btarpley@jlpalaw.com
*Attorney for Albert Deane Tilley*

Michael S. Carr, Esq.
Carr Law Firm
301 W. Sunflower Road, Suite D
P.O. Box 1749
Cleveland, Mississippi 38732
mcarr@carrlawpllc.com
*Attorney for Albert Deane Tilley*

Dated, this the 3rd day of March, 2022.

/s/ *Jacob Jordan*
Jacob B. Jordan